1  Dean Gazzo Roistacher LLP
   Lee H. Roistacher, Esq. (SBN 179619)
2  Kimberly A. Sullivan, Esq. (317857)
   Brooke M. Mesner, Esq. (SBN 354265)
3  440 Stevens Avenue, Suite 100
   Solana Beach, CA  92075
4  Telephone:  (858) 380-4683
   Facsimile:  (858) 492-0486
5  E-mail:  lroistacher@deangazzo.com
           ksullivan@deangazzo.com
6          bmesner@deangazzo.com

7  Attorneys for Defendants
   State of California by and through California Highway
8  Patrol and Officer Basir Qurishi

9              UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11  MARIA LINA YURIAR; and JUAN          Case No.:   4:23-cv-06438 KAW
    GUILLERMO,
12                                       **MOTION FOR SUMMARY JUDGMENT**
                Plaintiffs,              **BY DEFENDANTS STATE OF**
13                                       **CALIFORNIA BY AND THROUGH**
          v.                             **CALIFORNIA HIGHWAY PATROL AND**
14                                       **OFFICER BASIR QURISHI**
    COUNTY OF ALAMEDA; STATE OF
15  CALIFORNIA; BASIR QURISHI;
    ALEXIS PEREZ-ROJAS; and DOES 3-10,   Date:        November 20, 2025
16  inclusive,                           Time:        1:30 p.m.
                                         Courtroom:   TBD
17                Defendants.
                                         Magistrate: Judge Kandis A. Westmore
18                                       Referred to: Magistrate Judge Peter H Kang
                                         (Settlement)
19
                                         Complaint Filed: 12/14/2023
20                                       Trial Date: 03/02/2026

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                                1

# TABLE OF CONTENTS

NOTICE OF MOTION……………………………………………………………………..10

POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT
INTRODUCTION…………………………………………………………………………..11

SUMMARY JUDGMENT STANDARDS…………………………………………………12

FACTS……………………………………………………………………………………...13

A.    CHP Officers Qurishi and Ryan Hardin Observe A Speeding Vehicle………….13

B.    Officer Qurishi Tries to Detain Yuriar And Ivan Ramirez. Yuriar Flees Again………13

C.    Yuriar Suddenly And Brutally Attacks Qurishi…………………………………16

D.    Deputy Perez-Rojas Sees Yuriar Beating Qurishi.  He Sees Yuriar Grabbing
Qurishi's Gun. He Uses Deadly Force To Save Qurishi's Life…………………………17

E.    Yuriar Seriously Injured Qurishi…………………………………………………18

F.    Qurishi's Shot Didn't Kill Yuriar……………………………………………...…19

ARGUMENT………………………………………………………………………………20

A.    This Court Should Grant Summary Judgment On Parents' § 1983 Claims…………..20

1.    Doctrine of qualified immunity…………………………………………………20

2.    Qualified immunity protects Qurishi from liability on parents' Fourth Amendment
excessive force claim (claim 1)……………………………………………………...22

    a.    Qurishi didn't violate the Fourth Amendment when using deadly force against
    Yuriar. Yuriar threatened to kill Qurishi and was on top of Qurishi savagely
    beating him within an inch of unconsciousness. Qurishi's use of deadly force
    was objectively reasonable to defend against Yuriar's brutal and on-going
    attack…………………………………………………………………………22

        i.    Yuriar posed an immediate threat to Qurishi's safety as Yuriar
        threatened to kill Quirshi and was savagely beating him…………….23

        ii.    If considered, the remaining *Graham* factors favor
        Qurishi……………………………………………………………….25

        iii.    Additional factors, if considered, favor Qurishi…………………….25

    b.    Absence of clearly established law.  No case has ever held that an officer
    violates the Fourth Amendment by using deadly force to stop a serious,
    significant and injury producing physical attack by a suspect………………..26

3.    Qualified immunity protects Qurishi from liability from the Fourth Amendment
failure to intervene and integral participant theories of liability if the Court
considers these liability theories, which it should not…………………………………27

2

Motion for Summary Judgment by Defendants State of California by and Through California
Highway Patrol and Officer Basir Qurishi - 4:23-cv-06438 KAW

a.  Though identified in the complaint, the Court should decline to consider these liability theories because the complaint is devoid of any supporting facts...................................................................................27

b.  Failure to intervene theory fails......................................................28

   i.  Assuming Perez-Rojas used excessive force against Yuriar, Qurishi didn't know Perez-Rojas was present until after Perez-Rojas fired. Quirishi thus had no time much less a "realistic opportunity to intervene in Perez-Rojas's use of deadly force............................28

   ii.  Precedent didn't clearly establish what amounts to a realistic opportunity to intervene, and no factually analogous cases existed anyway........................................................................28

c.  Integral Participant Theory Fails...................................................30

   i.  No evidence supports integral participant liability against Qurishi. Indeed, the evidence disproves it .......................................30

   ii.  Precedent didn't clearly establish the parameters of integral participant liability..................................................................30

4.  Qualified immunity protects Qurishi from liability on parents' Fourteenth Amendment loss of familial association claim (claim 3)...................................31

   a.  The predicate underlying Fourth Amendment violation didn't exist.........................................................................................31

   b.  Qurishi acted with the legitimate law enforcement objective of self-protection...............................................................................31

   c.  Absence of clearly established law demonstrating a Fourteenth Amendment violation.............................................................32

B.  This Court Should Grant Summary Judgment On Parents' State Law Claims...........32

1.  Battery claim fails because Qurishi's use of deadly force was objectively Reasonable under the Fourth Amendment (claim 4).........................................32

2.  Bane Act claim fails because Qurishi's use of deadly force didn't violate Yuriar's Fourth Amendment rights or, alternatively, Qurishi lacked a specific intent to violate Yuriar's Fourth Amendment rights (claim 6).........................................33

3.  Negligence claim fails because Qurishi's use of deadly force was objectively reasonable under the totality of circumstances (claim 5)...................................33

C.  This Court Should Grant Summary Judgment On Parents' Fourteenth Amendment, Battery And Negligence Claims Seeking Their Own Damages For The "Wrongful Death" Of Yuriar.  Qurishi's Conduct Didn't Cause Yuriar's Death.....................34

CONCLUSION.............................................................................................35

3

Motion for Summary Judgment by Defendants State of California by and Through California Highway Patrol and Officer Basir Qurishi - 4:23-cv-06438 KAW

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*A.D. v. State of California Highway Patrol*
    712 F.3d 446 (9th Cir. 2013) …………………………………………......…..32

4

*A.L. v. City of Bakersfield*
    2025 U.S. Dist. LEXIS 32837 (E.D. Cal. Feb. 24, 2025)……………………….…..28

5

6

*Andrich v. Kostas*
    470 F. Supp. 3d 1048 (D. Ariz. 2020)..........................................................................28

7

*Andrich v. Kostas*,
    No. 22-16226, 2023 U.S. App. LEXIS 25002,
    2023 WL 6157407 (9th Cir. Sept. 21, 2023)……………………………….…..28

8

9

*Arpin v. Santa Clara Valley Transp. Agency*
    261 F.3d 912 (9th Cir. 2001)…………………………………………………..33

10

*Ashcroft v. al Kidd*
    563 U.S. 731 (2011)…………………………………………………………...20

11

12

*Avina v. United States*
    681 F.3d 1127 (9th Cir. 2012)…………………………………………………32

13

*Billington v. Smith*
    292 F.3d 1177 (9th Cir. 2002)…………………………………………………24

14

15

*Brosseau v. Haugen*
    543 U.S. 194 (2004)…………………………………………………………...24

16

*Brown v. Ransweiler*
    171 Cal. App. 4th 516 (2009)……………………………………………...32, 33

17

18

*Caldwell v. City of Selma*,
    2014 U.S. Dist. LEXIS 121380 (E.D. Cal. Aug. 29, 2014)……………………….…..24

19

*Carley v. Aranas*
    103 F.4th 653 (9th Cir. 2024)…………………………………………………21

20

21

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986)…………………………………………………………...12

22

*Chaudhry v. Aragón*
    68 F.4th 1161 (9th Cir. 2023)…………………………………………………34

23

24

*City & County of San Francisco v. Sheehan*
    575 U.S. 600 (2015)…………………………………………………………20, 23

25

*County of Los Angeles v. Mendez*
    581 U.S. 420 (2017)…………………………………………………………...24

26

27

*Cunningham v. Gates*
    229 F.3d 1271 (9th Cir. 2000)……………………………….…………….28, 29

28

4

Motion for Summary Judgment by Defendants State of California by and Through California
Highway Patrol and Officer Basir Qurishi - 4:23-cv-06438 KAW

*Day v. County of Contra Costa*
   2008 U.S. Dist. LEXIS 93487 (N.D. Cal. Nov. 10, 2008)……………………….…24

*Dereaux v. Abbey*
   263 F.3d 1070 (9th Cir. 2001)……………………………………………………….12

*District of Columbia v. Wesby*
   583 U.S. 48 (2018)…………………………………………………………….*Passim*

*Dunivin v. County of Riverside*
   2023 U.S. Dist. LEXIS 238872 (C.D. Cal. Nov. 21, 2023)…………………………..29

*Espinosa v. City & County of S.F.*
   598 F.3d 528 (9th Cir. 2010)……………………………………………………...25

*Estate of Adomako v. City of Fremont*
   2019 U.S. Dist. LEXIS 104482 (N.D. Cal. June 21, 2019)……………..……24, 25, 27

*Est. of Hernandez v. City of L.A.*
   139 F.4th 790 (9th Cir. 2025)………………………………………..…….22, 23

*Estate of Rea v. County of L.A.*
   2021 U.S. Dist. LEXIS 200490 (C.D. Cal. Oct. 7, 2021)……………………………24

*Estate of Strickland v. Nev. County*
   69 F.4th 614 (9th Cir. 2023)…………………………………………………23, 24

*Eyre v. City of Fairbanks*
   2024 U.S. App. LEXIS 19770 (9th Cir. Aug. 7, 2024)………………………...25

*Felarca v. Birgeneau*
   891 F.3d 809 (9th Cir. 2018)……………………………………………………...20

*Frohm v. City & County of S.F.*
   2025 U.S. Dist. LEXIS 92317 (N.D. Cal. May 14, 2025)……………………………27

*Galindo v. City of S.F.*
   718 F. Supp. 3d 1121 (N.D. Cal. 2024)…………………………………………31

*Gauslik v. Perez*
   392 F.3d 1006 (9th Cir. 2004)……………………………………………………31

*Gellos v. City of Phx.*
   2025 U.S. Dist. LEXIS 13601 (D. Ariz. Jan. 24, 2025)………………………………29

*Graham v. Connor*
   490 U.S. 386 (1989)…………………………………………………………...*Passim*

*Hart v. City of Redwood City*
   99 F.4th 543 (9th Cir. 2024)…………………………………………...…*Passim*

*Hartzell v. Marana Unified Sch. Dist.*
   130 F.4th 722 (9th Cir. 2025)…………………………………………………27

Motion for Summary Judgment by Defendants State of California by and Through California
Highway Patrol and Officer Basir Qurishi - 4:23-cv-06438 KAW

*Hays v. City of Ventura*
  2025 U.S. Dist. LEXIS 69130 (C.D. Cal. Apr. 8, 2025)……………………………….25

*Hayes v. County of San Diego*
  57 Cal. 4th 622 (2013)………………………………………………………26, 33, 34

*Hernandez v. Hodges*
  2023 U.S. Dist. LEXIS 144798 (N.D. Cal. Aug. 17, 2023)………………………..29

*Hernandez v. Skinner*
  969 F.3d 930 (9th Cir. 2020)……………………………………………………….30

*Hernandez v. Town of Gilbert*
  989 F.3d 739 (9th Cir. 2021)…………………………………………………....12

*Hopson v. Alexander*
  71 F.4th 692 (9th Cir. 2023)………………………………………………...12

*Hughes v. Rodriguez*
  31 F.4th 1211 (9th Cir. 2022)……………………………………………….28

*Hunter v. Bryant*
  502 U.S. 224 (1991)…………………………………………………………...22

*Isayeva v. Sacramento Sheriff's Dep't,*
  872 F.3d 938 (9th Cir. 2017)……………………………………………...27

*James v. Gen. Dynamics Land Sys. Inc.*
  582 F. Supp. 3d 673 (D. Alaska 2022)……………………………………...27

*J. L. D. v. City of L.A.*
  2012 U.S. Dist. LEXIS 193010 (C.D. Cal. May 10, 2012)……………………….24

*J.P. ex rel. Balderas v. City of Porterville*
  801 F.Supp.2d 965 (E.D. Cal. 2011)………………………………………….31

*Kisela v. Hughes*
  584 U.S. 100 (2018)…………………………………………………………20, 26

*Koussaya v. City of Stockton*
  54 Cal. App. 5th 909 (2021)………………………………………………...33

*Kramer v. Cullinan*
  878 F.3d 1156 (9th Cir. 2018)………………………………………………….22

*Lal v. California*
  746 F.3d 1112 (9th Cir. 2014)………………………………………………….26

*Lane v. Franks*
  573 U.S. 228 (2014)………………………………………………….....22

*Lattimore v. Dickey*
  239 Cal. App. 4th 959 (2015)………………………………………………….34

*Marsh v. City of San Diego*
   680 F.3d 1148 (9th Cir. 2012)………………………………………………………21

*Mattos v. Agarano*
   661 F.3d 433 (9th Cir. 2011)………………………………………………………....21

*M.B. v. City of L.A.*
   2025 U.S. Dist. LEXIS 82498 (C.D. Cal. Apr. 29, 2025)……………………….....31

*McGinnis v. County of Sonoma*
   2023 U.S. Dist. LEXIS 98656 (N.D. Cal. June 6, 2023)……………………....……34

*Mendez v. Poitevent*
   823 F.3d 326 (5th Cir. 2016)………………………………………………………24

*Mullenix v. Luna*
   577 U.S. 7 (2015)………………………………………………………………….....26

*Napouk v. L.V. Metro. Police Dep't,*
   123 F.4th 906 (9th Cir. 2024)…………………………………………...........*Passim*

*Nehad v. Browder*
   929 F.3d 1125 (9th Cir. 2019)……………………………………………………....26

*Nicholson v. City of L.A.*
   935 F.3d 685 (9th Cir. 2019)………………………………………………………....32

*Norgart v. Upjohn Co.*
   21 Cal. 4th 383 (1999)……………………………………………………………..34, 35

*Novoa v. City & County of S.F.*
   2015 U.S. Dist. LEXIS 118586 (N.D. Cal. Sep. 3, 2015)……………………………27

*Nuh Nhuoc Loi v. Scribner*
   671 F. Supp. 2d 1189 (S.D. Cal. 2009)……………………………………………....29

*Ochoa v. City of Mesa*
   26 F.4th 1050 (9th Cir. 2022)…………………………………………..……..31, 32

*Pearson v. Callahan*
   555 U.S. 223 (2009)………………………………………………………………....20

*Peck v. Montoya*
   51 F.4th 877 (9th Cir. 2022)……………………………………………………30, 31

*Penaloza v. City of Rialto*
   836 F. App'x 547 (9th Cir. 2020)…………………………………………………....29

*Perkins v. City of Modesto*
   2023 U.S. Dist. LEXIS 90989 (E.D. Cal. May 24, 2023)…………………………....29

*Plumhoff v. Rickard*
   572 U.S. 765 (2014)……………………………………………………………...24

Motion for Summary Judgment by Defendants State of California by and Through California Highway Patrol and Officer Basir Qurishi - 4:23-cv-06438 KAW

*Porter v. Osborn*
    546 F.3d 1131 (9th Cir. 2008)……………………………………………………32

*Puente v. City of Phx.,*
    123 F.4th 1035 (9th Cir. 2024)……………………………………………………..32

*Reimann v. Town of Los Gatos*
    2024 U.S. Dist. LEXIS 247946 (N.D. Cal. Sep. 16, 2024)……………………....33

*Reese v. County of Sacramento*
    888 F.3d 1030 (9th Cir. 2018)……………………………………………………33

*Reyes v. City of Santa Ana*
    832 F. App'x 487 (9th Cir. 2020)…………………………………………32, 33

*Rivas Villegas v. Cortesluna*
    595 U.S. 1 (2021)..........................................................................................21

*Rose v. Farney,*
    No. 23-2846, 2025 U.S. App. LEXIS 5738 (9th Cir. Mar. 12, 2025)……………......30

*Rosenbaum v. City of San Jose*
    2021 U.S. Dist. LEXIS 245185 (N.D. Cal. Dec. 23, 2021)…………………………..32

*Ryburn v. Huff*
    565 U.S. 469 (2012)…………………………………………………...…22

*Sabra v. Maricopa County Cmty. Coll. Dist.*
    44 F.4th 867 (9th Cir. 2022)…………………………………………………..21

*Scott v. Harris*
    550 U.S. 372 (2007)……………………………………………...…12, 13, 25

*Scott v. Henrich*
    39 F.3d 912 (9th Cir. 1994)……………………………………………………26

*Scott v. Smith*
    109 F.4th 1215 (9th Cir. 2024)…………………………………………………..31

*Schwarz v. Lassen County*
    628 F. App'x 527 (9th Cir. 2016)…………………………………………………31

*Sharp v. County of Orange*
    871 F.3d 901 (9th Cir. 2017)……………………………………………………21

*Smith v. Adepa*
    81 F.4th 994 (9th Cir. 2023)…………………………………...……20, 26, 27

*Smith v. Intel Corp.*
    745 F. Supp. 3d 853 (N.D. Cal. 2024)…………………………………………...…29

*Spencer v. Pew*
    117 F.4th 1130 (9th Cir. 2024)……………………………………………20, 21

8

*Stroud v. Gore*
  2022 U.S. Dist. LEXIS 172094 (S.D. Cal. Sept. 22, 2022)……………………………..29

*Tabares v. City of Huntington Beach*
  988 F.3d 1119 (9th Cir. 2021)…………………………………………………………33

*Taylor v. Barkes*
  575 U.S. 822 (2015)…………………………………………………………….....21, 22

*Tobias v. Arteaga*
  996 F.3d 571 (9th Cir. 2021)………………………………………………………...28

*Waid v. County of Lyon*
  87 F.4th 383 (9th Cir. 2023)………………………………………………………...21

*Wasco Prods. v. Southwall Techs., Inc.*
  435 F.3d 989 (9th Cir. 2006)……………………………………………………...27

*White v. Pauly*
  580 U.S. 73 (2017)…………………………………………………………………20

*Williams v. City of Sparks*
  112 F.4th 635 (9th Cir. 2024)………………………………………………..……...12, 23

*Williamson v. City of Nat'l City*
  23 F.4th 1146 (9th Cir. 2022)………………………………………………………33

*Wilkinson v. Torres*
  610 F.3d 546 (9th Cir. 2010)…………………………………………………...23, 26

*Wilson v. Layne*
  526 U.S. 603 (1999)…………………………………………………………...…21

**Statutes**

42 U.S.C. § 1983……………………………………………………………*Passim*

Cal. Pen. Code § 69………………………………………………………………25

Cal. Pen. Code §148………………………………………………………………25

Cal. Pen. Code § 217.1……………………………………………………...…25

Cal. Pen. Code § 240………………………………………………………………25

Cal. Pen. Code § 241………………………………………………………………25

Cal. Pen. Code § 835a…………………………………………………....33

**Rules**

Fed. R. Civ. P. 56………………………………………………………………10, 12

9

1

**NOTICE OF MOTION**

2       PLEASE TAKE NOTICE that on November 20, 2025 at 1:30 p.m. or as soon thereafter

3   as the matter may be heard, defendants State of California by and through California Highway

4   Patrol (CHP) and Officer Bashir Qurishi will move the Court under Federal Rule of Civil

5   Procedure 56 for summary judgment against plaintiffs on the following grounds:

6       1. Qurishi is entitled to summary judgment on plaintiffs' Fourth Amendment excessive

7   force claim (Claim 1) because he is entitled to qualified immunity. Qurishi didn't violate Juan

8   Yuriar's Fourth Amendment rights when using deadly force to stop Yuriar's violent physical

9   attack and, alternatively, no "clearly established" law existed on July 3, 2023 demonstrating all

10  reasonable law enforcement officers would know Qurishi's use of deadly force under the

11  particular facts of this case violate Yuriar's Fourth Amendment.

12      2. Qurishi is entitled to summary judgment on plaintiffs' Fourth Amendment failure to

13  intervene and integral participant claims (Claim 1) because the complaint alleges no facts

14  supporting them and Qurishi is otherwise entitled to qualified immunity.

15      3. Qurishi is entitled to summary judgment on plaintiff's Fourteenth Amendment

16  interference with familial relationship claim (Claim 3) because he is entitled to qualified

17  immunity. Qurishi didn't violate Yuriar's Fourth Amendment rights, Qurishi didn't act with an

18  intent to harm Yuriar unrelated to the legitimate law enforcement objective of self-protection in

19  the fast moving and evolving physical fight, and no clearly established law existed on July 3,

20  2023 demonstrating all reasonable law enforcement officers would know Qurishi's use of deadly

21  force under the particular facts of this case would violate plaintiffs' Fourteenth Amendment

22  rights.

23      4. Qurishi and CHP are entitled to summary judgment on plaintiffs' battery claim (Claim

24  4) because Qurishi's use of deadly force was objectively reasonable (i.e., it didn't violate the

25  Fourth Amendment).

26      5. Qurishi and CHP are entitled to summary judgment on plaintiffs' negligence claim

27  (Claim 5) because Qurishi's use of deadly force was objectively reasonable.

28  ///

6. Qurishi and CHP are entitled to summary judgment on plaintiffs' Bane Act claim (Claim 6) because Qurishi didn't violate Yuriar's Fourth Amendment rights and because there no evidence demonstrates Qurishi's specific intent to violate Yuriar's Fourth Amendment rights.

7. Qurishi and CHP are entitled to summary judgment on plaintiffs' claims for battery (Claim 4), negligence (Claim 5), and Bane Act (Claim 6) seeking "wrongful death" damages because Qurishi's use of deadly force didn't cause Yuriar's death.

This motion will be based on this notice and motion, the memorandum of points and authorities, the declaration of Lee H. Roistacher and exhibits thereto, declaration of Ryan Hardin, the declaration of Parris Ward, and the pleadings and papers filed herein.

## POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT

## INTRODUCTION

"I'll kill you, nigga." That is what Juan Yuriar told CHP Officer Bashir Qurishi after Yuriar body slammed Qurishi into the concrete, out wrestled him to obtain a dominant mounted position and repeatedly rained down left-and right-hand hammer fists to Qurishi's head and face. All of this is on video.[1]

Before Qurishi lost consciousness, which would've been disastrous and potentially fatal for him as he was without backup and getting savagely beaten, Qurishi managed to unholster his firearm with his right hand and inflict a non-fatal wound to Yuriar's left leg despite Yuriar trying to take Qurishi's gun. Were it not for two fatal shots to Yuriar's chest from Alameda County Sheriff's Deputy Perez-Rojas who arrived on scene and witnessed Yuriar brutally beating Qurishi, Yuriar likely would've done what he told Qurishi he was going to do.

Undaunted by the undisputed facts demonstrating the justification for Qurishi's use deadly force, Yuriar's parents sue Qurishi asserting claims under 42 U.S.C. § 1983 and

---

[1] There are many videos. There is a video from Qurishi's MVARS, two security camera videos and a video from Alameda County Sheriff's Deputy Perez Rojas' BWC. These videos are exhibits 1-4, respectively. There are also eleven videos created by expert Parris Ward from these videos. They consist of combining and synchronizing exhibits 1-4, enlargements, brightening, and slow-motion of exhibit 3, and the addition of timers and numbered frames to exhibits 1-4. Ward's videos are exhibits 5-15, respectively. *See* Ward Declaration ¶¶ 4, 7, 13-19, 22-24.

California law.[2] *See generally* Dkt. No. 30.

On Yuriar's behalf, parents assert a Fourth Amendment excessive force claim against Qurishi seeking damages on Yuriar's behalf (Claim 1). Dkt. 30, ¶¶ 27-35. On their own behalf, parents assert a Fourteenth Amendment based § 1983 claim against Qurishi for the interference Yuriar's death caused to their familial relationship with him (Claim 3). *Id.*, ¶¶ 44-55. Parents allege state law claims directly against Qurishi and vicariously against CHP for battery (Claim 4) and negligence (Claim 5) seeking damages on Yuriar's behalf and on their own behalf. *Id.*, ¶¶ 56-67. Parents also assert on Yuriar's behalf a Bane Act claim (Claim 6) directly against Qurishi and vicariously against CHP. *Id.*, ¶¶ 67-80.

This Court should grant summary judgment for Qurishi and CHP. For the reasons stated in the notice and the undisputed evidence and law in set out in these points and authorities,

## SUMMARY JUDGMENT STANDARDS

Summary judgment is proper where no genuine issue of material fact exists. Fed. R. Civ. P. 56. A defendant meets its summary judgment burden by: (1) submitting evidence showing the absence of a genuine issue of material fact; or (2) by pointing out with argument the absence of evidence to support the plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Dereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Facts are viewed in favor of the nonmoving party only when a genuine dispute exists. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Williams v. City of Sparks*, 112 F.4th 635, 642 (9th Cir. 2024). The Court "assumes that the version of material facts asserted by the plaintiff is correct," but "may [also] consider facts offered by the defendant that are uncontradicted by any evidence in the record." *Williams*, 112 F.4th at 642 (simplified); *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023). This includes what is depicted on video, and the Court doesn't accept a plaintiff's version of the facts when contradicted by video. *Williams*, 112 F.4th at 642; *see also Hernandez v. Town of Gilbert*, 989 F.3d 739, 746 (9th Cir. 2021) ("[W]e are not required to

---

[2] Parents stipulated and the Court dismissed the second claim under § 1983 for failing to provide medical care under the Fourth Amendment, the negligence liability theories asserted in ¶ 63(e)-(h) and the punitive damage claim against Qurishi. Dkt. No. 70.

accept a non-movant's version of events when it is clearly contradicted by a video in the record.")
(simplified) (citing *Scott*, 550 U.S. at 378-80).

**FACTS**

**A.      CHP Officers Qurishi and Ryan Hardin Observe A Speeding Vehicle**

On July 3, 2023, around 1:52 a.m., Qurishi and Hardin were in a marked CHP vehicle
with Hardin driving. Hardin Decl., ¶¶ 3-4; Ex. 16 [Hardin Supplemental Report], p. 1:5-8.

While the officers were on the right-hand shoulder of the Grand Avenue onramp to I-
580 eastbound, a Hyundai sped past at 98 MPH in the 65 MPH zone. Hardin Decl., ¶¶ 5-6; Ex.
16, p. 1:10-13. This vehicle was later identified as stolen. Ex. 17 [Alameda County Sheriff's
Office Incident Report], p. 2; Ex. 18 [Ivan Ramirez Depo.], p. 19:20-24.

Hardin accelerated and caught up to the Hyundai near the 164th Avenue off-ramp where
the Hyundai exited and crashed into an electrical box at the end of the off-ramp. Hardin Decl.,
¶¶ 7-8; Ex. 1, 0:30-0:57; Ex. 16, p. 1:16-19; Ex. 18, p. 19:20-24; Ex. 19 [Qurishi Depo.], pp.
14:5-15:11.

Four suspects wearing ski masks immediately exited the crashed vehicle and fled
towards 163rd Avenue into a residential neighborhood. Hardin Decl., ¶¶ 10-11; Ex. 1, 1:04-
1:14; Ex. 16, p. 1:20-24; Ex. 19, pp. 16:3-11, 17:1-5.

Hardin activated the patrol vehicle's emergency lights. Hardin Decl., ¶ 9; Ex. 1, 0:59-
1:06; Ex. 16, p. 1:19-20. The officers exited their vehicle and ordered the suspects to stop, which
the suspects did not do. Hardin Decl., ¶ 10; Ex. 1, 1:07-1:14; Ex. 16, p. 1:24-25. Hardin told
Qurishi to follow him in the patrol vehicle as he ran after one fleeing suspect. Hardin Decl., ¶¶
14-15, Ex. 1, 1:13-1:16; Ex. 16, p. 1:26-28; Ex 19, p. 17:1-10. Qurishi ran back to the patrol
vehicle and took off. Ex. 1, 01:16-1:27; Ex. 19, p. 17:1-10. Hardin thought Qurishi was
following him, but Qurishi drove west on 163rd Avenue believing he was driving to where
Hardin and one of the suspects ran. Hardin Decl., ¶¶ 14-15; Ex. 16, p. 1:29-31; Ex. 19, p. 17:6-
10.

**B.      Officer Qurishi Tries to Detain Yuriar And Ivan Ramirez. Yuriar Flees Again.**

While driving on 163rd Avenue, Qurishi thought he saw Hardin chasing one of the fleeing

13

1   suspects. Ex. 1, 1:46; Ex. 19, p. 17:8-22; Ex. 20 [Qurishi's Voluntary Statement], p. 32:10-14.

2   As Qurishi neared, however, he noticed two individuals wearing ski masks. Ex. 1, 1:49; Ex. 19,

3   p. 17:8-22. Qurishi stopped in front of 1621 163rd Avenue and exited the vehicle. Ex. 1, 1:47-

4   2:00. The suspects were Ivan Ramirez and Yuriar.[3]

5          Yuriar was dressed in a dark, short-sleeved shirt, blue jeans, dark gloves, a baseball hat,

6   and a dark ski mask (balaclava) which was covering his head and concealing his face. Ex. 1,

7   1:47-2:04. There are stills from Exhibits 1 and 2 showing Yuriar:



16          Ramirez was similarly dressed, with dark gloves and a dark ski mask (balaclava)

17   covering his head and concealing his face. Ex. 1, 1:47-2:04.

18          Qurishi unholstered his gun and commanded Ramirez and Yuriar to get on the ground.

19   Ex. 1, 1:59-2:05. Ramirez complied laying closer to where Qurishi was standing. Ex. 1, 2:03;

20   Ex. 2, 8:37. Yuriar complied, laying further from Qurishi. Ex. 1, 2:04; Ex. 2, 8:38.

21          Around 1:55 a.m., Qurishi reported: "We on-viewed an 11-83. All occupants took foot

22   bail. Liberty Street at 163rd." Ex. 1, 2:18-2:38. As Officer Qurishi waited for backup, Yuriar

23   became "fidgety" and kept reaching for his ankle area. Ex. 2, 8:55-8:58, 9:35-9:46; Ex. 19, pp.

24   22:1-3; 26:22-27:1; Ex. 20, pp. 33:7-15; Ex. 21 [Owen Vivo Interview], 8:15-8:33; Ex. 22 [Vivo

25   Depo.], p. 41:3-16. A witness thought Yuriar could've been "reach[ing] for something down by

26   his ankle," Ex. 21, 8:15-8:26, and Qurishi thought Yuriar might have a weapon. Ex. 19, p. 22:1-

27

28   _____
     [3] In Exhibits 19 and 20, Qurishi referred to Ramirez as suspect "A" and Yuriar as suspect "B."

3; Ex. 20, p. 33:7-15 Ex. 2, p. 33:10-15.

Keeping his gun drawn, Qurishi walked back and forth from the patrol vehicle to where Yuriar and Ramirez were laying looking up and down the street for Hardin or additional units. Ex. 1, 2:58-3:45; Ex. 20, pp. 32:24-33:4.

Around 1:57 a.m., Qurishi broadcasted "25580. I got two (2) detained 163rd, just east of Liberty Street." Ex. 1, 4:03-4:13. Only hearing "east of Liberty Street," Hardin ran toward 162nd Avenue. Hardin Decl., ¶¶ 19, 20; Ex. 16, p. 2:6-10.

Feeling like he had been waiting for an extended period of time for backup, Qurishi decided to handcuff the suspects because he was concerned they would "do something" before backup arrived. Ex. 19, p. 25:1-24. Qurishi holstered his gun and approached Ramirez. Ex. 1, 4:19-4:56; Ex. 19, p. 26:3-13. Yuriar continued to fidget, reach for his ankle, and looked at Officer Qurishi "weirdly." Ex. 2, 9:30-11:39; Ex. 20, pp. 61:5-13, 67:12-19; Ex. 21, 8:30-8:50. Qurishi ordered Yuriar not to move. Ex. 1, 4:30-4:31; Ex. 20, pp. 33:22-34:1; Ex. 21, 7:49-8:05. A witness recounted Yuriar was "really fidgety the whole time" and kept "repositioning his arms and look[ed] like he was going to push himself up and then take off running." Ex. 21, 8:38-8:46.

Qurishi asked Ramirez and Yuriar if they had weapons. Ex. 1, 4:56-4:59; Ex. 19, pp. 23:16-24, 30:17-19. Only Ramirez responded to Qurishi's question and said he had a knife in his pocket. Ex. 1, 4:57-5:05; Ex. 19, pp. 24:2-7; 24:17-19, 30:17-19; Ex. 20, p. 67:2-9.

Less than ten seconds later, at 1:57:51 a.m., while Qurishi was handcuffing Ramirez, Yuriar jumped up and ran. Ex. 1, 5:05; Ex. 19, pp. 28:4-5, 32:15-16; Ex. 21, 8:50-8:53. Qurishi decided to chase Yuriar because Ramirez was cooperating, and Qurishi was concerned for his own safety and those in the residential area because he didn't know if Yuriar had weapons or what Yuriar was going to do. Ex. 1, 5:06; Ex. 19, pp. 29:4-13, 30:20-25, 31:10-32:1

Qurishi ordered Yuriar to "get down" three times. Ex. 1, 5:07-5:27. After a short run, Yuriar tripped, allowing Qurishi to catch him and take him down. Ex. 19, pp. 33:18-34:2; Ex. 20, p. 63:8-15; Ex. 21, 8:50-9:04. Qurishi requested an additional unit. Ex. 1, 5:30-5:36. Intending to walk Yuriar to where Ramirez was still laying prone on the ground, Qurishi directed Yuriar to "get up." Ex. 1, 5:57-6:00; Ex. 19, pp. 36:2-37:2, 38:4-7.

**C.      Yuriar Suddenly And Brutally Attacks Qurishi**

After standing up, Yuriar immediately lifted Qurishi off the ground, slammed him onto the concrete driveway and punched him. Ex. 3, 12:38-12:41; Ex. 9-13; Ex. 19, pp. 37:3-9, 40:17-41:10; Ex. 20, p. 65:16-21; Ex. 21, 18:34-19:00; Ex. 22, p. 28:2-4. Qurishi tried to stand up, but Yuriar again punched Qurishi and again slammed him onto the concrete. Ex. 3, 12:41-12:44; Exs. 9-13. Out wrestling and hitting Qurishi, Yuriar gained a dominant mounted position on top of Qurishi. Ex. 3, 12:40-12:50; Exs. 9-13; Ex. 19, pp. 35:3-7, 40:3-9, 40:17-23, 41:5-10; Ex. 20, pp. 65:21-66:2, 70:14-22; Ex. 21, 14:56-15:05; Ex. 22, p. 27:2-23.

Yuriar proceeded to beat Qurishi by delivering repeated closed fist punches with both fists to Qurishi's head and face; Yuriar was "whaling" on Qurishi with both fists in rapid succession. Ex. 3, 12:40-13:01; Exs. 9-13; Ex. 19, pp. 35:3-7, 40:17-23, 41:8-14, 51:7-10, 51:16-20, 57:12-14, 58:17-22, 59:1-3; Ex. 20, pp. 34:18-24, 66:1-2, 75:11-14, 84:11-3; Ex. 21, pp. 15:18-15:30, 15:39-15:45, 18:13-18:24; Ex. 22, pp. 28:10-23, 52:16-20. Unable to get up, Qurishi took a "defensive curl" position. Ex. 3, 12:40-13:01; Ex. 9-13; Ex. 21, pp. 10:10-10:19, 14:45-15:15; Ex. 22, pp. 29:8-16, 31:2-7. Yuriar didn't let up his attack and Qurishi was losing the fight. Ex. 3, 12:40; Exs. 9-13; Ex. 21, 12:57-13:03.

While repeatedly punching Quirshi in the head and face, Yuriar yelled "I'll kill you, nigga!" Ex. 1, 6:17-6:20, Ex. 19, pp. 53:6-9, 62:13-22.

Qurishi feared he was going to blackout, lose consciousness, or be killed as Yuriar delivered what felt like deadly blows to his head while threatening to end his life. Ex. 19, pp. 51:24-52:8, 52:19-24, 53:6-9, 57:12-20, 58:19-22, 62:1-9, 79:15-18, 80:12-15; Ex. 20, pp. 34:18-24, 65:22-66:2, 75:11-14.

Qurishi did not use his taser because Yuriar could take it or Yuriar would "lock up" and land on top of Qurishi. Ex. 20, p. 83:2-10. Qurishi couldn't use his baton because he couldn't generate the force needed for an effective strike while on his back. Ex. 20, p. 83:12-16.

Qurishi believed his only option to stop Yuriar's attack was to use his gun. Ex. 19, pp. 53:6-9, 62:1-5, 78:12-17, 80:10-15; Ex. 20, pp. 83:17-84:2.

With his right hand, Qurishi removed his right hip holstered gun. Ex. 19, pp. 52:6-24.

16

1   Feeling resistance against his gun, Qurishi could not immediately get his gun to an effective

2   firing position. Ex. 19, pp. 57:5-9, 59:6-12, 60:5-61:2; Ex. 20, 76:9-15, 77:3-15, 95:1-7. Through

3   Yuriar's punches, Qurishi managed to fire one round hitting Yuriar's upper left thigh. Ex. 3,

4   13:00-13:03; Exs. 9-13; Ex. 19, pp. 61:20-23, 73:11-15; Ex. 20, p. 76:9-15; Ex. 24 [Katherine

5   Raven Depo.], p. 51:5-21; Ex. 26 [CHP 110]. Yuriar continued to punch Qurishi. Ex. 3, 13:01-

6   13:03; Exs. 9-13; Ex. 19, pp. 62:25-63:10, 63:21-24; Ex. 20, p. 96:9-11. Qurishi tried to fire a

7   second time, but his gun jammed.[4] Ex. 19, pp. 61:3-16, 63:21-24, 65:3-6, 74:17-23, 75:11-17.

8   **D.    Deputy Perez-Rojas Sees Yuriar Beating Qurishi.  He Sees Yuriar Grabbing**
        **Qurishi's Gun. He Uses Deadly Force To Save Qurishi's Life**

9

10  Perez-Rojas heard through his dispatch a report that suspects had fled from a crash and

11  headed toward the area. Ex. 23 [Perez-Rojas Depo.], pp. 13:15-24, 14:3-15:4. Perez-Rojas

12  parked his vehicle after seeing Quirshi's patrol vehicle with its lights activated. Ex. 1, 06:12;

13  Ex. 4, 0:23-0:28; Ex. 23, p. 15:5-12.

14  Perez-Rojas exited his vehicle and heard Ramirez scream to Yuriar "Diego, stop! Diego,

15  stop!" and saw Yuriar mounted on top of Qurishi "actively assaulting [him] violently by

16  punching directly down on [him]." Ex. 1, 6:17-6:26; Ex. 4, 0:30-035; Ex. 23, pp. 19:5-9, 26:24-

17  27:2, 69:7-16, 69:22-70:4; Ex. 27 [Perez-Rojas' Voluntary Statement], p. 24:5-7.

18  Perez-Rojas saw Yuriar punching Qurishi in the head, face, and upper chest at least five

19  or six times. Ex. 23, pp. 70:5-8, 70:15-18; Ex. 27, p. 37:2-15. Yuriar's fists were balled, and he

20  was using both hands. Ex. 23, p. 70:9-14; Ex. 27, p. 37:9-15. Yuriar said to Qurishi "you like

21  that" while hitting him. Ex. 23, p. 72:7-20; Ex. 27, p. 41:6-13. Perez-Rojas saw Qurishi's head

22  bounce off the concrete. Ex. 23, pp. 51:23-25, 70:22-71:2, 71:11-16; Ex. 27, pp. 24:13-16,

23  41:22-42:2. Qurishi appeared exhausted, was losing the fight, and Perez-Rojas feared Qurishi

24  had or would lose consciousness. Ex. 23, pp. 70:22-71:2, 73:10-13, 74:13-75:1; Ex. 27, pp.

25  37:21-38:8, 42:3-17. He requested immediate back up because Yuriar was "assault[ing]

26

27  ---

    [4] A semi-autoloading firearm commonly jams and fails to chamber another round when one
28  holds or obstructs the slide of the gun as it travels forward after firing, preventing the proper
    seating of the next bullet. Ex. 25 [Chapman Report], p. 4 n. 12); *see also* Ex. 19, p. 61:13-15.

1    [Qurishi] violently." Ex. 27, p. 25:1-4.

2         Thinking Yuriar was going to kill Qurishi, Perez-Rojas removed his firearm and

3    screamed at Yuriar to "Hey, get the fuck off of him! I'm gonna fuckin' shoot you!" Ex. 1, 6:26;

4    Ex. 4, 0:34-0:39; Ex. 27, p. 25:4-17.

5         Moving closer, Perez-Rojas saw a pair of hands fighting for a gun. Ex. 23, pp. 29:6-11,

6    32:6-33:5, 33:14-17, 39:8-11, 39:16-19; 76:4-7; Ex. 27, p. 25:4-9. Qurishi's right hand was on

7    the gun grip and one of Yuriar's hands was on the gun's slide and barrel.[5] Ex. 23, pp. 29:14-18,

8    32:20-33:7, 75:19-24; Ex. 27, pp. 39:1-19, 74:15-25.

9         Perez-Rojas suddenly heard a gunshot and saw a muzzle flash. Ex. 1, 6:26; Ex. 4, 0:34-

10   0:39; Ex. 23, pp. 23:10-23, 39:23-40:5, 58:9-17; Ex. 27, pp. 44:8-20, 57:8-16, 59:4-10. Perez-

11   Rojas aimed at Yuriar's center mass and fired twice striking Yuriar. Ex. 1, 06:28-06:30; Ex. 4,

12   0:39; Ex. 23, p. 23:15-23; Ex. 26; Ex. 27, pp. 44:8-20, 59:4-10. That stopped Yuriar's beating

13   of Quirishi as Yuriar fell off Qurishi. Ex. 1, 6:28-6:30; Exh. 4, 0:39-:0:40. Perez Rojas

14   immediately broadcast "Shots fired! Shots fired!" and "Code 3 cover, code 3 medical. *We got*

15   *two down*. One suspect is down[.]" Ex. 1, 6:34; Ex. 4, at 0:45-0:59.

16        Qurishi did not know of Rojas-Perez's presence until after Rojas-Perez fired. Ex. 19, p.

17   65:3-13; Ex. 20, pp. 36:16-22, 79:16-24.

18   **E.    Yuriar Seriously Injured Qurishi**

19        After the incident, Perez-Rojas observed Qurishi showing signs of a head injury. Qurishi

20   was  not acknowledging Perez-Rojas' presence, his eyes looked shaky, and there was bruising

21   on Qurishi's face. Ex. 23, p. 76:11-23; Ex. 27, pp. 30:5-15, 81:5-25.

22        After hearing three gunshots and running to 163rd Avenue, Hardin ran up to Qurishi

23   who appeared in shock, had a black eye forming under his left eye, a large welt forming in the

24   middle of his forehead, and additional bruising on his face. Hardin Decl., ¶¶ 21-23.

25        Qurishi was discharged from Eden Medical Center with a closed head injury. Ex. 28

26

27

28   [5] *See* footnote 4.

Motion for Summary Judgment by Defendants State of California by and Through California
Highway Patrol and Officer Basir Qurishi - 4:23-cv-06438 KAW

1    [Eden Medical Center Records], pp. 1. A photograph of Qurishi demonstrates the beating he

2    took to the face and head:



Ex. 29 [CHP 992].

As a result of Yuriar's attack on Qurishi, Qurishi ultimately suffered from a brain injury

(concussion), sprain and strain to the neck, contusions, abrasions and bruising to the left eye

socket and forehead area, and abrasions to his left hand. Ex. 30 [CIIT Injury Descriptions]; Ex.

31 [Stanford Health Care Medical Records], p. 2.

**F.    Qurishi's Shot Didn't Kill Yuriar**

Dr. Katherine Raven performed the autopsy on Yuriar. Ex. 32 [Autopsy Report]. Dr.

Raven determined Yuriar's cause of death was multiple gunshot wounds. Ex. 32, p. 1. The

combination of the two gunshot wounds to the chest (shot by Perez-Rojas) were lethal. Ex. 24,

p. 50:2-15; Ex. 33 [Gary Vilke Report], pp. 1, 8-12. The gunshot wound to Yuriar's left leg was not fatal. *Id.*

## ARGUMENT

**A.    This Court Should Grant Summary Judgment On Parents' § 1983 Claims**

**1.    Doctrine of qualified immunity**

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al Kidd*, 563 U.S. 731, 743 (2011) (simplified).

"Under [Supreme Court] precedents, officers *are entitled to qualified immunity* under §1983 *unless* (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (emphasis added). A plaintiff must overcome both prongs of qualified immunity. *Spencer v. Pew*, 117 F.4th 1130, 1137 (9th Cir. 2024); *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018); *see also Smith v. Adepa*, 81 F.4th 994, 1004 n.4 (9th Cir. 2023) ("[T]he burden is not on the officers to prove they fit perfectly within the facts of a case granting qualified immunity; the burden is on the plaintiff to show a violation of a clearly established right in the specific circumstances at issue.").

"Clearly established" law means precedent existing at the time of the conduct "'squarely governs the specific facts' at issue," *Kisela v. Hughes*, 584 U.S. 100, 104 (2018), such that it "placed the [un]constitutionality of the officer's conduct 'beyond debate,'" *Wesby*, 583 U.S. at 63, under the "'particularized' facts of the case," *White v. Pauly*, 580 U.S. 73, 79 (2017). This is a "demanding," "exacting," and "high standard." *Wesby*, 583 U.S. at 63; *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015); *Smith*, 81 F.4th at 1001-02.

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is

unlawful." *Wesby*, 583 U.S. at 63 (simplified). It "must be settled law …. It is not enough that the rule is suggested by then existing precedent." *Id.* (simplified). "The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity." *Id.*

"[C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* at 63-64 (simplified). "A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established." *Id.* at 64 (simplified).

"Except in the rare case of an obvious instance of constitutional misconduct" "[p]laintiffs must point to prior case law that articulates a constitutional rule specific enough to alert the[] [officer] in this case that [his] particular conduct was unlawful." *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).[6] "[P]rior precedent must be 'controlling' from the Ninth Circuit or Supreme Court or otherwise be embraced by a 'consensus' of [appellate] courts outside the relevant jurisdiction." *Sharp*, 871 F.3d at 911; *see Spencer*, 117 F.4th at 1142 n.6 ("district court decisions 'are insufficient to create a clearly established right.'") (quoting *Marsh v. City of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) (citing *Wilson v. Layne*, 526 U.S. 603, 616 (1999)).

Importantly, existing precedent with "materially distinguishable" facts is insufficient to constitute "clearly established" law. *Rivas Villegas v. Cortesluna*, 595 U.S. 1, 6 7 (2021); *Spencer*, 117 F.4th at 1138.

The Supreme Court requires a plaintiff "'to prove that "precedent on the books" at the time the officials acted "would have made clear to [him] that [his] violated the Constitution.'"" *Carley v. Aranas*, 103 F.4th 653, 661 (9th Cir. 2024); *Taylor v. Barkes*, 575 U.S. 822, 827

---

[6] "[T]he bar for finding such obviousness is quite high." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc). "'Obvious' cases are few and far between," *Sabra v. Maricopa County Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022), and "exceedingly rare," *Waid v. County of Lyon*, 87 F.4th 383, 389 (9th Cir. 2023).

(2015). "So long as existing case law 'did not preclude' an official from reasonably believing that his or her conduct was lawful, the official has a right to qualified immunity." *Kramer v. Cullinan*, 878 F.3d 1156, 1163 (9th Cir. 2018) (quoting *Lane v. Franks*, 573 U.S. 228, 243 (2014)).

**2.    Qualified immunity protects Qurishi from liability on parents' Fourth Amendment excessive force claim (claim 1)**

*a.    Qurishi didn't violate the Fourth Amendment when using deadly force against Yuriar. Yuriar threatened to kill Qurishi and was on top of Qurishi savagely beating him within an inch of unconsciousness. Qurishi's use of deadly force was objectively reasonable to defend against Yuriar's brutal and on-going attack.*

The Fourth Amendment permits "objectively reasonable" force. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). "[T]he Supreme Court has instructed [courts] to inquire 'whether it would be objectively reasonable for the officer to believe that the amount of force employed was required by the situation he confronted.'" *Hart v. City of Redwood City*, 99 F.4th 543, 549 (9th Cir. 2024). This requires a court to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id.* (simplified).

Although reasonableness is an objective determination, the court does "so from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must allow for an officer's need to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Est. of Hernandez v. City of L.A.*, 139 F.4th 790, 798 (9th Cir. 2025) (en banc) (simplified). "Judges should be cautious about second guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn v. Huff*, 565 U.S. 469, 477 (2012). The "peace of a judge's chambers" cannot color the analysis, *Graham*, 490 U.S at 396, and courts are precluded from asking "whether another reasonable, or more reasonable, interpretation of the events can be constructed ... after the fact," *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, the use of deadly force is constitutionally

1    permissible." *Est. of Hernandez,* 139 F.4th at 799; *see also Napouk v. L.V. Metro. Police Dep't,*

2    123 F.4th 906, 915 (9th Cir. 2024); *Williams*, 112 F.4th at 643.

3         "The Fourth Amendment standard is reasonableness, and it is reasonable for police to

4    move quickly if delay 'would gravely endanger their lives or the lives of others even when,

5    judged with the benefit of hindsight …. The Constitution is not blind to the fact that police

6    officers are often forced to make split second judgments." *Sheehan*, 575 U.S. at 612 (simplified).

7    "'[T]he Fourth Amendment does not require omniscience,' and absolute certainty of harm need

8    not precede an act of self-protection." *Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010).

9         "These [use of deadly force] principles apply even when officers are reasonably mistaken

10    about the nature of the threat." *Estate of Strickland v. Nev. County*, 69 F.4th 614 (9th Cir. 2023);

11    *Napouk*, 123 F.4th at 915. "'Officers can have reasonable, but mistaken, beliefs as to the facts

12    establishing the existence of' an immediate threat, and 'in those situations courts will not hold

13    that they have violated the Constitution.'" *Estate of Strickland*, 69 F.4th at 621; *see id.* ("'If an

14    officer reasonably, but mistakenly," for example "believed that a suspect was likely to fight

15    back, ... the officer would be justified in using more force than in fact was needed.'").

16         Because Qurishi used deadly force, the inquiry here is "reduce[d] to 'whether the

17    governmental interests at stake were sufficient to justify it.'" *Hart*, 99 F.4th at 549.

18         *Graham* "provide[s] three factors for determining the strength of the government's

19    interest: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat

20    to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting

21    to evade arrest by flight.'" *Hart*, 99 F.4th at 549.

22         All three factors weigh heavily in Qurishi's favor.

23    i.    <u>Yuriar posed an immediate threat to Qurishi's safety as Yuriar threatened to kill</u>
       <u>Quirshi and was savagely beating him</u>

24

25         It is well established that "[t]he 'most important'" *Graham* factor is "'whether the

26    suspect posed an immediate threat to the safety of the officers or others.'" *Hart*, 99 F.4th at 549;

27    *Williams,* 112 F.4th at 643; *Estate of Strickland*, 69 F.4th at 620.

28         To be sure, the "immediacy of the threat" can outweigh all other *Graham* factors, *Estate*

1    *of Strickland*, 69 F.4th at 620; *Hart*, 99 F.4th at 552, and a court need not consider other factors
2    where the immediacy of the perceived threat warranted deadly force, s*ee, e.g., Plumhoff v.*
3    *Rickard*, 572 U.S. 765, 777 (2014) (analyzing only the immediacy of the threat).

4        Deadly force is constitutional when the officer *reasonably believes* a suspect poses a
5    serious threat of physical injury to him. *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004).

6        Concluding Yuriar posed an actual immediate threat to Qurishi is easy.

7        It is undisputed Yuriar attacked Qurishi, and that Quirishi was losing the fight. It is
8    undisputed that Yuriar was on top of Qurishi pummeling him into unconsciousness and causing
9    serious injury. It is undisputed Yuriar told Qurishi he was going to kill him while beating him
10    senseless.  It is further undisputed that Yuriar had his hand on Qurishi's gun. Only Perez-Rojas'
11    deadly force stopped Yuriar's brutal attack.

12        Ninth Circuit case law consistently finds deadly force reasonable under similar facts.
13    *See, e.g., Billington v. Smith*, 292 F.3d 1177, 1184-85 (9th Cir. 2002), *rev. on other grounds,*
14    *County of Los Angeles v. Mendez* 581 U.S. 420 (2017); *Estate of Rea v. County of Los Angeles,*
15    2021 U.S. Dist. LEXIS 200490, at \*24-30 (C.D. Cal. Oct. 7, 2021); *Estate of Adomako v. City*
16    *of Fremont*, 2019 U.S. Dist. LEXIS 104482, at \*19-21 (N.D. Cal. June 21, 2019); *Caldwell v.*
17    *City of Selma*, 2014 U.S. Dist. LEXIS 121380, at \*18-28 (E.D. Cal. Aug. 29, 2014); *J. L. D. v.*
18    *City of L.A.,* 2012 U.S. Dist. LEXIS 193010, at \*21-22 (C.D. Cal. May 10, 2012*), rev. on other*
19    *grounds*, 555 F. App'x 670, 671 (9th Cir. 2014) ("We assume the correctness of the district
20    court's conclusion that Goff was entitled to use deadly force to repel an attacker who had forced
21    him to the ground and continued an attack."); *Day v. County of Contra Costa*, 2008 U.S. Dist.
22    LEXIS 93487, at \*24-40 (N.D. Cal. Nov. 10, 2008); *see also Mendez v. Poitevent*, 823 F.3d 326,
23    332 (5th Cir. 2016) ("[J]ust before [the officer] shot Mendez, Mendez struck [the officer] in the
24    temple, hard enough to concuss him. In that moment, it was reasonable for [the officer] --
25    concussed, disoriented, weakened, suffering a partial loss of vision, and fearing that he might
26    lose consciousness in the presence of a violent suspected felon -- to believe that Mendez might
27    attempt to take advantage of his weakened or unconscious state to overpower and seriously
28    injure or kill him.").

'"Even though the immediacy of the threat posed by [Yuriar] ... is dispositive here,' *Hart*, 99 F.4th at 552, the other *Graham* factors also support the reasonableness of [Quirshi's] conduct." *Hays v. City of Ventura*, 2025 U.S. Dist. LEXIS 69130, at *17 (C.D. Cal. Apr. 8, 2025); *see also Eyre v. City of Fairbanks*, 2024 U.S. App. LEXIS 19770, at *3 (9th Cir. Aug. 7, 2024) ("the threat that Eyre posed is dispositive" in the *Graham* analysis).

ii.    If considered, the remaining *Graham* factors favor Qurishi

The remaining *Graham* factors are the severity of the crime at issue and whether the suspect was actively resisting or trying to avoid arrest. 490 U.S. at 396; *Hart*, 99 F.4th at 549; *see also Espinosa v. City & County of S.F.,* 598 F.3d 528, 537 (9th Cir. 2010) ("The parties 'relative culpability' i.e., which party created the dangerous situation and which party is more innocent, may also be considered.") (quoting *Scott*, 550 U.S. at 384).

The Ninth Circuit "often has 'used the severity of the crime at issue as a proxy for the danger a suspect poses at the time force is applied.'" *Napouk*, 123 F.4th at 919. Although Yuriar committed many lesser crimes just through his resistance, *see* Cal. Pen. Code §§ 69, 148(a), Yuriar's physical attack on Qurishi was the "sufficiently serious and dangerous crime" of felony assault on a peace officer. *Napouk*, 123 F.4th at 919; *see* Cal. Pen. Code §§ 217.1(a), 240, 241(c); *see also Estate of Adomako v. City of Fremont*, 2019 U.S. Dist. LEXIS 104482, at *18-19 (N.D. Cal. June 21, 2019) ("It is also undisputed that at the point [the officer] shot Adomako, Adomako had also committed battery by repeatedly striking at [the officer], making contact several times with [his] shoulder and head."). And there is no question that Yuriar's attack on Qurishi was more than active resistance and Yuriar created the need for Qurishi to use deadly force by starting and continuing the attack. The "relative culpabilities" are not even close. Qurishi was trying to do his job, and Yuriar was trying to kill Qurishi or at the very least seriously injury him.

iii.    Additional factors, if considered, favor Qurishi

Although other factors like a suspect's "mental state, the availability of less lethal means, and the lack of an effective warning," "are relevant when evaluating the totality of the circumstances, [citation], they do not overcome the *Graham* factors to prove a constitutional

25

Motion for Summary Judgment by Defendants State of California by and Through California
Highway Patrol and Officer Basir Qurishi - 4:23-cv-06438 KAW

violation where" as here, "all three *Graham* factors favor [Qurishi's] use of force. But even if they could, each weigh in [his] favor in this case." *Napouk*, 123 F.4th at 920.

Yuriar was not having a "mental health crisis," and where, as here, Qurishi reasonably believed an immediate and serious threat existed, deadly force is constitutionally used without warning and regardless of potentially less severe alternatives. *Hayes v. County of San Diego,* 736 F.3d 1223, 1233 (9th Cir. 2013); *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Nor was a warning or some lesser means of force by Qurishi feasible during Yuriar's attack. Qurishi wasn't constitutionally required to risk further serious injury or death by delaying the use of deadly force to stop the beating by warning Yuriar or first trying lesser means of force because officers '"need not avail themselves of the least intrusive means of responding to an exigent situation.'" *Napouk*, 123 F.4th at 919; *Wilkinson*, 610 F.3d at 551 (A reasonable use of force "encompasses a range of conduct, and the availability of a less intrusive alternative will not render conduct unreasonable."); *see Nehad v. Browder*, 929 F.3d 1125, 1137 (9th Cir. 2019) ("We recognize, of course, that it may not always be feasible for an officer to warn a suspect prior to deploying force."); *Smith*, 81 F.4th at 1006-07 (discussing how "warning rule" "is not a one-size-fits-all proposition that applies in every case or context"); *Lal v. California*, 746 F.3d 1112, 1118 (9th Cir. 2014) ("[E]ven assuming that it might have been possible for the officers to have given [the suspect] a wider berth . . . there is no requirement that such an alternative be explored.").

b.    *Absence of clearly established law.  No case has ever held that an officer violates the Fourth Amendment by using deadly force to stop a serious, significant and injury producing physical attack by a suspect.*

The Supreme Court has "stressed that the 'specificity' of the ["clearly established"] rule is 'especially important in the Fourth Amendment context,'" *Wesby*, 583 U.S. at 64, because of the "'hazy border between excessive and acceptable force,'" *Kisela*, 584 U. S., at 105, and the recognition "that it is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts," *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

No controlling precedent "on the books" existed on July 3, 2023 telling all reasonable

26

1    officers that Qurishi's use of deadly force violated the Fourth Amendment under the facts of this

2    case and, indeed, precedent supports the opposite conclusion. *See, e.g., Smith*, 81 F.4th 994,

3    1002-06 (9th Cir. 2023) (finding no clearly established law precluded officers from using deadly

4    force where suspect "violently resisted and assaulted the officers, in a struggle that grew more

5    intense as it wore on"); *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 950-53 (9th Cir.

6    2017) (finding no clearly established law in case where suspect and officer were involved in a

7    fight and suspect had the "upper hand in the fight" and was "pummeling [officer] to the point

8    that he began to pass out"); *Estate of Adomako*, 2019 U.S. Dist. LEXIS 104482, at *32-33

9    (finding no clearly established law in case where deadly force was used in a physical fight where

10   suspect physically attacked the officer and "repeatedly swung at him and made significant

11   physical contact with [the officer's] head in the seconds before [the officer] Taylor shot him").

12   **3.      Qualified immunity protects Qurishi from liability from the Fourth Amendment
13            failure to intervene and integral participant theories of liability if the Court
          considers these liability theories, which it should not.**

14   *a.     Though identified in the complaint, the Court should decline to consider these liability
15          theories because the complaint is devoid of any supporting facts*

16        Parents make passing and conclusory references to the failure to intervene and intercede

17   theories of Fourth Amendment liability but allege no supporting facts. Dkt. 30, ¶¶ 31, 47, 52.

18        "[S]ummary judgment is not 'a procedural second chance to flesh out inadequate

19   pleadings'" lacking "'the necessary factual averments [ ] required with respect to each material

20   element of the underlying legal theory." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722,

21   745 (9th Cir. 2025) (quoting *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir.

22   2006)). "Thus, where [as here] a plaintiff does not disclose a basis for liability 'either in the

23   operative complaint or in [their] discovery responses,' the court may refuse to consider those

24   allegations at summary judgment." *Frohm v. City & County of S.F.*, 2025 U.S. Dist. LEXIS

25   92317, at *9 (N.D. Cal. May 14, 2025); *see also James v. Gen. Dynamics Land Sys. Inc.*, 582 F.

26   Supp. 3d 673, 680 (D. Alaska 2022) ("Plaintiff cannot maintain a new theory of liability to avoid

27   summary judgment that was not adequately presented in the operative complaint."); *Novoa v.

28   City & County of S.F.*, 2015 U.S. Dist. LEXIS 118586, at *18 (N.D. Cal. Sep. 3, 2015) ("Plaintiff

1    failed to include any factual allegations related to Defendant's violation of his due process right

2    and didn't identify it as a cause of action in the complaint.").

3    *b.*    *Failure to intervene theory fails*

4    i.    Assuming Perez-Rojas used excessive force against Yuriar, Qurishi didn't know Perez-
       Rojas was present until after Perez-Rojas fired.  Quirishi thus had no time much less a
5       "realistic opportunity to intervene" in Perez-Rojas's use of deadly force.

6        "Officers can be held liable for failing to intercede in situations where excessive force is

7    claimed to be employed by other officers only if 'they had an opportunity to intercede.'" *Hughes*

8    *v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022). But there must be a "realistic opportunity to

9    intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000). Moreover, failure-to-

10   intervene liability requires an "aware[ness] of the constitutional violation as it occurred." *Tobias*

11   *v. Arteaga*, 996 F.3d 571, 584 (9th Cir. 2021).

12       Qurishi cannot be liable for failing to intervene in Perez-Rojas' use of deadly force.

13   Qurishi had neither an "aware[ness] of the constitutional violation as it occurred," *Tobias*, 996

14   F.3d at 584, nor a "realistic opportunity to intercede," *Cunningham*, 229 F.3d at 1290, because

15   Qurishi didn't know Perez-Rojas was present until *after* Perez-Rojas's split-second decision

16   shoot Yuriar, *see A.L. v. City of Bakersfield*, 2025 U.S. Dist. LEXIS 32837, at *26 (E.D. Cal.

17   Feb. 24, 2025) ("It follows that a 'police officer cannot be held liable under a failure-to-intervene

18   theory when a fellow officer engages in a split-second use of excessive force.' *Andrich v. Kostas*,

19   470 F. Supp. 3d 1048, 1062 (D. Ariz. 2020), *aff'd*, No. 22-16226, 2023 U.S. App. LEXIS 25002,

20   2023 WL 6157407 (9th Cir. Sept. 21, 2023). That is because liability under a failure-to-intervene

21   theory 'is reserved for circumstances where the use of excessive force extends over a relatively

22   longer period of time, such that other officers in the vicinity have a reasonable opportunity to

23   observe it, recognize its impermissible character, and take action to stop it.' *Id.*").

24   ii.    Precedent didn't clearly establish what amounts to a realistic opportunity to intervene
       and no factually analogous cases existed anyway
25

26       Again, failure to intervene liability requires a "realistic opportunity" to intervene.

27   *Cunningham*, 229 F.3d at 1290. Because precedent does not clearly establish what that a

28   "realistic opportunity" means, Qurishi is immune even assuming factual questions exist

28

1    regarding his failure to intervene in Perez-Rojas's alleged unconstitutional use of deadly force.

2        As the Ninth Circuit held in *Penaloza v. City of Rialto*:

3        *Our precedent does not clearly establish when an officer has a 'realistic opportunity to intercede.'* In the one case where we considered such a claim, we concluded that the officers did not have a realistic opportunity to intervene and therefore the officers were entitled to qualified immunity. *See Cunningham v. Gates*, 229 F.3d at 1289-90 (concluding that bystander officers present at a shootout between fellow officers and suspects did not have a reasonable opportunity to stop fellow officers from shooting). *Because the law does not clearly establish when an officer must intervene, Lopez is entitled to summary judgment on qualified immunity grounds for his failure to intervene ….*

8    836 F. App'x 547, 549-50 (9th Cir. 2020) (emphasis added) .

9        *Penaloza* is not binding but "unpublished decisions have persuasive value and indicate

10   how the Ninth Circuit applies binding authority." *Nuh Nhuoc Loi v. Scribner*, 671 F. Supp. 2d

11   1189, 1201 n.10 (S.D. Cal. 2009); *see also Smith v. Intel Corp*., 745 F. Supp. 3d 853, 864 n.5

12   (N.D. Cal. 2024) ("[A]n unpublished Ninth Circuit decision …may be considered for its

13   persuasive value.").

14       Indeed, numerous district courts in the Ninth Circuit have relied on *Penaloza* to find

15   qualified immunity bars failure to intervene claims. *See, e.g., Gellos v. City of Phx.,* 2025 U.S.

16   Dist. LEXIS 13601, at *8-9 (D. Ariz. Jan. 24, 2025); *Dunivin v. County of Riverside*, 2023 U.S.

17   Dist. LEXIS 238872, at *37 (C.D. Cal. Nov. 21, 2023); *Stroud v. Gore*, 2022 U.S. Dist. LEXIS

18   172094, at *8 (S.D. Cal. Sept. 22, 2022); *but see Hernandez v. Hodges*, 2023 U.S. Dist. LEXIS

19   144798, at *49-50 (N.D. Cal. Aug. 17, 2023) (declining to follow *Penaloza* on a post-verdict

20   motion).

21       This Court should follow *Penaloza*.

22       Even without *Penaloza*, no factually analogous cases existing on July 3, 2023 clearly

23   established Qurishi violated the Fourth Amendment when failing to intervene in Perez-Rojas's

24   use of deadly force under the facts of this case. *See Perkins v. City of Modesto*, 2023 U.S. Dist.

25   LEXIS 90989, at *54 (E.D. Cal. May 24, 2023) ("Here, the body cam footage demonstrates that

26   Olson had no indication Ramar would shoot such to give him sufficient time to do anything to

27   prevent Ramar from shooting Plaintiff in any of the three volleys. Plaintiff has pointed to no

28   cases that are even remotely factually analogous, and the Court has been unable to identify any

29

1    such cases in its extensive independent research. Therefore, the Court finds that Olson is entitled

2    to qualified immunity as to Plaintiff's allegation that he failed to intervene in the shooting.").

3    *c.*    *Integral Participant Theory Fails*

4    i.    No evidence supports integral participant liability against Qurishi. Indeed, the evidence
     disproves it.

5

6          Integral participant liability may exist "in two situations: those in which (1) the defendant

7    knows about and acquiesces in the constitutionally defective conduct as part of a common plan

8    with those whose conduct constitutes the violation or (2) the defendant sets in motion a series

9    of acts by others which the defendant knows or reasonably should know would cause others to

10   inflict the constitutional injury." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (simplified).

11         Parents have no evidence supporting either of those two situations.

12         There is no evidence Qurishi knew about and acquiesced as part of a common plan with

13   Perez-Rojas to use deadly force, nor is there any evidence that Qurishi would know his conduct

14   (whatever that conduct might have been) would result in Perez-Rojas using deadly force to save

15   his life, much less an unconstitutional use of deadly force.  Moreover, it is difficult to fathom

16   how Qurishi and Perez-Rojas could be integral participants when Qurishi didn't know of Perez-

17   Rojas' presence until after Perez-Rojas used deadly force.

18   ii.   Precedent didn't clearly establish the parameters of integral participant liability

19         The Ninth Circuit has twice observed it has "not previously 'define[d] the minimum level

20   of involvement for liability under the integral-participant doctrine.'" *Peck*, 51 F.4th at 889

21   (quoting *Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020). Thus, the "contours" of the

22   integral participant doctrine were not clearly established on July 3, 2023. *See Wesby*, 583 U.S.

23   at 63 ("The rule's contours must be so well defined that it is 'clear to a reasonable officer that

24   his conduct was unlawful in the situation he confronted'"); *see, e.g. Rose v. Farney*, No. 23-

25   2846, 2025 U.S. App. LEXIS 5738, at *5-6 (9th Cir. Mar. 12, 2025) ("The district court properly

26   determined that Deputy Godfrey was entitled to qualified immunity when he handcuffed Bradley

27   because Rose failed to demonstrate that it was 'beyond debate' that Deputy Godfrey's conduct

28   violated a clearly established right. [Citation]). Accordingly, the district court also properly

30

Motion for Summary Judgment by Defendants State of California by and Through California
Highway Patrol and Officer Basir Qurishi - 4:23-cv-06438 KAW

granted summary judgment in favor of Deputies Farney, Cardenas, and Shrader on Rose's related integral participant claim. *See Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022)").

### 4.    Qualified immunity protects Qurishi from liability on parents' Fourteenth Amendment loss of familial association claim (claim 3)

"Parents and children have a substantive due process right to a familial relationship free from unwarranted state interference." *Scott v. Smith*, 109 F.4th 1215, 1227 (9th Cir. 2024). But proving this claim "demands more of such a plaintiff than a Fourth Amendment claim by the victim of an officer's actions." *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056-57 (9th Cir. 2022). It requires proof that an officer's conduct "'shocks the conscience.'" *Id.* at 1055.

*a.    The predicate underlying Fourth Amendment violation didn't exist*

Because Qurishi didn't violate Yuriar's Fourth Amendment rights, the Fourteenth Amendment loss of familial association claim accordingly fails. *Gauslik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004); *Schwarz v. Lassen County*, 628 F. App'x 527, 528 (9th Cir. 2016) ("Recovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation."); *Galindo v. City of S.F.*, 718 F. Supp. 3d 1121, 1143 (N.D. Cal. 2024); *J.P. ex rel. Balderas v. City of Porterville*, 801 F.Supp.2d 965, 988-89 (E.D. Cal. 2011); *see also M.B. v. City of L.A.*, 2025 U.S. Dist. LEXIS 82498, at *25 (C.D. Cal. Apr. 29, 2025) ("First, as a threshold issue, the Court must determine that the defendant officer used excessive force.").

*b.    Qurishi acted with the legitimate law enforcement objective of self-protection*

"Where actual deliberation [by an officer] is practical, then an officer's deliberate indifference may suffice to shock the conscience. But where, as here, a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Napouk,* 123 F.4th at 923 (simplified); "[D]eliberation' … should not be interpreted in a narrow, technical sense. Though a police officer may literally have 'time to deliberate' while, e.g., chasing a suspect, we nevertheless apply the purpose to harm standard whenever the circumstances force the officers to act quickly" and "actual deliberation is practical only when

31

Motion for Summary Judgment by Defendants State of California by and Through California Highway Patrol and Officer Basir Qurishi - 4:23-cv-06438 KAW

1  officials have time to make unhurried judgments, with the chance for repeated reflection, largely
2  uncomplicated by the pulls of competing obligations." *Puente v. City of Phx.*, 123 F.4th 1035,
3  1055 (9th Cir. 2024) (simplified); *see. e.g, Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir.
4  2008) (applying the purpose to harm standard to a "five-minute altercation" between the suspect
5  and the officer that was "quickly evolving and escalating, prompting repeated split-second
6  decisions") (simplified).

7  The undisputed evidence recited earlier conclusively establishes Qurishi had no time to
8  "deliberate" and used deadly force in a fast-paced evolving situation for the singular and
9  legitimate law enforcement objective of self-protection. *See Ochoa*, 26 F.4th at 1056 (self-
10  protection is a legitimate law enforcement objective); *A.D. v. State of California Highway
11  Patrol*, 712 F.3d 446, 453 (9th Cir. 2013) (belief in need for self-protection a subjective inquiry).

12  *c.*      *Absence of clearly established law demonstrating a Fourteenth Amendment violation*

13  Parents must identify controlling precedent existing on July 3, 2023 holding Qurishi's
14  use of deadly force under the circumstances presented here violated *parent's Fourteenth
15  Amendment rights. Nicholson v. City of L.A.,* 935 F.3d 685, 696 & n.5 (9th Cir. 2019) (Fourth
16  Amendment cases don't satisfy the "clearly established" component of qualified immunity for
17  a Fourteenth Amendment claim).

18  No controlling precedent existed.

19  **B.      This Court Should Grant Summary Judgment On Parents' State Law Claims**

20  **1.      Battery claim fails because Qurishi's use of deadly force was objectively reasonable
21          under the Fourth Amendment (claim 4)**

22  Parents' battery claim is based on excessive force which is "a counterpart to a federal
23  claim of excessive use of force." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009);
24  *Rosenbaum v. City of San Jose*, 2021 U.S. Dist. LEXIS 245185, at *70 (N.D. Cal. Dec. 23,
25  2021). "[T]he reasonableness standard applied to state law battery by a peace officer matches
26  the reasonableness standard used for Fourth Amendment excessive force claims." *Reyes v. City
27  of Santa Ana*, 832 F. App'x 487, 491 (9th Cir. 2020); *accord Avina v. United States*, 681 F.3d
28  1127, 1131 (9th Cir. 2012); *Rosenbaum*, 2021 U.S. Dist. LEXIS 245185, at *71; *Brown*, 171

Cal. App. 4th at 527.

Because Qurishi's use of force didn't violate the Fourth Amendment, the battery claim fails. *Reyes*, 832 F. App'x at 491; *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001); *Reimann v. Town of Los Gatos*, 2024 U.S. Dist. LEXIS 247946, at *12 (N.D. Cal. Sep. 16, 2024).

**2.     Bane Act claim fails because Qurishi's use of deadly force didn't violate Yuriar's Fourth Amendment rights or, alternatively, Qurishi lacked a specific intent to violate Yuriar's Fourth Amendment rights (claim 6).**

Parents' Bane Act claim fails because Qurishi didn't violate Yuriar's Fourth Amendment rights. *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1155 (9th Cir. 2022) ("California's Bane Act requires proof of an underlying constitutional violation.").

Notwithstanding, and assuming a Fourth Amendment violation, parents cannot establish Qurishi had a "specific intent" to violate Yuriar's rights. *Reese v. County of Sacramento,* 888 F.3d 1030, 1043 (9th Cir. 2018). The evidence establishes neither Qurishi's specific intent to violate nor a reckless disregard for Yuriar's Fourth Amendment rights when using deadly force. *Id.* at 1045.

**3.     Negligence claim fails because Qurishi's use of deadly force was objectively reasonable under the totality of circumstances (claim 5)**

Parent's negligence claim is based on negligent use of force, including pre-shooting conduct. *See* Dkt. 30, ¶ 73 (a)-(d).

"[P]eace officers have a duty to act reasonably when using deadly force." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013). Except for the reasonableness of pre-shooting tactical conduct in the evaluation of the "totality of circumstances," the reasonableness standard mirrors the Fourth Amendment standard. *Id.* at 629, 632, 637-39; *see* Cal. Pen. Code, § 835a (deadly force standards); *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125-26 (9th Cir. 2021) (explaining use of force negligence analysis); *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 932-37 (2021) (same).

As already explained, Qurishi's use of deadly force was objectively reasonable. The question thus becomes whether any "preshooting circumstances might show that an otherwise

33

Motion for Summary Judgment by Defendants State of California by and Through California Highway Patrol and Officer Basir Qurishi - 4:23-cv-06438 KAW

reasonable use of deadly force was in fact unreasonable." *Hayes*, 57 Cal. 4th at 630. Regardless, "as long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Id.* at 632.

Parents have no evidence establishing anything Qurishi did or didn't do before using deadly force transformed his objectively reasonable use of force into an unreasonable one under the totality of the circumstances in this case. *See id.* at 632 ("Although preshooting conduct is included in the totality of circumstances, we do not want to suggest that a particular preshooting protocol ... is always required. Law enforcement personnel have a degree of discretion as to how they choose to address a particular situation. Summary judgment is appropriate when the trial court determines that, viewing the facts most favorably to the plaintiff, no reasonable juror could find negligence.").

**C.     This Court Should Grant Summary Judgment On Parents' Fourteenth Amendment, Battery And Negligence Claims Seeking Their Own Damages For The "Wrongful Death" Of Yuriar.  Qurishi's Conduct Didn't Cause Yuriar's Death.**

Parents seek their own damages for the "wrongful death" of Yuriar through their Fourteenth Amendment loss of familial association claim and their state law battery and negligence claims. *See McGinnis v. County of Sonoma*, 2023 U.S. Dist. LEXIS 98656, at *5-6 (N.D. Cal. June 6, 2023) ("[A] parent - like McGinnis - may bring a § 1983 claim alleging that her right to familial association was violated by the unconstitutional death of her child. Such a claim is brought in the parent's own capacity and is not a survivorship action."); *Lattimore v. Dickey*, 239 Cal. App. 4th 959, 968 (2015) ("A cause of action for wrongful death is a statutory claim. Its purpose is to compensate specified persons – heirs -- for the loss of companionship and for other losses suffered as a result of a decedent's death.") (simplified).

Thus, parents must establish Qurishi caused Yuriar's death to prevail on these claims. *Chaudhry v. Aragón*, 68 F.4th 1161, 1169-70 (9th Cir. 2023) (plaintiff must prove both "causation in fact" and "proximate cause" to prevail under § 1983); *Norgart v. Upjohn Co.*, 21

34

1   Cal. 4th 383, 390 (1999) (wrongful death claim requires a "wrongful act or neglect on the part

2   of one or more persons that causes the death of another person") (simplified).

3       They cannot.  There is no evidence that Quirshi's use of deadly force caused Yuriar's

4   death. As recited earlier, the evidence establishes the opposite. Yuriar sustained a non-life-

5   threatening wound from Qurishi's single shot to his leg whereas the two shots by Perez-Rojas

6   were fatal.

### CONCLUSION

8       The Court should grant summary judgment for Qurishi and CHP. The undisputed

9   evidence establishes Qurishi is entitled to qualified immunity from parents' § 1983 claims. The

10  same evidence establishes an absence of liability on parents' state law claims, which negates

11  both the direct liability claims against Qurishi and the vicarious liability claims against CHP.

12   Dated: October 15, 2025                    Dean Gazzo Roistacher LLP

14                                      By:  */s/ Lee H. Roistacher*
15                                          Lee H. Roistacher
                                           Kimberly A. Sullivan
16                                          Brooke M. Mesner
17                                          Attorneys for Defendants
                                           State of California by and through
18                                          California Highway Patrol and Officer
                                           Basir Qurishi
19                                          Email: lroistacher@deangazzo.com
20                                                 ksullivan@deangazzo.com
                                                  bmesner@deangazzo.com