# EXHIBIT 25



NATIONAL JUSTICE CONSULTANTS, INC.

1014 BROADWAY • SUITE 350 • SANTA MONICA, CA 90401 • 310.429-2940 • crchapman@earthlink.net

Mr. Lee H. Roistacher, Esq.
Law Offices of Dean Gazzo & Roistacher, LLP
440 Stevens Avenue, Suite 100
Solano Beach, California 92075

Federal Rule of Civil Procedure 26 (a)(2)(B)
REPORT OF DEFENDANTS' POLICE PRACTICES EXPERT

Re:  *Maria Lina Yuriar, et al.  vs. State of California, et al.*
     United States District Court, Northern District of California Case No.: 4:23-cv-06438-KAW

Dear Mr. Roistacher,

Per my retention agreement in this case, the following is a preliminary report based on my review and evaluation of the facts in the case.  As an expert in law enforcement policies, procedures, training and tactics in the area of police use of force, the focus of this report will be to formulate opinions regarding the actions of California Highway Patrol (*hereinafter CHP*) Officer Basir Sahil Qurishi (*hereinafter Officer Qurishi*) in the shooting incident involving Juan Deigo Bernal-Yuriar (*hereinafter Yuriar*). Upon receipt of additional information and/or documents on which to opine, I reserve the right to modify my findings and conclusions accordingly.

In my analysis of this case, I did not assign credibility to any statements or testimony of Defendants, plaintiffs or witnesses.  My conclusions and opinions therefore are based on the available facts and applied against the backdrop of the training, policies, and best practices of the California Highway Patrol specifically, and all certified peace officers in the State of California generally, regarding the use of deadly force on the date of this incident.  In addition to the above, my analysis of the immediate case is based on my professional education, training, and over 50 plus years of experience in working similar types of cases and circumstances as a career law enforcement officer, deputized United States federal agent, California State Chief of Police, certified California POST instructor,[1] and active police practices consultant and expert at the local, State, and federal levels.

---

[1] California Commission on Peace Officer Standards and Training

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

I. Overview of Incident:

In the early morning hours of July 3, 2023, CHP Officer Qurishi and his partner CHP Officer Ryan Hardin were on-duty in full uniform, driving a marked black and white CHP vehicle assigned to the Northern California Castro Valley Area CHP office. The officers were patrolling Interstate 580 near the westbound MacArthur Boulevard exit when Officer Hardin observed a Hyundai vehicle, later determined to be stolen, traveling at an estimated speed of 100 mph, in violation of California Vehicle Code (CVC) section 22349 (a)- exceeding the 65 mph maximum speed limit. Officer Hardin activated his emergency equipment and followed the speeding vehicle in an attempt to initiate an enforcement stop. The suspects fled from the officers and exited the freeway at 164th Avenue at a high rate of speed, whereupon the driver lost control and collided with a power pole at the end of the off-ramp. It was later found that Yuriar was an occupant in the vehicle with three other suspects.[2] All of the suspects quickly exited the vehicle and fled on foot into the surrounding neighborhood. Officer Hardin went into foot pursuit of one of the suspects while Officer Qurishi followed behind in the CHP vehicle. Shortly thereafter, Officer Hardin advised GGCC that he lost sight of the suspects and also realized that Officer Qurishi was not following him in the police vehicle. Meanwhile, Officer Qurishi continued to search for the suspects when he saw the two figures running a short distance away on 163rd Avenue. Officer Qurishi initially believed that the two figures were Officer Hardin chasing behind one of the suspects.[3] However, unknown to Officer Qurishi at the time, the two figures running away were actually Yuriar and another subject later identified as Ivan Ramirez. As Officer Qurishi drove in the direction of the suspects, he observed them voluntarily stopping in front of an apartment complex located at 1621 163rd Avenue. Officer Qurishi approached the suspects and ordered them to get on the ground and broadcast that he had two of the suspects detained and requested assistance. However, due to poor radio reception Officer Hardin did not hear the portion of the broadcast that included Officer Qurishi's exact location. As Officer Qurishi waited for assistance, he observed Yuriar reaching for his ankle area. [4]

---

[2] He and Juan Yuriar got picked up by Eric and Abraham. Deposition testimony of Ramirez , page 24:15-20.
[3] Deposition of Officer Qurishi, page 19:1-6.
[4] Officer interview statement, page 32:24-25. Bates stamp CHP00000574. This observation was consistent with the testimony of witness Owen Vivo who stated that he saw Yuriar reaching for his foot (Ankle area) when he was lying down. Page 40:1-4.

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

Officer Qurishi then approached Ramirez who was the closest suspect to him at the time and applied one handcuff to his right wrist. However, before Officer Qurishi completed the handcuffing procedure, Yuriar, who had been prone on the ground a short distance away, suddenly got up and began running eastbound on 163rd Avenue. Officer Qurishi was unsure whether Yuriar was armed and feared that he would pose a threat to the immediate community if allowed to escape.[5]   Officer Qurishi relinquished control of Ramirez and chased after Yuriar for approximately 15 feet. Officer Qurishi caught up to Yuriar in the driveway of the location and wrapped his arms around his torso in an upper body control hold. However, when Officer Qurishi attempted to control Yuriar by pulling him to the ground, Yuriar suddenly spun around, and, according to eyewitness Owen Michael Vivo, dipped his shoulder, lowered his center of gravity, and picked the officer up over his shoulder and flipped him over onto his back.[6] Officer Qurishi landed flat on his back causing his head to bounce off of the concrete sidewalk. Yuriar then mounted on top of Officer Qurishi and proceeded to severely beat down on him with repeated heavy fist punches that impacted on the officer's head and face.   As the vicious beating continued, Yuriar yelled at Officer Qurishi, *"I'm gonna kill you, Nigga," "What's up, Nigga?"*[7] and *"Do you like that?"*[8]   During this time, suspect Ramirez could be heard yelling, *"Stop Diego." "What are you doing?" "It's not worth it."*[9]

As the violent beating continued, the defenseless officer became disoriented and semi-conscience. At that point, Officer Qurishi feared that he would soon totally lose consciousness and be killed by Yuriar.   In an effort to protect his head and defend himself from being killed Officer Qurishi pulled his firearm and attempted to aim it at the body of Yuriar.[10] At that moment Officer Qurishi felt resistance on his gun.[11]

---

[5] Officer Qurishi's deposition, page 31:19-20.
[6] Witness Owen Vivo's statement: Bates Stamp CHP00000344.  Deposition of Witness Owen Vivo, page 26:9-22.
[7] Officer Qurishi's interview statement, page 78:13-25.
[8] Witness Owen Vivo's statement: Bates Stamp CHP00000344.
[9] Witness Owen Vivo's statement: Bates Stamp CHP00000344
[10] Officer Qurishi's deposition, page 52:20-24. *"He told me he was going to kill me, and he was doing so by delivering deadly blows to my head.  So, in that moment, I removed my firearm in order to stop the threat and to save my life from being taken from me."*
[11] Although Officer Qurishi testified that he did not see Yuriar's hand on his gun, Alameda County Deputy Sheriff Perez- Rojas from his position observed Yuriar's hands on the slide and barrel of Officer Qurishi's gun as stated on page 29:14-18.

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

___

In the immediate defense of his life, Officer Qurishi was able to fire one round after which his gun jammed and became inoperable.[12] To the surprise of Officer Qurishi, Yuriar did not exhibit any reaction to the gunshot and the brutal beating continued. Suddenly, Officer Qurishi heard two shots, at which time the life threatening beating immediately stopped, and Yuriar fell off from atop of his body. Officer Qurishi then observed an Alameda County Deputy Sheriff later identified as Deputy Alexis Perez-Rojas standing nearby.

It was later learned that Alameda County Deputy Sheriff Perez-Rojas was monitoring the call over his police radio and responded to the area to assist. Upon his arrival Deputy Perez-Rojas witnessed the life threatening attack on Officer Qurishi and Yuriar's attempt to take-away the officer's gun. Deputy Perez-Rojas issued a warning to Yuriar by yelling, *"Get off of him."*[13] Having the time and opportunity to comply with Deputy Perez-Rojas's order[14], Yuriar nonetheless continued his brutal beating on the head and face of Officer Qurishi. Deputy Perez-Rojas determined that this was a life-threatening situation for the CHP officer. In defense of the life and officer safety of Officer Qurishi, Deputy Perez-Rojas fired two rounds from his service weapon striking Yuriar in the upper extremities. As a result, Yuriar stopped his attack allowing Officer Qurishi to free himself. Deputy Perez-Rojas immediately broadcast the officer involved shooting, advising that the CHP officer was involved in a fight and the suspect was attempting to take away his gun.[15]

The Alameda County Sheriff's Office communications center dispatched assisting officers and medical aid for Yuriar who was pronounced deceased at the scene.

___

[12] Based on my 40 years of experience as a uniformed police officer and proficient with autoloading firearms, it is my opinion that one of the most common reasons for a semi-autoloading firearm to malfunction, jam and fail to feed is a condition referred to as "riding the slide." This impediment to the normal functioning of a semi-autoloading firearm is caused by holding or obstructing the slide of the gun as it travels forward after firing a round thus, preventing it to properly seat the next bullet. In such situations, a gun will immediately be out of battery and non-functional until the next round is manually seated into the chamber. In this case, Alameda County Deputy Sheriff Perez-Rojas testified that he saw Juan Yuriar's hands on the slide of Officer Qurishi's gun. This situation would have undoubtedly caused Officer Qurishi's gun to jam and could be reasonably interpreted as an attempt by Yuriar to take away the officer's gun.
[13] Deposition of Deputy Perez-Rojas, p. 24:15-24.
[14] Deposition of Witness Owen Vivo, *"Stop. Show me your hands."* Page 31:12-16.
[15] Alameda County Sheriff's Office Dispatch CAD Report, page 5 of 19.

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

_____

II. Data or Other Information Considered in Forming Opinions:

1. CHP Critical Incident Reconstruction Report: C18-401-0002
2. DOJ Division of Law Enforcement Police Shooting Team Investigation Report: B1-SA2023-00048
3. DOJ Department of Justice Bureau of Investigation Shooting team Report: OIS-2023-0072
4. CHP HPM 70.6 Chapter 1 — Use of Force
5. CHP Risk Management Use of Force Report: 345 07/03/203 01523
6. CHP Investigative Supplemental Reports: 23-009618
7. NMS Lab Report 2023-02626
8. Alameda County Sheriff's Office Crime Lab Examination Report: L23-1221-1
9. Plaintiffs' Complaint for Damages
10. Incident Detail Report: 230703GG00160
11. San Leandro Police Department Report: #2023-00024312
12. CHP Arrest – Investigation Report: 202301275
13. Alameda County Sheriff's Office Report # 23-009618 – Offense/Incident Report
14. Transcription of Recorded Interview of Officer Basir Qurishi on July 5, 2023
15. Transcription of Recorded Interview of Deputy Alexis Perez-Rojas on July 5, 2023
16. CHP MVARS (2) Axon
17. Alameda County Sheriff's Office Dispatch Center Audio: OIS 23-009618 23070 300330 163rd Ave at Liberty St SL
18. Alameda County Sheriff's Office CAD Report Event #23-07030033
19. Civilian Surveillance Video of Fight
20. Alameda County Autopsy Report
21. Deposition of Officer Basir Sahil Qurishi
22. Deposition of Deputy Alexis Perez-Rojas
23. Plaintiff Juan Guillermo's Responses to Defendant California Highway Patrol's Request for Admissions (Set One)
24. Plaintiff Juan Guillermo's Responses to Defendant California Highway Patrol's Request for Production (Set One)

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

25. Plaintiff Juan Guillermo's Responses to Defendant California Highway Patrol's Request for Special Interrogatories (Set One)

26. Plaintiff Maria Yuriar's Responses to Defendant California Highway Patrol's Request for Admissions (Set One)

27. Plaintiff Maria Yuriar's Responses to California Highway Patrol's Request for Special Interrogatories (Set One)

28. Plaintiff Maria Yuriar's Responses to CHP's Request for Productions (Set One)

29. Plaintiff Juan Gullermo's Responses to Request for Admissions Propounded by State of California By and Through California Highway Patrol to Plaintiff Juan Guillermo (Set Two)

30. Plaintiff Juan Gullermo's Responses to Interrogatories by Defendant State of California Highway Patrol to Plaintiff Juan Guillermo (Set Two)

31. Plaintiff Maria Yuriar's Responses to Request for Admissions Propounded by State of California By and Through California Highway Patrol to Plaintiff Maria Yuriar (Set Two)

32. Plaintiff Maria Yuriar's Responses to Interrogatories by Defendant State of California By and Through California Highway Patrol to Plaintiff Maria Yuriar (Set Two)

33. Plaintiff Maria Yuriar's Amended Responses To Interrogatories Propounded By State of California By And Through California Highway Patrol To Plaintiff Maria Yuriar (Set Two)

34. Plaintiff Juan Guillermo's Amended Responses To Interrogatories Propounded By State of California By And Through California Highway Patrol To Plaintiff Juan Guillermo (Set Two)

35. Plaintiff Juan Guillermo's Amended Responses To Request for Admissions Propounded By State of California By & Through CHPI To Plaintiff Juan Guillermo (Set Two)

36. Plaintiff Maria's Amended Responses To Request for Admissions Propounded By State of California By And Through California Highway Patrol To Plaintiff Maria Yuriar (Set Two)

37. Deposition of Owen Vivo, Volume I

38. Deposition of Maria Lina Yuriar

39. Deposition of Juan Guillermo Bernal Sanchez

40. Deposition of Ivan Rodriguez Ramirez, Volume I

41. California Department of Justice Physical Evidence Examination Report: BFS Case Number CV-23-004058-0006

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

_____

III.   Exhibits to be Used in Support of Opinions:

1. Peace Officer Standards and Training (POST) Learning Domain #20: Use of Force

2. Peace Officer Standards and Training (POST) Learning Domain #21: Patrol Techniques

3. Peace Officer Standards and Training (POST) Learning Domain #33: Arrest and Control

IV.   **Opinions**:

1.   CHP Officers Qurishi and Hardin had probable cause to pursue, and detain Yuriar based on the observed vehicle code violations of excessive speed, reckless driving, and evading arrest.

2.   California POST training contains numerous examples of arrest encounters that demonstrate that even when the best and most detailed planning is developed and executed, there is no 100% certainty of a predetermined outcome.  Specifically, in a rapidly unfolding tactical encounter such as a foot pursuit, there is no way of knowing all of the contingencies that may arise in the course of events.

3.   To that point, law enforcement training and best practices in relation to tactical encounters such as foot pursuits are basic guidelines designed to anticipate reasonable courses of action to address a legitimate law enforcement function depending on the totality of the circumstances.  The tactic of one officer on foot in pursuing the suspects and another officer following in a police vehicle would increase the likelihood of locating the suspects and provide a greater likelihood of their apprehension and therefore protect the safety of the immediate community.[16]

_____

[16] Deposition of Officer Qurishi, page 29:6-11: "*I was unsure if there was anybody else in the area, such as residents who may have been outside due to the fact -- for the concern of safety and the safety of community and everyone around.*"

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

4.  At the time that Officer Qurishi confronted Ramirez and Yuriar in front of 1621 163rd Avenue his decision to handcuff them prior to the arrival of assistance was proper based their initial compliance to orders to get on the ground and his concern that they may end up doing other crimes if not handcuffed.[17]  This was a proper and correct decision by Officer Qurishi based on his concern for the safety of the immediate community, especially when the officer observed Yuriar reaching to his ankle area where it is common for suspects to conceal weapons such as handguns that can present a risk to the neighborhood.[18]

5.  In rapidly developing situations, not all conditions and circumstances can be anticipated.  The unanticipated communication breakdown that occurred between Officer Hardin and Officer Qurishi during the foot pursuit that led to their separation was not failure of training or proper tactics, but rather an unfortunate unanticipated breakdown of radio communications.

6.  The ultimate outcome of the encounter between Yuriar and Officer Qurishi was caused solely by Yuriar's failure to stop and obey the lawful orders of Officer Qurishi and subsequently threatened the officer's life with a violent life threatening physical beating coupled with an attempt to take away the officer's gun.

7.  The defensive use of deadly force by Officer Qurishi was objectively reasonable, appropriate, and necessary in his attempt to save his life from the life threatening beating assault by Yuriar.

8.   Based on my 42 years of active law enforcement experience and having been involved in hundreds of physical fights as a uniformed on-duty police officer, it is my opinion based on the video evidence in this case, that Yuriar's brutal attack on Officer Qurishi would have likely severely injured or killed the officer were it not for the intervention of Alameda County Deputy Sheriff Perez-Rojas.

---

[17] Deposition of Officer Qurishi, page 25:5-24.
[18] Deposition of witness Owen Vivo, page 45:12-16.

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

9.  There were no other reasonable or feasible less-lethal means available to Officer Qurishi other than the use of deadly force in order to save his life from the potentially deadly beating assault by Yuriar and to maintain possession of his gun.

    Officer Qurishi's decision to use deadly force to save his life was consistent with that of any other well-trained and competent police officer similarly situated and faced with a deadly life-threatening physical beating by a suspect in a position of advantage sitting astride the officer's supine body while delivering repeated heavy blows to the officer's face and head and subsequently placing his hands on the officer's gun.[19]

11. The one non-fatal defensive gunshot fired by Officer Qurishi was in-policy and consistent with CHP use of force policies and training and also California POST certified training guidelines in regard to police use of deadly force in the immediate defense of life. Based on his interview statement and the video evidence, Officer Qurishi reasonably believed that his life was in imminent danger from Yuriar at the time he fired his shot.[20]

12. It is undisputed by the evidence in this case that Officer Qurishi only fired one non-lethal round that struck Yuriar in the left leg. Based on Yuriar's continuing assault on Officer Qurishi even after the officer's round was fired, it is very likely that the officer would have been beaten to death or shot and killed with his own gun had Deputy Perez-Rojas did not intervene.

13. Officer Qurishi had no other reasonable or viable alternative options other than the use of deadly force based on his belief that Yuriar was beating him to death and also making contact with his gun as he felt resistance on the weapon. Officer Qurishi's belief that Yuriar was in contact with his gun was verified by the observation of Deputy Sheriff Perez-Rojas who observed that Yuriar's hands were in fact on the barrel of Officer Qurishi's gun.

---

[19] Deposition of Deputy Perez-Rojas, page 39:8-25 & page 40:1-9.
[20] "*At that moment, I felt like I had to fight for my life, and I utilized my firearm.*" Deposition of Officer Qurishi, page 52:2-3.

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

Specifically, it is undisputed that immediately after the shooting Deputy Perez-Rojas broadcasted, *"CHP... He was fighting with this guy trying to get his gun."*[21]

14. Based on my review of the police reports, Officer Qurishi's sworn testimony and video evidence, it is my opinion that Yuriar had the ability, opportunity, and apparently intent to immediately cause the death or serious bodily harm to Officer Qurishi. The first-hand observations of responding officers who immediately responded to the scene were collectively direct evidence that Yuriar severely beat Officer Qurishi.[22]

15. In consideration of Officer Qurishi's belief that Yuriar was beating him to death while attempting to take away his gun, there was no training, policy, or tactical instruction for an officer in such a position to resort to less-lethal means of defense such as a Taser or engage solely in hand-to-hand combat regardless of the presence of another officer.

16. After broadcasting the shooting incident, Deputy Perez-Rojas, immediately called for medical assistance to the scene for Officer Qurishi and Yuriar.

---

[21] Alameda County Sheriff's Office  Dispatch Center audio recording at 00:09:48.  ACSO CAD Report: page 5 of 19.
[22] Officer Hardin, *"I observed Officer Qurishi with multiple injuries to his face…"* Bates Stamp CHP 00000387.
CHP Officer Nichols, *"Officer Qurishi had sustained a moderate injury to his head, as it appeared profoundly swollen and bruised."* Bates Stamp CHP 00000392.
CHP Officer D. Rosa, *"I observed Officer Qurishi to have massive contusions to his forehead, and he seemed in dazed."* Bates Stamp CHP 00000394.
CHP Officer E. Potes, *"He appeared stunned and had welts / lumps on his forehead."*  Bates Stamp CHP 00000396.

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

V.  Reasons and Basis for Opinions:

My opinions in this matter are based on the summary of the facts as recited above and the following analysis:

1.  Ivan Rodriquez Ramirez was one of the four suspects in the stolen vehicle that resulted in the vehicle pursuit and subsequent foot chase.  Ramirez testified in his sworn deposition that when Yuriar was on top of Officer Qurishi, punching the officer, he stated, *"I'm going to kill you, Nigga."*[23]  This statement would be interpreted by any properly trained and reasonable police officer, faced with the same set of circumstances of being severely beaten and having his gun taken away, as an intentional and imminent life threatening assault that would justify the use of deadly force to preserve his life and safety.

2.  CHP Policy HPM 70.6, Chapter 1, entitled: Use of Force defines deadly force as circumstances wherein an officer utilizes a form of self-defense including a firearm when the officer reasonably believes that his life and safety or the lives and safety of others are in danger.  Based on the facts in this case, Officer Qurishi appropriately complied with this policy in his effort to defend himself from the life-threatening assault by Yuriar.

3.  Due to his efforts to protect himself during the life threatening violent assault by Yuriar and to retain possession of his gun,[24] Officer Qurishi was not able to issue a pre-shooting warning prior to firing his weapon in self-defense.[25]

4.  POST LD #33, instructs officers to respond quickly and decisively to maintain control of their firearm and repel an attack.[26] In this case, Officer Qurishi felt resistance on his gun, and it is therefore reasonable for him to believe that based on the violent beating by Yuriar and his stated threats to kill the officer,[27] that if he managed to take away the

---

[23] Deposition of Ivan Rodriquez Ramirez, page 94:7-20.
[24] Deposition of Deputy Perez-Rojas, page 30:11-16.  A.: *"Sure. It appeared to me he (Yuriar) was trying to grab the other side of the (officer's) firearm with his left hand to get a better grip."* Q,:  *"And then was the CHP officer still on his back at this point or in some other position?"* A:.  *"Still on his back."*
[25] Deposition of Officer Qurishi, page 56:1-3.
[26] POST #33, page 6-6.
[27] Deposition of Officer Qurishi, page 35: 3-7, page 40:21-23 & Officer Qurishi's interview statement, page 78:14: *"I'm going to kill you, Nigga."*

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

officer's gun he would use it to kill the officer.[28] It is therefore imperative for peace officers to always, and without exception, retain possession of their firearms when there is an indication, or even a suspicion, that there is an effort to take away the weapon.[29] Based on POST training guidelines and instruction, Officer Qurishi was well aware that the loss of control of his weapon would result in the high likelihood that he and possibly others would be shot and killed by his own gun.[30]

5. According to the deposition testimony of witness Owen Vivo, while Yuriar was on top of Officer Qurishi, "*whaling on the officer's head,*" he refused to obey the order of Deputy Rojas to stop. At that point Vivo stated that he was not surprised to hear gunshots.[31]

6. From 2005 through 2022, of the 24 California peace officers killed in the line of duty were murdered with firearms, one of the peace officers was overpowered and his gun taken away and used to kill him. That situation supports justification that peace officers continually train in weapon retentions and take away.[32]

7. According to the testimony of Alameda County Deputy Sheriff Perez-Rojas, Yuriar's hands were on Officer Qurishi's unholstered gun. Therefore, the shot fired by Officer Qurishi was objectively reasonable to prevent a gun take-away situation in accordance to POST training under Learning Domain #33, Chapter 6.

8. The results of the California Department of Physical Evidence Examination Report indicates that Juan Bernal-Yuriar's DNA was found on the pistol grip and magazine base of Officer Qurishi's pistol. [33] This scientific finding of direct physical evidence supports the statements and testimony of Alameda County Deputy Sheriff Alexis Perez-Rojas regarding his observation of the gun take away attempt by Juan Yuriar of Officer Qurishi's gun.

---

[28] Deposition of Officer Qurishi, page 52: 1 – 24.

[29] Deposition of Officer Qurishi, page 57:5 – 9: "*I was unsure if he was grabbing it or not.*"

[30] POST Learning Domain #33: Arrest and Control - Chapter 6, page 6-6 reads in part: "*In a physical conflict when a subject may have access to a peace officer's firearm, officers must be able to respond quickly and decisively to maintain control of their firearm and repel the attack.*

[31] Deposition of witness Owen Vivo, page 52:16-20.

[32] Source: Law enforcement officers killed and assaulted in the line of duty report, California Commission on Peace Officer Standards and Training.

[33] DOJ BSF Report - Case Number: CV-023-004058-0006, page 2 of 5.

Maria Lina Yuriar, et al. vs. State of California, et al.
U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW
Report of Police Practices Expert Clarence R. Chapman

_____

Additionally, this finding supports the brief and testimony of Officer Qurishi that he felt resistance on his gun during the violent assault by Yuriar.

9.  In police use of force cases, California training standards instruct that the calculus of reasonableness when deploying deadly force must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Additionally, any force used by police officers must be objectively reasonable based on the facts known to them at the time.

10. Based on California training and tactical best practices related to police use of deadly force, there should always be an examination of alternative defensive methods and/or force options such as Tasers, pepper spray, or kinetic munitions that law enforcement could have considered short of lethal force. However, based on the facts in this case, there were no other viable tactical or alternative less-lethal force options available to Officer Qurishi that he could have effectively used based on the sudden and violent life-threatening attack by Yuriar.


VI.    Qualifications:

Please see attached curriculum vitae.


VII.   Compensation:

Please see attached fee schedule.


VIII.  Experience:

A supplemental attachment is included listing prior trial and deposition testimony.


Executed the 18th day of September 2025, in Los Angeles County, California.


_____

Clarence Robert Chapman

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

# C U R R I C U L U M   V I T A E

## Clarence Robert Chapman

Police Practices Expert

### EMPLOYMENT HISTORY

| | |
|---|---|
| **Chief of Police (Retired)** | **University of California Los Angeles Police Department** |
| *Date of Appointment:* | June 1994 |
| *Date of Retirement:* | December 2004 |

| | |
|---|---|
| **Station Commander (Retired)** | **Los Angeles County Sheriff's Department** |
| *Date of Appointment:* | May 1966 |
| *Date of Retirement:* | June 1994 |

| | |
|---|---|
| **POST Use of Force Consultant** | California Commission on Peace Officer Standards and Training |
| **(Current)** | SB 2 Accountability Division Professional Conduct Central Bureau |
| *Date of Contract:* | May 31, 2024 |

### SUMMARY OF EXPERIENCE

To date, I have consulted on over one thousand cases involving law enforcement related civil litigation, criminal prosecution and employment practices and have given court and deposition testimony in over 500 cases. I served over 50 clients from municipal, county, State and federal agencies and private enterprises throughout the country and have been certified as an expert witness and testified in State and federal court in the areas of:

-Police Policy, Procedures and Practices
-Peace Officer Standards and Training
- Use of Force - Officer Involved Shootings
-Pursuit/Emergency Driving
-In-Custody / Restraint Deaths
-Active Shooter Policies and Procedures
-Search Warrants
-Taser Policy & Training
-Crowd and Riot Control Policies and Procedures
-Racial Discrimination
-Police Employment Practices
-Jail & Custody Practices
-Private and Corporate Security

During my 42 years as a sworn active uniformed law enforcement officer, I supervised, managed, and commanded a vast number of police personnel and units covering a wide range of assignments. As a Captain/Station Commander with the Los Angeles County Sheriff's Department for close to 30 years and a California State Chief of Police for over 10 years, I served in the capacity of an executive level administrator in the areas of field patrol, criminal investigations, officer involved shooting investigations and use of force training and policy.

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

I have been retained and testified as an expert witness in the states of Alaska, Alabama, California, Colorado, Illinois, Nevada, New Mexico, New York, Ohio, Oregon, Texas, Arizona, Florida, Oklahoma, and Washington State.

CAREER HIGHLIGHTS:

Between 1980 and 1982, I was appointed to the **California State Governor Jerry Brown's Office** as **Project Manager** and served for four years over the criminal identification and tracking project, known as the **California Career Criminal Apprehension Program.**

Between 1987 and 1990, while assigned to the Sheriff's Department Detective Division, Narcotic Bureau, I applied for and was awarded a $3 million federal drug enforcement grant to target Los Angeles area street gangs involved in mid-level cocaine enterprises. Under my command this highly successful and widely publicized law enforcement anti-drug effort, known as the **STAR Grant,** (Sheriff's Task force Against Rock), incorporated a multi-agency concept joining agents and investigators from the Federal Bureau of Investigation, State Bureau of Narcotics Enforcement, and the Los Angeles County District Attorney's Office. During this project, I was sworn in as a **Deputy United States Marshall** and served over four years in that capacity.

In January of 1998, I was selected to participate on a task force with the **UCLA Anderson School of Management** to formulate an executive management curriculum for the Los Angeles Police Department's senior command staff. That effort culminated in the creation of an accredited police management course for all LAPD senior level police administrators.

In June of 1992, the Federal Bureau of Investigation selected me to attend the prestigious **National Law Enforcement Executive Academy** in Quantico, VA.

As a nationally recognized police practices management consultant and instructor in 1999, I was selected by the State of California Department of Justice, Commission on Peace Officers Standards and Training (POST) to serve as a staff instructor for the Center of Leadership Development. In this capacity, I was an instructor in the California State **Executive Development Management Program**.

In January 2000, the City of Los Angeles contracted me to assist the mayor's office in developing a systematic approach to facilitate compliance with a federal court consent decree involving LAPD training and citywide employment practices.

From June of 2001 through 2005, I was appointed as an **independent monitor** by the Federal Court in the District of New Mexico to oversee a class action law suit involving civil rights violations by local law enforcement. In that capacity, I was commissioned to monitor claims regarding law enforcement policies, practices, and training in the areas of racial profiling, search and seizure, arrests and detention statistics and occurrences of police use of force.
*[Refer: Johnson, et al. vs. City of Hobbs, et al., CIV 99-00348 MV/JHG-ACE]*

PUBLICATIONS:

Los Angeles Times Editorial: **"Silence Code Doesn't Exist"** - December 1992

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

NATIONAL TELEVISION APPEARANCES:

McNeil / Lehrer News hour: **"Street Gangs & the Drug Trade"** – April 1988

LECTURES, SPEAKING APPEARANCES & TRAINING ATTENDED:

- Westwood Village Rotary Club: **"Police Operations - Democratic National Convention"** – June 2000

- UCLA Law School: **"Community Crime and Drugs"** - October 2000

- New Mexico Law Enforcement Training Conference, "Policing 2000: Entering the New Millennium": Guest Lecturer on: Police Use of Force & Racial Profiling – December 2000

- Los Angeles County Professional Peace Officers Association: Guest Speaker: **"The Media and Law Enforcement"** – March 2001

- Los Angeles Women's Resource Center, Lecturer: **Hate Crimes & Rape Prevention** – April 2001

- Seminar panelist with Professor James Q. Wilson: **The LAPD and the Community** - UCLA – July 2001

- POST sponsored training seminar, guest lecturer to the San Bernardino Sheriff's and Chief's Association on the topic of **Racial Profiling** – January 2002

- Taser Use of Force, Risk Management and Legal Strategies, sponsored by Taser International, March 16, 2009

- Seminar panelist on Taser use and in-custody death related to Excited Delirium syndrome – October 2009

- 40 hours Force Science Institute Training Course, Henderson, Nevada, 2016

- Force Science Instructors Course, Containment and De-Escalation, Los Angeles, California, 2019


EDUCATION:
- Master of Business Administration: UCLA Executive Program, Los Angeles, CA, 1997
- Postgraduate Certificate: (Criminal Justice Ed.), University of Virginia, Quantico, VA. 1992
- Bachelor of Science: (Public Affairs), Pepperdine University, Malibu, CA, 1980
- Postgraduate Studies: (Public Administration), University of Southern California

RECOGNITION:
- **Career Achievement Award** from the National Organization of Black Law Enforcement Executives, 2002
- **Law Enforcement Achiever Tribute Award** from California Governor Gray Davis, 2002

CALIFORNIA POST CERTIFICATES HELD:

*-Basic Certificate*
*-Intermediate Certificate*
*-Advanced Certificate*
*-Supervisory Certificate*
*-Management Certificate*
*-Executive Certificate*

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

TRAINING AND CERTIFICATIONS ATTAINED:
- *Teaching Credential*, State of California Vocational: Police Science, 1982
- *Police Personnel Management* (POST 1990)
- *Hostage Negotiations*, Rio Hondo Community College, 1990
- *Certificate of Achievement*, Criminal Justice Education, (University of Virginia), 1992
- *Executive Development Program* (POST 1995)
- *Law Enforcement Southwest Command College;* Federal Bureau of Investigation, 1996
- *Law Enforcement Executive Development Program;* Federal Bureau of Investigation, 1998
- *Force Science Institute Training Certificate, 2016*
- *Force Science Instructors Course, Containment and De-Escalation, 2019*
- *Axon Enterprises Taser Defensive Strategies Course, 2023*
- *Expert Witness Symposium, 2023*
- *DRI Civil Rights and Governmental Tort Liability Seminar, 2024*

**AFFILIATIONS:**
*Graduate*, FBI National Academy, United States Department of Justice
*Staff Instructor*, Peace Officer Standards and Training – Executive Development Program
*Member*, California Peace Officers Association
*Member,* Los Angeles County Black Peace Officers Association
*Member*, FBI Law Enforcement Executive Development Association
*Member*, FBI National Academy Graduates
*Member*, International Association of Chiefs of Police
*Member*, National Organization of Black Law Enforcement Executives
*Ex-Board Member*, Santa Monica Community College District Citizen's Bond Oversight Commission
*Associate Member*, California State Sheriff's Association
*Ex-Commissioner*, City of Malibu Public Safety Group
*Associate Member*, Force Science Research Institute
*Subscriber*, American for Effective Law Enforcement
*Past Member*, International Union of Police Associations
*Past Member;* Los Angeles County Management Council
*Past Member*, National Sheriff's Association
*Past Member,* Los Angeles County Chiefs of Police Association
*Past Member*, University of California Association of Black Administrators
*Past Member*, International Association of College Law Enforcement Administrators
*Past Member*, Los Angeles County Sheriff's Executive & Command Staff Support & Advisory Group
*Past Member*, Board of Directors – Peace Officer Association of Los Angeles County

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

# F E E   S C H E D U L E
### NATIONAL JUSTICE CONSULTANTS, INC.

## CLARENCE ROBERT CHAPMAN
### POLICE PRACTICES EXPERT

### *CASE RETAINER* $10,000.00
This nonrefundable retainer fee is due prior to the start of work and is an advance payment against future billing. Upon depletion of the retainer, appropriate billing will commence at the indicated hourly rate. No opinions, reports or testimony will be provided prior to receiving receipt of the retainer fee, except when otherwise indicated or negotiated.

### *CASE WORK / HOURLY RATE* $500.00 per hour
This hourly fee applies to all directed activities associated with case review, analysis, research, and preparation. Included in this category are administrative and operating expenses, organizational audits, production of reports, witness interviews, site surveys, client meetings, production of exhibits / visual aids, and teleconferencing expenses and reports. Payment is due upon receipt of the invoice and payable within 30 days. *I reserve the right to suspend all work and refuse delivery of services until outstanding balances over 60 days past due are paid in full.*

### *COURT APPEARANCES* *Half Day Flat Fee of $3,000.00 - Full Day Flat Fee of $6,000.00*
This fee applies to all court appearances and case related hearings regardless of whether testimony is given. Appearances lasting less than four hours will be billed at the ½ day rate. Any required appearance time beyond the morning sessions will be billed at the full day rate.

### *DEPOSITION APPEARANCES* $500.00 per hour
Expert elects to have all depositions taken virtually. All depositions are subject to a four hour minimum preparation fee *(Miller v. Sawat, 114 F.4th 1071 (9th Cir. 2024)* in addition to a four hour minimum for deposition appearance. In cases where there is a demand by opposing counsel and a subsequent agreement for an in-person deposition appearance, payment of a four-hour minimum for the appearance plus payment for case preparation and all anticipated expenses must be received three days prior to the scheduled deposition date. Failure to receive such payment will result in a non-appearance by expert.

### *REQUIRED TRAVEL* *[AT COST]*
Travel related expenses including hotel accommodations, airline tickets, taxi/limousine services and parking fees will be billed at cost. Business Class air travel is required for flights more than 2 hours in duration. Travel by car will be billed at a rate of $0.75 per mile. Travel time to and from scheduled meetings and appearances is billed at my hourly rate.

### *REQUEST FOR EXPEDITED REPORTS* $1,200.00 per hour
There will be a surcharge of three times the hourly rate for expedited F.R.C.P. Rule 26(a) expert reports required to be produced and submitted in less than 30 court days.
**[Federal Tax ID# 95-4413728]**

[Revised 1/2025]

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

RECORD OF COURT & DEPOSITION TESTIMONY APPEARANCES

COURT APPEARANCES

**2019**

| | | | | |
|---|---|---|---|---|
| Hargrove | v. | City of Bakersfield | (F) | 1:17-cv-01743-JLT |
| Sidrow | v. | County of Los Angeles | (S) | BC 647 075 |
| Holmes | v. | County of Los Angeles | (F) | 2:18-03739-PGG-E |

**2020**

| | | | | |
|---|---|---|---|---|
| Penaloza | v. | City of Rialto | (F) | 5:19-cv-01642-SVW |

**2021**

| | | | | |
|---|---|---|---|---|
| Blunt | v. | CHP | (E) | SPB 20-1219 |

**2022**

| | | | | |
|---|---|---|---|---|
| Brenes | v. | Las Vegas Metro Police | (F) | 2:12-cv-01635 JCM (VCF) |
| Elkins | v. | CHP | (F) | 1:13-cv-01483-AWI-SAB |
| Perez | v. | Tulare County | (S) | VCU285108 |
| Ochoa | v. | Kern County | (F) | 1:18-cv-01599-LJO-JLT |

**2023**

| | | | | |
|---|---|---|---|---|
| Carcamo | v. | County of Los Angeles | (S) | TC 028078 |
| Gonzalez | v. | County of Fresno | (S) | 18CECG03672 |
| Waddell | v. | City of Burbank | (S) | 21STCV34560 |
| Hermann | v. | San Bernardino County | (F) | 5:20-cv-01682-JAK (SPx) |
| Toland | v. | City of Pasadena | (F) | 2:21-cv-04797-AB-AGR |

**2024**

| | | | | |
|---|---|---|---|---|
| Hurtado | v. | CHP | (F) | 2:19-cv-02343-TLN-AC |
| Moller | v. | San Bernardino County | (F) | 5:22-cv-01306-DSF-MARx |
| Smith | v. | Bakersfield | (S) | 1:21-cv-00494-JLT-CDB |
| Rushing | v. | Chico | (F) | 2:18-cv-01692-DAD-AC |
| Hurtado (Retrial) | v. | CHP | (F) | 2:19-cv-02343-TLN-AC |
| Pitts | v. | CHP | (F) | 2:20-cv-01243-WBS-JDP |
| Sesman | v. | CHP | (F) | 5:21-cv-1694-JWH-(KKx) |

.

(F) Indicates Federal Court Appearance
(S) Indicates State Court Appearance
(P) Indicates Plaintiffs Case
(A) Indicates Arbitration Hearing
(E) Indicates Employment /Adverse Action Case

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

---

## DEPOSITION APPEARANCES

---

**2021**

| | | | | |
|---|---|---|---|---|
| Ochoa | v. | Kern County | (F) | 1:18-cv-01599-LJO-JLT |
| Anderson | v. | CHP | (F) | 1:14-cv-01599 TLN-SAB |
| Acosta | v. | CHP | (F) | 1:18-cv-321909 |
| Perez | v. | Fresno County | (F) | 1:18-cv-00127-AWI-EPG |
| Diaz | v. | CHP | (F) | 2:19-cv-04695-DMG-(AGRx) |
| Lucas | v. | Fresno County | (F) | 1:18-cv-01488-DAD-EPG |
| Lockett | v. | County of Los Angeles | (F) | 2:18-cv-05838-PJW |
| Smart | v. | CHP | (F) | 2:17-cv-01075-TLN-EFB |
| Serrano | v. | COLA | (F) | 2:20-cv-06648-ODW-PLA |
| Perez | v. | Tulare County | (S) | 285108 |

**2022**

| | | | | |
|---|---|---|---|---|
| Astorga | v. | County of Los Angeles | (F) | 2:20-cv-09805-AB-(AGR) |
| Bender | v. | City of Rialto | (F) | 5:20-cv-02171-JWH (SPx) |
| Cooper | v. | Cabral | (S) | 19STCV22891 |
| Crawford | v. | City of Bakersfield | (F) | 1:18-cv-00307-DAD-JLT |
| Hurtado | v. | CHP | (F) | 2:19-cv-02343-TLN-AC |
| Carrasco | v. | City of Glendora | (F) | 2:21-cv-05965-MWF-AS |
| Sesma | v. | CHP | (F) | 5:21-cv-01694-JWH-KK |
| Hermann | v. | San Bernardino County | (F) | 5:20-cv-01682-JAK (SPx) |
| Carcamo | v. | County of Los Angeles | (S) | TC 028076 |

**2023**

| | | | | |
|---|---|---|---|---|
| Standt | v. | City of Los Angeles | (F) | 2:21-cv-09301-FLA-JPR |
| Williams | v. | Las Vegas Metro Police | (F) | 2:21-cv-03465 |
| I.M. | v. | CHP | (F) | 2:20-cv-11174 FMO (JEMx) |
| Waddell | v. | City of Burbank | (S) | 21STCV34560 |
| Toland | v. | City of Pasadena | (F) | 2:21-cv-04797-FWS |
| TUHSD | v. | City of Taft | (S) | S-1500-cv-283804 |
| C.R. & D.R. | v. | Kern County | (F) | 1:21-cv-01593-DAD-BAK (EFG) |
| Stern | v. | LAPD | (F) | 2:21-cv-04525-CBM-AS |
| Wilson | v. | CHP | (F) | 3:21-cv-03824-MMC |
| Savage | v. | City of Whittier | (F) | 2:21-cv-08067-VAP-PD |
| Astorga [V.II] | v. | County of Los Angeles | (F) | 2:20-cv-09805-AB-(AGR) |
| Hernandez | v. | County of Los Angeles | (S) | 19STCV33158 |
| James | v. | LAPD | (F) | 2:21-cv-04525-CBM-AS |
| Mendoza | v. | Kings County | (F) | 1:21-cv-00721-JTL-BAM |

*Maria Lina Yuriar, et al. vs. State of California, et al.*
*U.S.D.C. Northern District of California Case No. :4:23-cv-06438-KAW*
*Report of Police Practices Expert Clarence R. Chapman*

**2024**

| | | | | |
|---|---|---|---|---|
| Cooper | v. | County of San Bernardino | (F) | 1:21-cv-0949-PSG-(PLAx) |
| Hernandez | v. | City of Rialto | (F) | 5:22-cv-01807-SSS-SP |
| Mullins | v. | County of Fresno | (F) | 1:21-cv-00405-AWI-SAB |
| Pitts | v. | CHP | (F) | 2:20-cv-01243-WBS-JDP |
| A. L. | v. | City of Bakersfield | (F) | 1:23-CV-00885-AWI |
| Padilla | v. | CHP | (S) | 22STCV00661 |
| Coyle | v. | County of Los Angeles | (S) | 21STCV27463 |
| Gold | v. | CHP | (F) | 3:23-cv-03414-RFL |
| Gutierrez | v. | Visalia | (F) | 1:21-cv-01700-JLT-HBK |

**2025**

| | | | | |
|---|---|---|---|---|
| Land | v. | County of Los Angeles | (S) | 21STCV32725 |
| Caesar | v. | CHP | (S) | 22CV0119193 |
| Salgado | v. | Huntington Park | (F) | 2:23-CV-09412 CBM (AGR) |