LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Bar No. 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (Bar No. 284500)
evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:    (818) 347-3333
Facsimile:    (818) 347-4118

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA LINA YURIAR, et al., | Case No. 4:23-cv-06438 KAW |
| Plaintiffs, | [*Honorable Kandis A. Westmore*] |
| vs. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | [Declaration of Eric Valenzuela and Exhibits in Support thereof; *filed concurrently herewith*] |
| | Date:    December 18, 2025 |
| | Time:    1:30 p.m. |
| | Ctrm.:   TBD |

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................... 4

III.    LEGAL STANDARD .......................................................................... 10

        A.      Summary Judgment ................................................................ 10

IV.     ANALYSIS .......................................................................................... 12

        A.      Qurishi's Use of Deadly Force was Unreasonable ............... 12

        B.      Qurishi Is Not Entitled To Qualified Immunity ................... 15

        C.      The Court Should Deny Summary Judgment as to Plaintiffs'
                Battery Claim ........................................................................ 19

        D.      Officer Qurishi Violated the Bane Act ................................ 20

        E.      Officer Qurishi Was Negligent ............................................ 21

V.      CONCLUSION ................................................................................... 21

Case No. 4:23-cv-06438 KAW

# **TABLE OF AUTHORITIES**

## Cases

*Adickes v. S.H. Kress & Co.*
  398 U.S. 144 (1970) ...................................................................................10

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ...................................................................................16

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ...................................................................................16

*Coles v. Eagle,*
  704 F.3d 624 (9th Cir. 2012) .....................................................................17

*Deorle v. Rutherford,*
  272 F.3d 1272 (9th Cir. 2001) ..........................................................12, 13

*District of Columbia v. Wesby,*
  138 S.Ct. 577 (2018) .................................................................................16

*Drummond v. City of Anaheim,*
  343 F.3d 1052 (9th Cir. 2003) ...........................................................11, 19

*Ellins v. City of Sierra Madre,*
  710 F.3d 1049 (9th Cir. 2013) ...................................................................17

*George v. Morris,*
  736 F.3d 829 (9th Cir. 2013) .....................................................................13

*Glenn v. Washington Cnty.,*
  673 F.3d 864 (9th Cir. 2011) .............................................11, 12, 14, 15

*Gonzalez v. City of Anaheim,*
  747 F.3d 789 (9th Cir. Mar. 31, 2014) ...............................12, 13, 15

*Graham v. Connor,*
  490 U.S. 386 (1989) ..........................................................11, 12, 13, 15

*Hayes v. County of San Diego,*
  57 Cal. 4th 622 (2013) .............................................................................21

*Hopkins v. Andaya,*
  958 F.2d 881 (9th Cir. 1992) .............................................................11, 18

*Johnson v. Bay Area Rapid Transit Dist.,*
  724 F.3d 1159 (9th Cir. 2013) ...................................................................14

*Lake Nacimiento Ranch Co. v. San Luis Obispo County,*
  841 F.2d 872 (9th Cir. 1987) .....................................................................10

Case No. 4:23-cv-06438 KAW

*Lowry v. City of San Diego,*
   858 F.3d 1248 (9th Cir. 2017)..................................................................12

*Mattos v. Agorano,*
   661 F.3d 433 (9th Cir. 2011)....................................................................13

*Nehad v. Browder,*
   929 F.3d, 1125 (9th Cir. 2024)................................................................14

*Orn v. City of Tacoma,*
   949 F.3d 1167 (9th Cir. 2020)..................................................................17

*Pearson v. Callahan,*
   555 U.S. 223 (2009) .................................................................................16

*Rosenbaum v. City of San Jose,*
   107 F.4th 919 (9th Cir. 2024)...................................................................17

*Sandoval v. Las Vegas Metro. Police Dep't,*
   756 F.3d 1154 (9th Cir. 2014)..................................................................17

*Saucier v. Katz,*
   533 U.S. 194 (2001) .................................................................................16

*Scott v. Henrich,*
   39 F.3d 912 (9th Cir. 1994)......................................................................11

*Tennessee v. Garner,*
   471 U.S. 1 (1985) .....................................................................................12

*Torres v. City of Madera,*
   648 F.3d 1119 (9th Cir. 2011)....................................................11, 14, 16

*United States v. Lanier,*
   520 U.S. 259 ............................................................................................16

*Williamson v. City of Nat'l City,*
   23 F.4th 1146 (9th Cir. 2022)...................................................................21

## Statutes

Cal. Pen. § 835a(a)(2) ...................................................................................19

Cal. Pen. § 835a(c)(1)(A) ..............................................................................20

Cal. Pen. § 835a(e)(2) ...................................................................................20

California Penal Code section 835a (PC 835a) .............................................19

Fed. R. Civ. P. 56(c) .....................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This incident began when CHP Officer Basir Qurishi and his partner Officer Hardin, noticed a speeding car on the highway on July 3, 2023, in Ashland (Unincorporated San Leandro), California.  Shortly after spotting the speeding vehicle, the car, occupied by Juan Yuriar ("Decedent") and three other occupants, exited the highway and struck an electrical box while exiting on the off-ramp.  The vehicle was not driven by Decedent.  The CHP cruiser then pulled up behind the crashed car and activated its over-head lights and sirens.  The CHP cruiser did not attempt to pull over the vehicle prior to the car accident, this was never a vehicle pursuit situation, and the police cruiser never even activated its lights and sirens prior to the vehicle crashing into the electrical box.  Although this vehicle turned out to be a stolen vehicle, Officer Qurishi was not aware that the vehicle was stolen prior to the incident.

After the car crashed into the electrical box, the occupants of the car all got out and ran in various directions.  Decedent and another passenger were found nearby a short time later by Officer Qurishi, who had separated from his partner at this point.  After holding both individuals at gun point for a few minutes, Decedent stood up and ran away from Officer Qurishi.  Decedent only ran a short distance before he stopped and went back down to the ground.  Shortly thereafter, while Qurishi was attempting to handcuff Decedent, a physical altercation ensued where Decedent took Officer Qurishi to the ground and threw several punches at him. After several punches were thrown by Decedent, Qurishi pulled out his gun and shot Decedent one time.  As this was occurring, Deputy Perez-Rojas, of the Alameda Sheriff's Department arrived on scene with his overhead lights and sirens activated (putting Qurishi on notice of his arrival) and also shot Decedent twice within approximately a second or two of Quirish firing his shot.  Decedent was unarmed

1  during the entire incident.  Further, when the evidence is viewed in the light most
2  favorable to Plaintiffs, including all reasonable inferences therefrom, Decedent
3  never grabbed Qurishi's gun, he never tried to take the gun away from the officer
4  and he never grabbed any of the officer's hands which were holding his gun.
5  Deputy Perez-Rojas stated that a significant factor as to why he fired his gun was
6  because he saw Quirishi's gun and did not know whose gun that was, because he
7  saw hands on the gun and did not know whose hands those were, and because he
8  heard the shot and saw the muzzle flash from Qurishi's gunshot, and claims he did
9  not know who was firing.

10      The evidence, including the video evidence, the statements and depositions,
11  the medical evidence and the circumstantial evidence all indicate that Qurishi never
12  blacked out or lost consciousness during the incident.

13      The Court should deny Defendants' Motion for Summary Judgment with
14  respect to the use of deadly force by Defendant Bashir Qurishi against the Decedent
15  because there are triable issues of material fact regarding the excessive force claim
16  under the Fourth Amendment, Plaintiff's claim for interference with familial
17  relationship under the Fourteenth Amendment, and Plaintiff's state law wrongful
18  death claims for battery, violation of the Bane Act and negligence.

19      As included in Plaintiffs' Facts Section below and in the declaration of police
20  practice expert Roger Clark filed concurrently herewith, the use of deadly force was
21  excessive and unreasonable, inappropriate, and in violation of police officer
22  standards and training, in this case for several reasons.  First, this incident began
23  with a vehicle crash into an electrical box that did not involve any other vehicles or
24  people, where the occupants of the car bailed on foot after crashing the car.  This
25  was not a violent crime or a crime involving any physical injury.  Importantly,
26  Decedent was unarmed during the entire incident and he never attempted to grab
27  any of the officers' guns or disarm them.  Although, Decedent did take Qurishi
28  down to the ground and throw punches at him, this conduct was not sufficient to

justify the use of deadly force against Decedent.  See Exhibit A, Declaration of Roger Clark ("Clark Decl.") ¶¶ 12, 16.   The Decedent and Qurishi were exchanging punches and Qurishi blocked several punches.  Qurishi also appears to never have blacked out or lost consciousness.  It is unreasonable for an officer to use deadly force against an individual who punches him and Decedent did not pose an immediate threat of death or serious bodily injury at the time of the shooting.  Id. Especially without giving a verbal warning that deadly force would be used prior to shooting, which was feasible to do.  *Id*.  Police officers are trained that punches are generally considered assaultive behavior, which is insufficient to use deadly force against a suspect. *Id* at ¶ 10.   Instead, police officers are trained that an individual must pose an immediate or imminent threat of death or serious bodily injury in order to justify the use of deadly force, and assaultive behavior, such as throwing punches is insufficient.  *Id*.  Further, Qurishi had already requested backup which had already arrived to assist him at the time of the shooting.

Officer Qurishi also had several less then lethal options available such as a taser and a baton, he had an additional officer on scene with him to help and could continue to go hands on with Decedent.   Police officer standards and training teach officers that deadly force is a last resort only to be used in the direst of circumstances when no other reasonable measures are available.  *Id*.  Further, a warning that deadly force is going to be used must be given when feasible and no warning was given by Qurishi.  Further, subjective fear is insufficient and the suspect must have the ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the officer and simply punching someone does not satisfy these elements.  *Id* at ¶¶ 10, 12, 16.  Police practices expert Roger Clark opines that Qurishi's use of deadly force was excessive and unreasonable for several reasons and that Qurishi acted unreasonably, including both shooting and pre-shooting conduct, and in violation of police officer standards and training.  *Id*. at ¶¶ 12-17.

Additionally, Qurishi is not entitled to qualified immunity because there are disputed issues of material fact, and the law with respect to the use of deadly force against unarmed individuals was clearly established at the time of the incident. Further, there need not be a case directly on point to put Qurshi on notice that it would violate that individual's constitutional rights to shoot someone because they punch you, especially when their hands are visibly empty, when there are less than lethal options available and there is an additional officer there to assist you.

Plaintiffs' pendent state wrongful death claims for battery, violation of the Bane Act and negligence, also raise triable issues and are not subject to qualified immunity. Accordingly, the Court should deny Defendants' Motion as to Plaintiff's federal and state claims arising from Qurishi's use of excessive and unreasonable deadly force.

## II. STATEMENT OF FACTS

Qurishi noticed the car Decedent was in going at a high rate of speed. Exhibit B, Qurishi Interview at 31. The vehicle was involved in a traffic collision into an electrical box, before the officers could initiate a traffic stop or activate the red and blue lights. *Id*. at 31, 47. Other than the electrical box, the car did not hit any other people, vehicles or property. *Id*. at 44. The involved-officers had no information that the vehicle or the occupants had been involved in prior crimes. *Id*. at 54-55. The occupants of the car then exited out of the vehicle and ran away from the crashed car. The officers did not see any weapons on the vehicle occupants as they ran away from the car. *Id*. at 50.

Qurishi and his partner split up because the occupants of the car ran in different directions. A short time later, Qurishi locates Decedent and another suspect. See Defendants Exhibit 1 at 2:00-2:10. Decedent and the other individual obey Qurisihi's orders to get down on the ground while he holds them both at gunpoint. *Id*. Qurishi broadcasted that he has two detained and gave his location.

1   See Def. Motion (Doc. 71) at 15:5-7.  Qurishi does not see any weapons on

2   Decedent or the other individual.  Exhibit C, Qurishi Depo. at 50, 54-55.  Qurishi

3   did not try to communicate where his partner was at this point or where backup was.

4   *Id*. at 24.  Qurishi also did not consider holding the individuals at gunpoint and

5   waiting for backup to arrive, despite having both suspects prone down on the

6   ground.  *Id*. at 25-27.  Instead, Qurishi holstered his gun and began to handcuff one

7   of the individuals, while Decedent was prone, chest down on the ground.  Def.s' Ex.

8   1 at 4:15-25.  Qurishi did not see any weapons on Decedent.  Ex. B, Qurishi Int. at

9   62, 85.  While Qurishi was handcuffing one of the individuals, Decedent stood up

10  and ran a short distance.  Def.s' Ex. 1 at 5:05-10; Def.s' Ex. 2 at 11:35-44.

11      After running a short distance, Qurishi told Decedent to stop and get down on

12  the ground.  Ex. B, Qurishi Int. at 63.  Qurishi grabbed Decedent's arms and

13  Decedent complied with going down to the ground.  *Id*. at 63-64; Ex. C, Qurishi

14  Depo. at 33-34.  Qurishi asked for another unit and decided to reposition Decedent

15  and stood him back up, instead of handcuffing Decedent while he was already prone

16  down on the ground.  Ex. B, Qurishi Int. at 64-65;  Ex. C, Qurishi Depo. at 34-36,

17  38, 46-48.  Qurishi never attempted to handcuff Decedent while he was prone, chest

18  down on the ground.  Ex. C, Qurishi Depo. at 35-36.  When Qurishi and Decedent

19  stood back up, Decedent turned around and took Qurishi down to the ground, and

20  Qurishi landed on his back.  Ex. B, Qurishi Int. at 65; Ex. C, Qurishi Depo. at 40-41.

21  Qurishi and Decedent then get into a physical altercation with Decedent punching

22  Qurishi several times.  Def.s' Ex. 3 at 12:40-13:00.  During this physical altercation,

23  video of the incident does not show Decedent ever attempt to grab, touch or gain

24  access to Qurishi's gun.  *Id*.  Percipient witnesses Owen Vivo and Ivan Ramirez also

25  stated that Decedent never attempted to grab or reach for Qurishi's gun, that

26  Decedent's hands remained near Qurishi's head and chest area and that Decedent

27  never had a weapon.  See Exhibit D, Vivo Interview at 20:00-10; Exhibit E Vivo

28  Depo. at 39, 42-43, 46, 48; Exhibit F, Ramirez Depo. at 87, 116-117, 122.  Even

1    Qurishi himself says he does not know if Decedent ever reached or grabbed for his

2    gun, because he never saw Decedent reach or grab for his gun, he never saw

3    Decedent holding the gun, never saw Decedent's hand on the gun and never felt

4    Decedent's hand on his hand.  Ex. B, Qurishi Int. at 36, 75, 97; Exhibit C, Qurishi

5    Depo. at 57, 59-60, 77.  Further, at no point did Qurishi ever see anything in

6    Decedent's hands. Ex. C, Qurishi Depo. at 76.

7        Qurishi was reaching for Decedent trying to stop the hits and defend himself

8    by exchanging punches with Decedent, putting his hands up and blocking many of

9    the punches, punching back and reaching for Decedent's collar area.  Ex. F, Ramirez

10   Depo. at 89, 119-120; Exhibit G Perez-Rojas Int. at 80-81; Exhibit H, Perez-Rojas

11   Depo. at 58.  Despite Decedent never touching, grabbing or attempting to grab

12   Qurishi's gun, Qurishi unholstered his handgun due to the punches being thrown by

13   Decedent.  Ex. B, Qurishi Int. at 75.  Qurishi's holster has a retention device on the

14   holster which was activated.  Ex. C, Qurishi Depo. at 48-49.  The retention device

15   on the holster prevents an individual from removing the gun freely and Qurishi has

16   training on gun retention techniques.  *Id*. at 49-50.  Qurishi disengaged the retention

17   on his gun holster and pulled his gun out while he was on his back.  *Id*. at 52.

18   Qurishi pulled his gun out with the intent to shoot Decedent.  *Id*. at 52-53.  Qurishi

19   is trained that shooting someone is likely to cause death or serious bodily injury.  *Id*.

20   at 80-81.  Qurishi took his firearm out of holster, began pushing the guns towards

21   the left, in the general direction of the Decedent and pulled the trigger.  Ex. B,

22   Qurishi Int. at 75.  Qurishi says he cannot really see anything at this point and

23   pointed his gun up towards the sky.  *Id*. at 76-77; Ex. C, Qurishi Depo. at 76.  Video

24   of the incident does not clearly show when Qurishi shot Decedent or what part of

25   Decedent's body was struck by Qurishi's shot.  Def.s' Ex. 3 at 12:55-13:06.

26   Decedent was unarmed during the entire incident.  Qurishi did not give a verbal

27   warning to Decedent that deadly force would be used, prior to firing.  Ex. C, Qurishi

28   Depo. at 55-56.  Qurishi had less then lethal options which were available to him

and which he did not attempt to use prior to resorting to the use of deadly force such as a taser and baton. Ex. B, Qurishi Int. at 17, 24. These less than lethal options should have been used by Qurishi prior to unholstering his firearm and shooting. Ex. A, Clark Decl. at ¶¶ 14, 16.

Based on the audio from Deputy Perez-Rojas body camera, the deputy fired two shots within one to two seconds of Qurishi firing his shot. Def.s' Ex. 4 at 0:35-40. Deputy Perez-Rojas stated that he saw a silver pistol grip of firearm and had no idea if it was the officer's firearm or the suspect's firearm and claims that he saw a pair of arms fighting for the firearm. Ex. G, Perez-Rojas Int. at 25, 39. These were actually Qurishi's arms that he saw on the firearm. Perez-Rojas saw the firearm (which belonged to Qurishi) out of the holster so he withdrew his gun as soon as he saw the outline of the gun and heard a shot, which the deputy claims he did not know if it was directed at him or not, so he fired two rounds. *Id*. at 26, 40. Perez-Rojas saw the silver glare of the firearm, he immediately heard the firearm go off, saw muzzle flash and thought the bullet might be coming in his direction and did not know if the decedent had control of the firearm or who shot it. *Id*. at 44-45, 55, 57-58, 69, 77-78. Perez-Rojas thought that Qurishi was trying to get away from the firearm. *Id*. at 54. Deputy Perez-Rojas claims that a less lethal option, such as the taser, was not a feasible option because the firearm (which belonged to Qurishi) had been introduced into the situation. *Id*. 72. Qurishi's gunshot was a substantial factor in Perez-Rojas' decision to fire two shots. Further, Deputy Perez-Rojas has previously been in fights while on duty where someone punched or tried to punch him and has never shot that person. Ex. H, Perez-Rojas Depo. at 11-12.

Immediately after Perez-Rojas fired two shots, Qurishi stood up and unjammed his gun and then re-holstered it. Ex. B, Qurishi Int. at 38-39. Perez-Rojas asked Qurishi if he was ok and Qurishi responded "yeah". *Id*. After unjamming and re-holstering his gun, Qurishi went and handcuffed the other suspect. *Id*. Eventually several additional units arrived and Qurishi extensively told

1   his fellow officers what just occurred for several minutes.  Def.s' Ex. 1 at 8:00-

2   10:00.  All of these acts are inconsistent with having blacked out or loss

3   consciousness.  Further, witness Ivan Ramirez testified that Qurishi did not pass out

4   or lose consciousness during the incident.  Ex. F, Ramirez Depo. at 119.  Moreover,

5   Qurishi's medical records from the date of the incident indicate that he denied being

6   in pain or losing consciousness.  Exhibit I, Qurishi Medical Records at 19.  Instead,

7   Qurishi described his injuries as "mild soreness 'that isn't even pain' over his

8   forehead".  *Id*.  Qurishi was not admitted to the hospital overnight.  Ex. B, Qurishi

9   Int. at 87.  Instead, after the hospital visit, Qurishi returned back to the station and

10  then went back to the scene and did a walk-through with investigators.  *Id*. at 88.

11  Qurishi also claims he does not know if he was even diagnosed with a concussion.

12  *Id*.  Contrary to Defendants' Motion (at 16:19-20), Qurishi did not blackout or lose

13  consciousness.

14       Qurishi was trained to use deadly force only if there is an immediate threat of

15  death or serious bodily injury and to give a verbal warning when feasible.  Ex. C,

16  Qurishi Depo. at 78-80.  Qurishit was also trained that there has to be opportunity,

17  ability, and apparent intent to immediately cause death or serious bodily injury, to

18  justify the use of deadly force.  *Id*. at 79-80.

19       There also exist several disputed issues of material fact.  For example,

20  Defendants argue that Qurishi waited for backup when he had the two suspects at

21  gunpoint.  Def.s' Mot. at 14:21-23, 15:8-10.  However, Qurishi testified during his

22  deposition that he did not wait for backup.  Ex. C., Qurishi Depo. at 24-27.  Further,

23  video of the incident shows that Decedent only took Qurishi down to the ground one

24  time, not multiple times as claimed by the Defense.  See Def.s' Mot. at 16:5-6.

25  Defendants also argue that Qurishi could not use his taser because Decedent "could

26  take it" or because Decedent would "lock up" and "land on top of [him]".  Def.s'

27  Mot. at 16:23-26.  However, Qurishi could have used his taser since Decedent never

28  actually did try to take it from the officer and he never tried to take Qurishi's gun,

and Decedent was already on top of Qurishi when he was throwing punches at the officer. Further, Qurishi, contrary to Defendants' Motion, Qurishi could have "generate[d] enough force" needed to strike someone with his baton while on his back, if he had attempted to do so. *Id*. Both the taser and the baton are more appropriate uses of force against someone throwing punches, especially when that person has not attempted to grab or gain access to the officer's gun. Ex. A, Clark Decl. at ¶¶ 14, 16. Further, the "resistance against the gun" described by Qurishi, was actually Qurishi pushing his gun into Decedent's body and was not Decedent grabbing or touching the officer's gun. Def.s' Mot. at 17:1-2. Defendants also argue that Qurishi's shot in Decedent's upper left thigh. However, videos of the incident do not show where Qurishi's shot struck Decedent, nor does the autopsy report distinguish which of the gunshot wounds were fired by the different officers. Instead, this is pure speculation on behalf of the defense.

Contrary to the Defendants' Motion, Qurishi did not try "to fire a second time, but his gun jammed". Def.s' Mot. at 17:6-7. Instead, Qurishi only fired once then immediately recognized that his gun was jammed and did not attempt to fire again. Ex. B, Qurishi Int. at 80. Further, it is highly disputed that Decedent ever grabbed or reached for Qurishi's gun. See Def.s' Mot. at 18:5-8. Video of the incident does not show Decedent ever try to grab, touch or gain access to Qurishi's gun. See Def.s' Ex. 3 at 12:40-13:00. Further, Percipient witnesses Owen Vivo and Ivan Ramirez both indicated that Decedent never tried to grab or reach for the officer's gun. See Ex. D, Vivo Int. at 20:00-10; Exhibit E Vivo Depo. at 39, 42-43, 46, 48; Exhibit F, Ramirez Depo. at 87, 116-117, 122. Even Qurishi himself says he does not know if Decedent ever reached or grabbed for his gun, because he never saw Decedent reach or grab for his gun, he never saw Decedent holding the gun or any weapon, he never saw Decedent's hand on the gun, he never felt Decedent's hand on his hand and he never saw anything in Decedent's hand. Ex. B, Qurishi Int. at 36, 75, 97; Exhibit C, Qurishi Depo. at 57, 59-60, 76-77.

Defendants argue that Qurishi was injured so he did not acknowledge Perez-Rojas' presence.  Def.s' Mot. at 18:19-21.  However, right after the shooting Perez-Rojas asked Qurishi if he was ok and Qurishi responded "yeah".  Ex. B, Qurishi Int. at 38-39.  Further, Qurishi's medical records from the day of the incident do not support that he "suffered from a brain injury (concussion)" or that he "sprain[ed] and strain[ed]" his neck.  Def.'s Mot. at 19:21-24; see also Ex. I, Qurishi Med. Records at 19.  Qurishi's medical records indicated that he denied pain and "loc", which is loss of conscious, denied pain to his neck and indicated he had mild soreness that "isn't even pain" over his forehead.  *Id*.

It is also disputed that Qurishi's shot did not kill Decedent.  Def.s' Mot. at 19:25-20:2.  First off, the autopsy report does not indicate which officer fired the shot that killed the Decedent.  Further, the medical examiner found that Decedent died from multiple gunshot wounds due to exsanguination (bled to death) and that the gunshot wound to his leg contributed to his cause of death.  Exhibit J, Dr. Raven Depo. at 50, 60, 71-72.  Accordingly, because there are numerous disputed issues of material fact, Defendants are not entitled to summary judgment. Fed. R. Civ. P. 56(c).

## III.    LEGAL STANDARD

### A. Summary Judgment

The Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.* 398 U.S. 144, 158–59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 875 (9th Cir. 1987).  Summary judgment cannot be granted where a genuine dispute exists as to "material facts."  Fed. R. Civ. P. 56(c). Even where the basic facts are undisputed, summary judgment should be denied if reasonable minds could differ on the inferences to be drawn from those facts. *Adickes*, 398 U.S. at 158–59; *Lake Nacimiento Ranch Co.*, 841 F.2d at 875.

The court must carefully examine all the physical evidence in the record, such as medical reports, contemporaneous statements by the officer and eyewitnesses, and any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). Because the reasonableness inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment . . . should be granted sparingly" in excessive force cases. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003).

Despite an officer's first-hand testimony to the contrary, entirely circumstantial evidence may be sufficient to create a triable issue of fact. *Hopkins*, 958 F.2d at 888 (holding there was a triable issue of fact on whether the officer's reported subjective fear of being killed was objectively reasonable because a medical report showed the officer's injuries were superficial). Courts recognize that "'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation,' and that these judgments are sometimes informed by errors in perception of the actual surrounding facts*." Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "Not all errors in perception or judgment, however, are reasonable" and while courts "do not judge the reasonableness of an officer's actions 'with the 20/20 vision of hindsight,' nor does the Constitution forgive an officer's every mistake." *Id.* (quoting Graham, 490 U.S. at 396); see also *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011).

1

## IV.    ANALYSIS

### A. Qurishi's Use of Deadly Force was Unreasonable

An excessive force claim is adjudicated under the Fourth Amendment's "objective reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 388 (1989). Among the specific facts a court must consider are "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id*. (quoting *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).  The three *Graham* factors are not exclusive, and the Ninth Circuit has identified several other factors that may be relevant, including whether the officer gave the suspect a warning before using force that could result in serious injury.  See *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793-94 (9th Cir. Mar. 31, 2014) (en banc) ("In general, [the Ninth Circuit] ha[s] recognized that an officer must give a warning before using deadly force whenever practicable" (internal quotation marks omitted)).  Another recognized factor is "whether there were less intrusive means of force that might have been used" and the least intrusive means of force is relevant.  See *Glenn*, 673 F.3d at 876 (9th Cir. 2011).  "[P]olice are required to consider what other tactics if any were available, and if there were clear, reasonable and less intrusive alternatives to the force employed, that militates against finding the use of force reasonable." *Id*. A "simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."  *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).  Nor does "[a] desire to resolve quickly a potentially dangerous situation."  *Deorle*, 272 F.3d at 1281.

The Ninth Circuit has interpreted the "severity of the crime" factor as relating to the initial crime prompting a response by law enforcement. See *Lowry v. City of San Diego*, 858 F.3d 1248, 1257-58 (9th Cir. 2017) (en banc), cert. denied, 138 S.Ct. 1283 (2018).  Here, the severity of the crime was a vehicle speeding on the

highway which crashed before the officers ever attempted to initiate a traffic stop, where the occupants fled from the vehicle after the crash and the officers were unaware the car was stolen prior to the shooting.  This crime would be considered a low-level and this factor does not weigh in favor of justifying the use of deadly force.

"[T]he most important *Graham* factor is whether the suspect posed an immediate threat" to anyone's safety. *Mattos v. Agorano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (cleaned up). Use of deadly force is reasonable only if an officer has probable cause to believe the suspect poses an immediate threat of death or serious bodily harm to himself or others. See *Gonzalez*, 747 F.3d at 793; *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013). A "statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).  Here, Decedent did not pose an immediate or immediate threat of death or serious bodily injury at the time of the shooting.  When the evidence is viewed in the light most favorable to Plaintiffs, including all reasonable inferences therefrom, Decedent never grabbed Qurishi's firearm or attempted to do so, he never tried to disarm the officer and the requested backup had arrived prior to Qurishi firing, with the deputy's vehicle arriving with the lights and sirens activated.

Punches are considered assaultive conduct, and police officers are trained that deadly force should not be used against subjects displaying assaultive conduct. Instead, police officers are trained to use deadly force only when an individual poses an immediate or imminent threat of death or serious bodily injury.  Decedent's punches on Qurishi do not constitute an immediate or imminent threat of death or serious bodily injury.  Ex. A, Clark Decl. at ¶¶ 10, 12, 14, 16.  Police officers are also trained that subjective fear is insufficient and the suspect must have the ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the officer and simply punching someone does not satisfy these elements.  *Id.* at

¶¶ 10, 12. Qurishi was not about to black out or lose consciousness, backup had already been requested and had arrived before he fired his shot, Perez-Rojas arrived prior to Qurishi's shot and arrived with his lights and sirens activated, which should have given notice to Qurishi that backup had arrived.  Further, Decedent was unarmed during the entire incident, he never grabbed or tried to grab Qurishi's gun and Qurishi never saw or felt a weapon on the Decedent's person.  The threat posed by Decedent for punching Qurishi was insufficient to justify the use of deadly force against Decedent and did not rise to the level of immediate or imminent threat of death or serious bodily injury.

To the extent that Qurishi was mistaken that Decedent grabbed or was attempting to grab his gun, whether such mistake was reasonable or not is an issue that must be decided by a jury and not by the Court as a matter of law.  See *Nehad v. Browder*, 929 F.3d, 1125, 1133 (9th Cir. 2024) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1124, 1127 (9th Cir. 2011)) ("Where, as here, an officer's particular use of force is based on a mistake of fact, we ask whether a reasonable officer would have or should have accurately perceived that fact. [W]hether the mistake was an honest one is not the concern, only whether it was a reasonable one.") (internal quotation marks omitted); see also *Johnson v. Bay Area Rapid Transit Dist*., 724 F.3d 1159, 1168 (9th Cir. 2013) (a "reasonable officer sometimes makes mistakes— reasonable mistakes—of fact or law and thereby commits an unconstitutional act. Though we may excuse the reasonable officer for such a mistake, it sometimes proves necessary for a jury to determine first whether the mistake was, in fact, reasonable") (internal citation omitted); *Glenn*, 673 F.3d at 871 (holding that not all errors in perception or judgment are reasonable and that the Constitution does not forgive an officer's every mistake).  Accordingly, it should be left up for a jury to decide whether or not is was reasonable for Qurishi to mistakenly perceive that Decedent was grabbing or attempting to grab his gun.

Defendants argue that Decedent posed an immediate threat of death or serious bodily injury because Decedent was "pummeling him into unconsciousness and causing him serious injury" and because Decedent "had his hand on Qurishi's gun". Def.s' Mot. at 24:7-11.  However, when the evidence is viewed in the light most favorable to Plaintiffs, including all reasonable inferences therefrom, Qurishi never blacked out or lost consciousness and he did not sustain serious injuries based on his actions and conduct immediately following the shooting, based on his own statements and based on his medical records.  Further, it is highly disputed whether Decedent ever had his hand on Qurishi's gun, including by both percipient witness Mr. Vivo and Mr. Ramirez, by the video evidence and by Qurishi's own statements about never seeing Decedent's hand on or near his gun.

Throughout various times during the incident Decedent attempted to flee and was resistive.  However, Decedent's resistance can be classified as active resistance or assaultive behavior, and police officers are trained not to use deadly force against subjects displaying active resistance or assaultive behavior and instead must pose an immediate or imminent threat of death or serious bodily injury.  In sum, an analysis of the *Graham* factors supports a finding that Qurishi's use of deadly force was excessive and unreasonable and a rational jury could find that he should never used deadly force against an individual who was punching him.

Further, Qurishi never gave a verbal warning, despite being feasible to do so, and he had less than lethal alternatives such as a taser and use of the baton.  See *Gonzalez*, 747 F.3d at 793-94.  These less than lethal options are more appropriate responses, than the use of deadly force, against an individual punching an officer. See *Glenn*, 673 F.3d at 876 (9th Cir. 2011).

**B. Qurishi Is Not Entitled To Qualified Immunity**

Officer Qurishi is not entitled to qualified immunity because his use of deadly force against Decedent falls within the obvious as being unreasonable and excessive,

there are also disputed issues of material fact which must be resolved by a jury, and when the evidence is viewed in the light most favorable to Plaintiffs, including all reasonable inferences therefrom, the officers' use of deadly force was unreasonable and violated clearly established law.

Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly" against "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Accordingly, an officer will be denied qualified immunity in a Section 1983 action if, "(1) taken in the light most favorable to the party asserting injury, the facts alleged show that the officer's conduct violated a constitutional right, and (2) the right violated was 'clearly established' at the time of the incident such that a reasonable officer would have understood his conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may address either prong first. Pearson, 555 U.S. at 236. While a case directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Further, the right must be defined at "the appropriate level of generality," and a court "must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis.", 229 F.3d 1271, 1288 (9th Cir. 2000); see also *Ashcroft v. al-Kidd,* 563 U.S. 731, 741-42 (2011).

In some circumstances, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *United States v. Lanier*, 520 U.S. 259, 271 (internal quotation marks omitted); see *District of Columbia v. Wesby*, 138 S.Ct. 577, 581 (2018) ("[T]here can be the rare

obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.") (internal quotation marks and citations omitted).  In this case, the use of deadly force against Decedent was obviously excessive because punching someone does not warrant using deadly force against them.  Especially since Decedent was unarmed and never reached or grabbed for Qurishi's gun and backup had already arrived to assist. Plaintiffs have also identified several material factual disputes which makes granting qualified immunity inappropriate and the Motion should be denied on this ground alone.  See *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) ("Where factual disputes exist as to the objective reasonableness of an officer's conduct, the case cannot be resolved at summary judgment on qualified immunity grounds.").  Where genuine issues of material fact exist, a court must address a claim of qualified immunity by resolving all factual disputes in the non-moving party's favor. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013); *Coles v. Eagle*, 704 F.3d 624, 629 (9th Cir. 2012).  Summary judgment must be denied where a genuine issue of material fact exists that prevents a finding of qualified immunity. *Sandoval v. Las Vegas Metro. Police Dep't,* 756 F.3d 1154, 1160 (9th Cir. 2014).  Based on the material facts in dispute underlying this cause of action against the shooting officer, the Court should find it is premature to decide whether the officer is entitled qualified immunity. *Id*; see also *Orn v. City of Tacoma*, 949 F.3d 1167, 1181 (9th Cir. 2020) (denying qualified immunity because what the defendant "most forcefully contests is whether his alternative account of the shooting should be accepted as true," and explaining that "[f]actual disputes of that order must be resolved by a jury, not by a court adjudicating a motion for summary judgment").

     Even if this were not an "obvious" case—which Plaintiffs believe it is—, long-established precedent provided Qurishi with clear notice that his conduct was unlawful.  For example, case law makes clear that the use of lethal force against

unarmed individuals who do not pose an immediate threat of death or serious bodily injury to the officer's safety violates an individual's Fourth Amendment right to be free of excessive force.  The Ninth Circuit's decision in *Hopkins v. Andaya,* 958 F.2d 881 (9th Cir. 1992) is instructive.  In *Hopkins*, a suspect became hostile and began approaching the officer in a threatening manner and the officer drew his baton and began hitting the suspect to keep him away.  *Id*. at 883.  According to the officer, the suspect then grabbed the officer's baton which caused him to fall backwards and hit his head on the ground, dazing him, then the suspect struck the officer several times with his own baton as well as kicks to the officer's head and body.  *Id*.  The officer then pulled out his gun then shot the suspect six times.  *Id*. The *Hopkin*s Court held that despite the officer's first-hand testimony to the contrary, entirely circumstantial evidence may be sufficient to create a triable issue of fact.  *Hopkins*, 958 F.2d at 885-86 (holding there was a triable issue of fact on whether the officer's reported subjective fear of being killed was objectively reasonable because a medical report showed the officer's injuries were superficial). The *Hopkins* Court found that "[e]ven without the help of experts, a jury could look at this [medical] report and conclude that [the] Officer [] was never in any serious danger.  *Id*.

The facts in the *Hopkin*s case are even more egregious than the facts in this case.  In *Hopkins*, the officer alleged that the suspect inflicted several blows to the officer's head with the officer's own baton as well as several kicks to his head.  *Id*. at 883.  Here, Decedent threw multiple punches at Qurishi, but he never struck or attempted to strike, Qurishi with a baton or any weapon and Decedent never kicked or tried to kick, the officer in the head.  Further, here, just as in *Hopkins*, the medical report "undermines [Qurishi]'s story in numerous ways" and "a jury could look at this report and conclude that Officer [Qurishi] was never in any serious danger.  *Id*. at 885-86.  Accordingly, based on Plaintiffs' facts, pre-existing case law would have put Qurishi on notice that his use of deadly force against Decedent was unlawful.

1  Further, an objectively reasonable officer follows basic police officer training

2  materials and guidelines and is on notice of the rights protected by those guidelines.

3  *See Drummond*, 343 F.3d at 1062 ("training materials are relevant not only to

4  whether the force employed in this case was objectively unreasonable . . . but also to

5  whether reasonable officers would have been on *notice* that the force employed was

6  objectively unreasonable.").  An officer who violates basic training guidelines

7  should not be heard subsequently to claim to have made a reasonable mistake or to

8  have reasonably believed his or her decision to be lawful.  *See id.*  Qurishi concedes

9  that police officers are trained to only use deadly force when the subject poses an

10  immediate threat of death or serious bodily injury.  Further, police officers are

11  trained that punches are generally considered assaultive behavior and that deadly

12  force should not be used against a subject displaying assaultive behavior.

13  Accordingly, Qurishi is not entitled to qualified immunity and Defendants' Motion

14  should be denied.

### C. The Court Should Deny Summary Judgment as to Plaintiffs' Battery Claim

18      It is important to point out that Qualified immunity does not apply to

19  Plaintiffs' state law claims.  Further, the reasonableness standard applied to state law

20  battery by a police officer no longer "matches the reasonableness standard used for

21  Fourth Amendment excessive force claims".  See Def.s' Mot. at 32:22-26.  After

22  California passed California Penal Code section 835a (PC 835a), the standard now

23  differs.  There are still some similarities but pursuant to PC 835a, officers are to use

24  deadly force only when necessary in defense of human life and shall use other

25  available resources and techniques if reasonably safe and feasible to do so.  Cal.

26  Pen. § 835a(a)(2).  An officer is justified in using deadly force upon another person

27  only when the officer reasonably believes that such force is necessary to defend

28  against an imminent threat of death or serious bodily injury to the officer or to

another person.  Cal. Pen. § 835a(c)(1)(A).  A threat of death or serious bodily injury is "imminent" when the subject has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.  Cal. Pen. § 835a(e)(2).   An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm.  *Id*.

When the evidence is viewed in the light most favorable to the Plaintiffs, including all reasonable inferences therefrom, a rational jury could find that it was not necessary for Qurishi to shoot Decedent in order to defend human life based on the punches being thrown, especially since Decedent did not grab or try to take possession of Qurishi's gun.  Further, there were other available resources and techniques which were feasible to use such as the taser, baton, backup had just arrived with lights and sirens activated and continuing to go hands on with Decedent.  A reasonable jury could find that Decedent did not pose an imminent threat of death or serious bodily injuries at the time of the shooting since Decedent never grabbed at the officer's gun, even despite the punches thrown by the Decedent.  Further, a rational jury could find that because Decedent was unarmed and because he never grabbed the officer's gun, that Decedent did not have the present ability, opportunity and apparent intent to immediately cause death or serious bodily injury.  Moreover, Qurishi's fear of future harm is insufficient to justify the use of deadly force against Decedent, so future fear of passing out or having his weapon taken away from him is not enough.  Accordingly, the Court should deny the Defendants' request for summary judgment as to Plaintiffs' Battery claim.

### D.    Officer Qurishi Violated the Bane Act

Here, a jury could find that Qurishi violated Decedent's constitutional rights by using excessive and unreasonable deadly force against him.  See *Williamson v.*

*City of Nat'l City*, 23 F.4th 1146, 1155 (9th Cir. 2022) (holding that the Bane Act requires proof of an underlying constitutional violation). Further, Qurishi showed a "reckless disregard" for Decedent's Fourth Amendment rights when he shot the unarmed Decedent. *Id*. at 1045. Accordingly, the Court should deny summary judgment as to Plaintiffs' Bane Act claim.

### E. Officer Qurishi Was Negligent

A police officer's pre-shooting conduct is taken into consideration as part of the totality of the circumstances and police officers have a duty to act reasonably when using deadly force. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 637 (2013). Here, Qurishi was negligent in his pre-shooting conduct, including not waiting for backup when he initially had both suspects prone at gun point, for not trying to handcuff Decedent when he was down prone on the ground, instead of standing him up and re-positioning him, for allegedly mistakenly believing that Decedent was grabbing or attempting to grab his gun, for taking out his gun while he was in a physical altercation with Decedent, which was also a significant factor in Perez-Rojas' decision to use deadly force and for not giving a warning that deadly force would be used prior to shooting. Ex. A, Clark Decl. at ¶ 15.

## V.    CONCLUSION

Qurishi's use of deadly force was unreasonable because Decedent did not pose an immediate threat to the safety of Qurishi or anyone else at the time of the shooting. Such an unjustified shooting is unconstitutional and violated clearly established federal law. The unreasonable shooting also supports state claims for battery (wrongful death), violation of the Bane Act and negligence (wrongful death). Therefore, the Court should deny Defendants' Motion for Summary Judgment.

1    DATED: November 10, 2025            THE LAW OFFICES OF DALE K. GALIPO

2

3                                    By:    ____/s/ Eric Valenzuela_____

4                                           Eric Valenzuela
                                           Dale K. Galipo
5                                           Attorneys for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28