# EXHIBIT A

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (SBN 284500)
evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333 / Facsimile: (818) 347-4118
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA LINA YURIAR; and JUAN GUILLERMO,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ALAMEDA; STATE OF CALIFORNIA; BASIR QURISHI; ALEXIS PEREZ-ROJAS; and DOES 3-10, inclusive,<br><br>Defendants. | Case No. 4:23-cv-06438 KAW<br><br>**DECLARATION OF ROGER A. CLARK IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## DECLARATION OF ROGER A. CLARK

I, Roger A. Clark, declare as follows:

1. I am an expert specializing in the procedures of police practices and proper police tactics, including proper procedures for the detention and arrest of individuals and the type and degree of force, if any, appropriate under different circumstances.

2. I am a competent adult and personally familiar with the facts contained herein and would and could competently testify thereto if called upon to do so.

3. My opinions are based in part on my training, professional experience, and education. I am a twenty-seven year veteran of the Los Angeles County Sheriff's Department. I was hired on December 1, 1965, and I retired from active service on March 31, 1993. My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant. I hold a California Peace Officer Standards and Training ("P.O.S.T.") Advanced Certificate, and I am a graduate of the P.O.S.T. Command College (class #5).

4. As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the P.O.S.T. accepted investigation and apprehension methods.

5. During my assignment as the Administrative Lieutenant of the Department's Reserve Forces Bureau, I supervised the training of cadets at our Reserve Training Academy. They were taught proper investigation, interview, and apprehension procedures. I also lectured the Reserve Academy on the P.O.S.T. syllabus: "The Legal and Moral Use of Force and Firearms."

6. During the last five and one-half years of my career, I commanded a specialized unit known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which was created to investigate, locate, observe and arrest major career) criminals. I held this position until my retirement from the Department on March 31, 1993. The majority of our cases were homicide cases. Arrests frequently

occurred in dynamic circumstances including crimes in progress.

7. As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer involved shootings.

8. Since my retirement, I have testified as an expert on jail procedures and jail administration, police procedures, police tactics, investigative procedures, shooting scene reconstruction, trajectory, use of force issues, and bullet casings in Arizona State Courts, California Courts, Washington State Courts and Federal Courts in California, Texas, Colorado, Illinois, Indiana, Pennsylvania, and Washington.

9. In forming my opinions in this matter, I have reviewed the photographs, police reports, videos, deposition transcripts, recorded interviews, and other related material prior to forming my opinions in this case.

10. At the time of this incident involving Mr. Yuriar on July 3, 2023, police officer training on deadly force included the following:

    a. Deadly force is the highest level of force.

    b. Deadly force should only be used as a last resort.

    c. Deadly force should only be used when all other options have been exhausted and no other reasonable measures are available.

    d. When feasible, a warning should be given before using deadly force.

    e. Deadly force is only justified on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury; in other words, a subjective fear is not enough. Likewise, a fear of future harm is not enough. Deputies are also trained to control their fear.

    f. Deadly force can only be used in an "immediate defense of life" situation; in other words, in defense of immediate or imminent death or serious bodily injury.

    g. For a threat of death or serious bodily injury to be "imminent," the

individual must have the present ability, opportunity, and apparent intent to immediately inflict death or serious bodily injury.

h. The decision to use deadly force must be guided by the reverence for human life.

i. An officer must justify every shot he or she fires and to re-assess the threat or danger before firing the initial shots.

j. An overreaction in using deadly force is excessive force.

k. Officers are trained that punching someone is considered assaultive conduct, which is insufficient to use deadly force.

l. Officers are also trained that subject fear and fear of future harm is not enough to justify the use of deadly force, and there must be a reasonable fear of imminent death or serious bodily injury.

11. Officer training also provided that:

a. Officers should wait for additional backup, instead of trying to apprehend multiple suspects at the same time if feasible.

b. Officers should give a verbal warning that deadly force will be used before firing when feasible.

c. Officers should handcuff subjects when they are in the prone position, instead of standing them up to handcuff them.

d. Officers should not unholster their gun while in a physical altercation with a subject.

e. Police officers are also trained on gun retention techniques in the event someone is trying to disarm them or take possession of their gun.

12. Police officers are trained that they can only use deadly force in an immediate defense of life situation, in other words, when there is an immediate or imminent threat of death or serious bodily injury. There was no immediate defense of life situation when Officer Qurishi fired his lethal shots at Juan Yuriar because

-3-  Case No. 4:23-cv-06438 KAW
DECLARATION OF ROGER A. CLARK

Mr. Yuriar was unarmed and he had not attempted to grab the officer's gun or disarm the officer of his gun. Further, taking Qurishi down to the ground and throwing several punches at him does not justify the use of deadly force against Mr. Yuriar because this is considered assaultive conduct and is not immediately life threatening, which does not rise to the level of justifying the use of deadly force. Taking the officer to the ground and throwing several punches at him does not constitute an imminent or immediate threat of death or serious bodily injury. This conduct also does not establish that Mr. Yuriar had the ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to Quirishi. Officer Qurishi also should never have unholstered his gun while in a physical altercation with Mr. Yuriar, especially since Mr. Yurir was unarmed and never grabbed or attempted to gain access to Qurishi's gun.

13. Further, Office Qurishi also does not appear to have ever blacked out or lost consciousness based on his conduct immediately after the shooting, including unjamming his gun, making radio communications, telling Deputy Perez-Rojas that he was ok, going and handcuffing the second suspect and then extensively telling the other officers at the scene what had occurred for several minutes. Qurishi also should have given Mr. Yuriar a verbal warning that deadly force would be used before firing, and it was feasible to do so. Moreover, Qurishi had already requested backup which had arrived with his lights and sirens activated prior to Qurishi's use of deadly force.

14. Qurishi also had several less than lethal options such as a taser and a baton, as well as an additional officer who had just arrived on scene to assist. The taser or the baton are far more appropriate uses of force against someone throwing punches at an officer, as opposed to using deadly force against them.

15. Qurishi was also negligent in his pre-shooting conduct, and his pre-shooting conduct was inappropriate and inconsistent with police officer standards and training, including not waiting for backup when he initially had both suspects

prone at gun point, for not trying to handcuff Mr. Yuriar when he was down prone on the ground, instead of standing him up and re-positioning him, for allegedly mistakenly believing that Mr. Yuriar was grabbing or attempting to grab his gun, for taking out his gun while he was in a physical altercation with Mr. Yuriar, which also appears to have been a significant factor in Deputy Perez-Rojas' decision to use deadly force and for not giving a warning that deadly force would be used prior to shooting.

16. From the standpoint of police practices and basic police training, the use of deadly force by Qurishi was contrary to police officer standards and training, improper, and inappropriate, including (but not limited to) for the following reasons:

    a. There was no Immediate Defense of Life Situation as explained above.

    b. Officer Qurishi could not shoot Mr. Yuriar for having taking him down to the ground and punching him. Under the facts of this case, Officer Qurishi cannot justify shooting Mr. Yuriar because of the punches thrown, especially since Mr. Yuriar never grabbed or attempted to grab Qurishi's gun. There has to be an immediate threat of death or serious bodily injury with no other reasonable alternative measures. Because Mr. Yuriar was unarmed and not trying to gain access to Qurishi's gun, there was no immediate threat of death or serious bodily injury.

    c. Other reasonable alternative measures available. Officers are trained that they can only use deadly force in a "last resort" situation. Shooting was not a "last resort" in this case. Other reasonable alternative measures were available, including use of the taser or baton, giving a verbal warning, waiting for the requested backup to assist which had already arrived on scene with lights and sirens activated and continuing to go hands on

with Mr. Yuriar.

    d. No warning regarding deadly force. Police officers are trained to give a verbal warning that deadly force will be used when feasible. Officer Qurishi failed to issue a verbal warning prior to using deadly force, even though it would have been feasible to do so under this set of facts.

    e. All other reasonable options had not been exhausted before using deadly force and there were other reasonable measures available.

    f. Subjective fear is insufficient to justify a use of deadly force. Also, fear of future harm is insufficient. Basic police training requires that any use of deadly force must be based on an "objective" rather than "subjective" "reasonable necessity" of action to "imminent danger." In this case, the record does not support any objectively reasonable explanation that Yuriar posed an immediate threat of death or serious bodily injury at the time that any of the shots were fired.

    g. No reverence for human life. Police officers are trained that they must show a reverence for human life. Qurishi showed no reverence for human life when he shot Mr. Yuriar who was unarmed and never grabbed or attempted to grab Qurishi's gun, and without issuing a verbal warning that deadly force would be used.

17. Officer Qurishi engaged in improper and inappropriate tactics, including not waiting for the backup he requested to arrive, when he had both subjects prone down on the ground, for not handcuffing Mr. Yuriar when he had him prone down on the ground, and instead standing Mr. Yuriar up and trying to reposition him, then attempting to handcuff him and for not utilizing gun retention techniques if he felt Mr. Yuriar was trying to gain access to his gun (which he was

not).

18. It is my opinion that Qurishi's use of force was inconsistent with his training as a CHP officer. Further, it was inappropriate for Qurishi to determine that Mr. Yuriar posed an immediate threat of death or serious bodily injury to Qurishi or anyone else at the time of the shooting. There are differences between a potential threat, a threat, assaultive conduct and an immediate defense of life situation.

I declare under penalty of perjury of the laws of the United States of America, that the foregoing is true and correct. Executed on November 11, 2025, at Santee, California.

_____
Roger A. Clark