# EXHIBIT 34

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Eric Valenzuela, Esq. (Bar No. 284500)
evalenzuela@galipolaw.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

*Attorneys for Plaintiffs,*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

MARIA LINA YURIAR, et al.,

    Plaintiffs,

    vs.

STATE OF CALIFORNIA, et al.,

    Defendants.

**Case No. 3:23-cv-06438 KAW**

[*Honorable Kandis A. Westmore*]

**PLAINTIFFS' RULE 26 INITIAL EXPERT DISCLOSURE**

**TO DEFENDANTS STATE OF CALIFORNIA, BASIR QURISHI, AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs hereby designate the following retained and non-retained expert witnesses who may be called upon to give expert testimony at trial pursuant to Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure. Plaintiffs reserve their right to supplement and/or amend this disclosure.

**<u>RETAINED EXPERTS</u>**

1.   **Roger C. Clark**
       Police Procedures Consultant, Inc.
       10207 Molino Road
       Santee, CA 92071

Roger C. Clark's Rule 26 report, C.V., fee schedule, and list of prior sworn testimony are collectively attached hereto as **Exhibit A**.

2.   **Scott Holdaway**
       CVisualEvidence
       2441 W 205th Street, Suite C102
       Torrance, CA 90501

Mr. Holdaway's Rule 26 report, C.V., fee schedule, and list of prior sworn testimony are collectively attached hereto as **Exhibit "B"**.

**<u>NON-RETAINED EXPERTS</u>**

3.   **Katherine Raven, M.D.**
       Alameda County Coroner's Bureau
       2901 Peralta Oaks Ct
       Oakland, CA 94605

Dr. Raven is a forensic pathologist with the Alameda County Coroner's Bureau. Dr. Raven performed the autopsy of Decedent and is expected to testify as

to the cause and manner of Decedent's death, the injuries he sustained, and the trajectory of the gunshot wounds to Decedent's body.

**4.     Wilson Morris**
Alameda County Fire Department
6363 Clark Ave.
Dublin, CA 94568

Mr. Morris is a paramedic with the Alameda County Fire Dept. and is expected to testify as to Decedent's injuries, his medical treatment, and his medical billing.  Mr. Morris also made the pronouncement of death for the Decedent.

DATED:  September 22, 2025          LAW OFFICES OF DALE K. GALIPO

By  /s/ *Eric Valenzuela*
Eric Valenzuela
Attorneys for Plaintiffs

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Alejandro Monguia, am employed in the County of Los Angeles, State of California and am over the age of eighteen years and not a party to the within action. My business address is 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367.

On September 23, 2025, I served the foregoing document described as:

**PLAINTIFFS' RULE 26 INITIAL EXPERT DISCLOSURE**

on all interested parties, through their respective attorneys of record in this action by placing a true copy thereof enclosed in a sealed envelope addressed as indicated on the attached service list.

### METHOD OF SERVICE

☐ (BY MAIL) I enclosed the documents in a sealed envelope or package and addressed to the parties at the addresses as indicated on the attached service list.

    ☐ I deposited the sealed envelope or package with the United States Postal Service, with the postage fully prepaid thereon.

    ☐ I placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of this office for the collection, processing and mailing of documents. On the same day that documents are placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒ (BY ELECTRONIC SERVICE) I caused the foregoing document(s) to be sent via electronic transmittal to the notification addresses listed below as registered with this court's case management/electronic court filing system.

☐ (BY FEDERAL EXPRESS) I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses as indicated on the attached service list. I placed the envelope or package for collection and overnight delivery at an office or regularly utilized drop box of the overnight delivery carrier.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 23, 2025, at Woodland Hills, California.

_____/s/ *Leslie De Leon*_____
Leslie De Leon

1

### SERVICE LIST

2
Dean Gazzo Roistacher LLP
3
Lee H. Roistacher, Esq. (SBN 179619)
Kimberly A. Sullivan, Esq. (317857)
4
Brooke M. Mesner, Esq. (SBN 354265)
5
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
6
Telephone: (858) 380-4683
7
Facsimile: (858) 492-0486
E-mail: lroistacher@deangazzo.com
8
        ksullivan@deangazzo.com
        bmesner@deangazzo.com
9
        mkilcrease@deangazzo.com
10

11
*Attorneys for Defendants*
*State of California by and through California Highway Patrol and Officer Basir*
12
*Qurishi*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' RULE 26 INITIAL EXPERT DISCLOSURE

# EXHIBIT A

# Roger Clark

### Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
rclark9314@aol.com

September 23, 2025

Mr. Dale K. Galipo, Esq,
Eric Valenzuela, Esq.
Law Offices of Dale K. Galipo
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367

***Regarding:   Yuriar v. California, et al., 3:23-cv-06438 KAW***

Dear Mr. Galipo and Mr. Valenzuela:

Thank you for retaining me to analyze and render opinions regarding the July 3, 2023 officer-involved-shooting of Juan Diego Burnal Yuriar by California Highway Patrol Officer Basir Qurishi and Alameda County Sheriff Deputy Alexis PerezRojas.  Pursuant to the requirements of Rule 26, I have studied the police reports, CHP policies, Interview and deposition transcripts, videos and other materials (as listed below) provided to me thus far regarding this case.  Please be advised that if/when any additional information is submitted, a supplemental report may be necessary.

**Materials Provided and Reviewed Thus Far**:

1. Protective Order
2. First Amended Complaint
3. Alameda County Sheriff's Office Investigation Summary
   COUNTY 000001 – COUNTY 000212
4. County of Alameda Production of Documents
   COUNTY 000424 – COUNTY 002203 - Reports
5. California Highway Patrol Production of Documents
   CHP_1064 – CHP_1160 – Patient Care, Ambulance Records, Physician's Report
   CHP00000265 – Alameda Couty Sheriff's Supplemental Report
   CHP00000001 - CHP00000005 – Use of Force Report

CHP00000007 - CHP00000363 – Incident Reports, Arrest Policies
CHP00000380 - CHP00000406 – Post-shooting Inspection, Arrest Investigation
Reports
CHP00000408 - CHP00000648 – Property Receipt, Traffic report, Incident report,
Autopsy Report
CHP00000879 - CHP00000895 – Incident Detail Report
CHP00001025 - CHP00001063 – Critical Incident Reconstruction Report

Audio Files
6. (COUNTY002204) 23-009618 23070300330 163RD AVE AT LIBERTY ST SL w

Videos
7. (COUNTY002205) Clip 3
8. (COUNTY002206) CH01
9. COUNTY 000215 – COUNTY 000423
10. Axon_Body_3_Video_2023-07-03_0159_X60A7552T
11. Axon_Body_3_Video_2023-07-03_0159_X60A7897F
12. CHP00000006
13. CHP00000364 - CHP00000379
14. CHP00000407

Photos
15. COUNTY 00207 – 002843
16. CHP00000007 - CHP00000363
17. CHP00000649 - CHP00000878
18. CHP00000896 - CHP00001024
19. Autopsy Report
20. Deposition Transcripts of Qurishi, PerezRojas, Owen Vivo, Ivan Rodriguez
21. Interviews of Qurishi and PerezRojas
22. POST Learning Domain 20


**<u>Brief Overview of Events</u>**:

   On July 3, 2023, Juan Diego Burnal Yuriar, was a passenger in a car that was
driving eastbound on Interstate 580, in the San Landro area.  Mr. Yuriar was not driving
the car and was seated in the back seat of the car.  Ther other passengers in the car were
Ivan Rodgriguez, Abraham Mendoza and Eric Hernandez.
At approximately 0152 hours, Officers Basir Qurishi and his partner Officer Ryan Hardin
allege that they observed the vehicle Mr. Yuriar was in traveling at a high rate of speed.
Officer Hardin alleges that he then began to follow the speeding vehicle so that he can
initiate a traffic stop.  The vehicle then exited the interstate on the 164th Avenue off-
ramp, lost control and crashed into a nearby electrical box.  The vehicle crashed before

the officers ever activated their overhead emergency lights and before the officers ever attempted to initiate the traffic stop. Immediately following the crash, all occupants, exited the car and fled on foot. After the crash, Officer Hardin pulled up next to the car and activated the emergency lights on his police vehicle. Officers Qurishi and Hardin were not aware that the vehicle had been reported stolen.

Officer Hardin then pursued one of the vehicle's occupants on foot. Officer Ourishi, after briefly exiting out of the police cruiser, re-entered the police car, and followed the remaining occupants of the vehicle. Officer Qurlshi then located Mr. Yuriar and Ivan Rodriguez in front of a nearby apartment complex. Officer Qurishi then exited the police care and ordered them both, at gunpoint, to get on the ground. Mr. Yuriar and Rodriguez then laid prone on the ground.

While Officer Qurishi was attempting to handcuff Rodriguez, Mr. Yuriar got up off of the ground and began to run. Officer Qurishi chased after Mr. Yuriar and quickly caught up to him and proceeded to attempt handcuff Mr. Yuriar as he lay prone, chest down, on the ground. Instead of handcuffing both of Mr. Yuriar's hands as he lay prone on the ground, Qurishi only cuffed one of his hands and then Qurishi decided to stand Mr. Yuriar up to his feet in order to attempt handcuff the other hand. Qurishi and Mr. Yuriar then get into a physical altercation and ended on the ground on a driveway. Home surveillance video of the incident appears to show Mr. Yuriar attempting to punch Qurishi. It is unclear from the video whether or not Mr. Yuriar is landing the punches or if they are being blocked.

An audio recording also captures the Mr. Yuriar appear to verbally threaten Qurishi during their physical altercation.

As Mr. Yuriar and Qurishi are in a physical altercation down on the ground of the driveway, Qurishi unholsters his gun and fires a single shot. Qurishi did not give a verbal warning that deadly force would be used prior to firing. Shortly before Qurishi fired his first and only shot, Deputy Alexis PerezRojas, had arrived on scene, exited his vehicle and began to walk towards Qurishi's location. PerezRojas claims to have observed hands on a gun, without knowing who's hands were on the gun or who's gun it was, and then fired two shots at Mr. Yuriar. PerezRojas fired his gun shortly after arriving on scene and hearing Qurishi's shot and observing someone's hands on a gun. Deputy PerezRojas appears to begin to fire immediately after giving Mr. Yuriar a verbal warning. Qurishi fired his single round approximately 2 seconds before Deputy PerezRojas fired. Mr. Yuriar was unarmed during the incident.

Video of the incident does not show Mr. Yuriar grab or attempt to disarm Qurishi of his firearm. Witnesses Owen Vivo and Ivan Rodriguez both testified that Mr. Yuriar never saw Mr. Yuriar grab or reach for Officer Qurishi's gun. Qurishi indicated that he does not know whether or not Mr. Yuriar grabbed or reached for his gun because he did

not see that.

After Deputy PerezRojas fired his two shots, Mr. Yuriar slumped over and Officer Qurishi stood up, cleared a jam in his handgun, and held Mr. Yuriar at gun point. Shortly after, Qurishi approached Ivan Rodriguez and began to detain him. Deputy PerezRojas indicated that hearing the prior gunshot and seeing a gun, was an important an important and significant factor in his decision to use deadly force.

Mr. Yuriar was only twenty years old at the time of the incident.

**Opinions Thus Far**:

1.     The use of lethal force by the involved officers (both Qurishi and PerezRojas) violated standard police officer practices and training. A reasonably trained officer facing the same circumstances would not have utilized lethal force. Officers are trained that deadly force is only justified when there is an immediate threat of death or serious bodily injury and that subjective fear is insufficient to use deadly force. Further, assaultive behavior by a suspect is not sufficient to use deadly force, it must be an immediate or imminent threat of death or serious bodily injury. A reasonable officer in the involved-officer's position, acting consistent with standard police practices and training, would not have believed that Mr. Yuriar presented an immediate threat of serious harm or death, especially since he was unarmed and never grabbed or attempted to grab the officer's gun. A reasonable officer facing those facts and circumstances, and acting consistent with standard police practices and training, would not have shot Mr. Yuriar, and would have used other tactics and other less lethal options.

2.     Officers are trained that an officer's overreaction in using deadly force is excessive force. Here, Officer Qurishi overreacted when he shot Mr. Yuriar after Mr. Yuriar started throwing punches at the officer. Mr. Yuriar did not pose an immediate threat of death or serious bodily injury because of the punches being thrown or because of a verbal threat. Officers are also trained that deadly force should only be used as a last resort, in the direst of circumstances, that there needs to be no other reasonable alternatives, to have a reverence for human life, that it should be an immediate defense of life ("IDOL") situation and that a verbal warning should be given that deadly force would be used, prior to shooting, when feasible.

3.     Qurishi and PerezRojas' use of deadly force was not necessary to defend human life. Further, Mr. Yuriar did not present the ability, opportunity, and apparent intent to immediately cause death or serious bodily injury, to the involved officers. A fear of future harm is insufficient, no matter how great the fear and no matter how great the likelihood of the harm.

4.    According to Deputy PerezRojas seeing Qurishi's gun and hearing the gunshot fired by Qurishi was a significant factor in Deputy PerezRojas' decision to use lethal force against Mr. Yuriar.

5.    Officer Qurishi should never have unholstered his weapon or fired a shot while he was in a physical altercation with Mr. Yuriar and police officers are trained that it is not good tactics to take your gun out when you are in a physical altercation.  Police officers are also trained in gun retention techniques and in hand to hand combat.

6.     There were less lethal alternatives available to the officer, including giving a verbal warning that deadly force would be used, waiting for backup or additional units to arrive, which had already been requested and were nearby or continuing to go hands on with Mr. Yuriar and using less lethal options.

7.    Officer Qurishi's pre-shooting tactics and conduct were inconsistent with police officer standards and training, including going hand-on with a suspect when the officer has two suspects at gunpoint, instead of waiting for backup which has already been requested and is on its way, not handcuffing Mr. Yuriar when he was on the ground prone, with one hand already cuffed and pulling out his firearm while in a physical altercation.  The reasonableness of an officer's use of deadly force includes consideration of the officer's tactical conduct and decisions leading up to the use of force.  Here, the officer made poor tactical decisions, and limited his tactical options, ultimately leading to the unnecessary use of lethal force.  Police officers are trained to approach every contact with officer safety in mind.  Complacency, overconfidence, poor planning, or inappropriate positioning can leave officers vulnerable to attack.


**The Basic Rules Regarding the Use of Deadly Force:**

Peace officers and Deputies are trained that by accepting their badges and guns they must act at all times in consideration of the extreme value our society places on all human life.  Firing a firearm at a human being is different from all other police uses of force.  While there are other police tactics and tools that can qualify as deadly force, none carry the same high probability of death as the use of the officer's firearm.  Accordingly, Officers are trained that they can only use firearms under the most extreme circumstances.  These situations are very rare. In fact, studies indicate that only a very few police officers in the United States ever fire their weapons in the field during their entire careers.

Officers are trained at the POST Basic academy that the use of force must meet an *"Objectively Reasonable"* standard.


## My Qualifications for Reviewing this Case:

My opinions are based in part on my training, professional experience and education.  I am a twenty seven year veteran of the Los Angeles County Sheriff's Department (LASD).  I was hired on December 1, 1965, and I retired from active service on March 31, 1993.  My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant.  I retired holding a California Peace Officer Standards and Training (POST) Advanced Certificate, and I am a graduate of the POST Command College (class #5, 1988).  The POST Command College was a Masters level two-year course of study requiring a thesis, in Police Administration, with the diploma awarded by the California Department of Justice (and not the California University system).

During the course of my service with the department, I had a wide range of duties.  Those duties included an 18 month assignment as a staff jail deputy and two years as an Administrator/Lieutenant in the same jail facility (Men's Central Jail).  I also served on the department as a patrol officer, field supervisor, jail watch commander and administrator, station watch commander, and commanding officer of investigative units. I was a field training officer while assigned as a patrol deputy, and I trained new officers in POST and department approved patrol procedures, field investigations, apprehension techniques, and emergency procedures.

I was a Station Detective and, as such, reviewed and assessed cases passed on to me by the patrol officers.  Those cases included possible complaints relating to both misdemeanor and felony crimes.  They frequently required follow up investigations and interviews before the exact nature of the case could be determined.  As a field officer and detective, I was trained in interview and interrogation methods and subsequently trained other officers.

Among other assignments as a Sergeant, I supervised field officers and station detectives as they took complaints and conducted preliminary investigations regarding criminal and administrative matters.

As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the POST accepted patrol tactics, and investigation and apprehension methods.

As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer-involved shootings. I was also assigned by my Department

to sit as a member of Departmental review committees regarding the reasonable or unreasonable use of force and tactics.

As stated above, during my career I was assigned to the Los Angeles County Men's Central Jail (MCJ) for a period of 18 months as a line officer. Upon my subsequent promotion to Lieutenant, I returned to the same facility approximately 10 years later. During that time, I was assigned as a Jail Watch Commander, and as the Facility Training and Logistics Administrator. At the time of my assignment, the MCJ held a daily population in excess of 7,000 inmates, including a hospital, which was serviced by a staff of more than 900 sworn and civilian personnel.

During my assignment as the Administrative Lieutenant of the Department's Reserve Forces Bureau, I worked closely with the State of California Peace Officer Standards and Training in revamping our Reserve Academy to bring it into state compliance. This process gave me an expertise in the POST Basic curriculum. I also supervised the training of cadets at our Reserve Training Academy. They were taught proper investigation, interview, and apprehension procedures. Among other topics, I lectured the Reserve Academy on the POST syllabus: "The Legal and Moral Use of Force and Firearms."

During the 1984 Olympics held in Los Angeles, I was assigned and served as the Department's Intelligence Officer at the Los Angeles Olympics Emergency Operations Center.

During the last five and one half years of my career, I commanded a specialized unit known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which was created to investigate, locate, observe and arrest major (career) criminals. I held this position until my retirement from the Department on March 31, 1993.

Criminals investigated and arrested by N.O.R.S.A.T. included suspects involved with homicide, robbery, kidnaping, extortion, burglary, major narcotics violations and police corruption. The majority of our cases were homicide cases, including the murder of police officers. Arrests frequently occurred in dynamic circumstances including crimes in progress.

My unit also conducted major narcotics investigations including undercover narcotics buys, buy busts, and reverse stings. We frequently deployed at the request of investigative units, such as Narcotics, which provided the initial investigative leads for our operations. These narcotics cases usually involved multiple kilogram quantities of drugs and amounts of money ranging from one hundred thousand to more than one million dollars.

Approximately 80% of cases assigned to N.O.R.S.A.T. were active Homicide investigations. In that regard, the unit processed, under my command and supervision, various aspects (depending on the complexity of the cases involved) of approximately 1,000 Homicides ranging from deaths of police officers to serial homicide suspects.

Additionally, the majority of the over 2,600 cases for which I have been retained as a consultant (since 1993) have involved injuries or deaths connected with some aspect of force during either apprehension or while in police custody.

During the first three months of my command of N.O.R.S.A.T., the unit had three justifiable shooting incidents. From that time, and over the next five years of my command, N.O.R.S.A.T. established a remarkable record of more than two thousand arrests of career criminals without a single shot fired – either by my officers or by the suspects whom we arrested.

Many of these suspects were armed and considered to be very dangerous. Some were apprehended during the course of their crimes and were very prone to use firearms to escape apprehension. This record of excellence was accomplished through the use of proper tactics, management and supervision of personnel, training in correct apprehension methods, and adherence to the moral and ethical standards endorsed by California POST and my Department. These methods and principles are also embraced by every state training commission of which I am aware, as well as the national standards established by the U.S. Department of Justice.

As a result of my position and record as the commanding officer of N.O.R.S.A.T., I was assigned to author Field Operations Directive 89-3, "Tactical Operations Involving Detective Personnel." This order remained in force 20 years (until September 30, 2009), and included the basic standards and considerations with which investigative officers must comply in the event of a tactical deployment such as the dynamic entry into a building for the purpose of an arrest and/or seizure of evidence.

Since my retirement, I have testified as an expert on use of force, jail procedures and jail administration, investigations, police procedures, police tactics, investigative procedures, shooting scene reconstruction, and police administration in Arizona State Courts, California State Courts, Washington State Courts and Federal Courts in Alabama, Arizona, California, Colorado, Florida, Illinois, Iowa, Indiana, Louisiana, Missouri, Nevada, Ohio, Oregon, Pennsylvania, Texas, Utah, Washington, New Mexico, New York and Wisconsin. I have testified before the Los Angeles Police Department Board of Rights and the Los Angeles County Civil Service Commission. I have testified before the Harris County (Texas) Grand Jury and the Cleveland Grand Jury. I have also submitted written opinions in matters before Alaska, Delaware, Idaho, Montana, North Carolina, New York, Oregon, Kentucky, and Wyoming Federal and State Courts. I was selected (January 20, 2007) to present on the topic of: "Police Experts" at the National

Police Accountability Project held at Loyola Law School, Los Angeles, California. I was selected (September 23, 2010) to present on the topic of: "Using POST Modules to Establish Police Officer' Standard of Care" at the National Police Accountability Project, National Lawyers Guild Convention, in New Orleans, Louisiana. I was selected (March 30, 2012) to present to the Kern County Public Defenders in Bakersfield, California, on the topics of "Ethics, Police Investigations, the California POST Curriculum, and the M26 and X26 Taser weapons." On August 7, 2013 I was invited and presented to the Texas Civil Rights Project (TCRP) 2013 Annual Legal Summit in Austin, Texas on the topic: "Ethically Working with Experts from the Prospective of a Police Expert." On October 15, 2015 I was the invited presenter at a Community Forum in Victorville, California on the topics of Police Procedures, Community Policing, Use of Force, and features of the M26, X26 and X2 Taser weapons. I was selected (January 24, 2020) to present on the topic of: "Use of force litigation under California's negligence standard and the impact of AB 392" at the National Police Accountability Project held at Loyola Law, Los Angeles, California. On February 18, 2020, and on March 10, 2021, and on October 27, 2023. I lectured (at invitation and request) at the University of California - Irvine, School of Law, Civil Rights Litigation Clinic. On February 26, 2025, I lectured (at invitationa dn request) at the California Western School of Law regarding Detective Investigations.

I have worked on several projects with the Paso Del Norte (El Paso, Texas) Civil Rights Project and the Texas Civil Rights Project (Austin, Texas). As a result of my expert testimony in *Border Network, et al. v. Otero County, et al.*, Case No. 07-cv-01045 (D.N.M. 2008), a federal court issued a temporary injunction to stop the illegal and widespread immigration raids in Chaparral, New Mexico, implemented pursuant to Operation Stonegarden. The case resulted in the adoption of a model policy for inquiring into a person's immigration status, which has been adopted nationwide and has also been presented to the United States Senate, the Secretary of Homeland Security, and other government officials seeking to reform immigration enforcement.

I have been recognized, and my expert report was quoted by the USDC in *Burns v. City of Redwood City*, 737 F.Supp.2d.1047. I have been recognized, and my expert report was quoted by, the United States Court of Appeals for the Ninth Circuit as an expert in Police Administration and Use of Force in *Blankenhorn v. City of Orange, et al.*, 485 F.3d 463, 485 (9th Cir. 2007). The Ninth Circuit also drew from my expert report in a second published case involving Police Detective Investigations. *Torres, et al. v. City of Los Angeles, et al.*, 540 F.3d 1031, 1042-43 (9th Cir. 2008). The *Torres* case was appealed to the U.S. Supreme Court and returned for trial. I provided the expert opinion in *Chavies Hoskin v. City of Milwaukee, et al.* (E.D. Wis Case No. 13-cv-0920), regarding field strip and cavity searches, hiring, training, discipline and supervision, and which resulted in significant policy changes within the MPD. My opinions supported argument in the Ninth Circuit case: *A. D., a Minor; J. E., a Minor; Sue Casey, Plaintiffs-Appellees, v. State of California Highway Patrol, Defendant, and Stephen Markgraf.*, No. 09-16460,

D.C. No. 3:07-cv-05483-SI (9th Circuit, Published Opinion). My opinions supported argument in the Ninth Circuit case: *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1102 (9th Cir. 2014). The Ninth Circuit also drew from my expert reports regarding credible threats justifying the use of force, *Hayes v. County of San Diego*, 658 F.3d 867 (9th Cir. 2011), and *(Baton use) Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011). The Ninth Circuit also drew from my expert reports regarding Jail Administration and Administrative Responsibilities, *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). The Ninth Circuit also drew from my expert reports regarding an officer's violation of the 14th Amendment if an officer kills a suspect when acting with the purpose to harm, unrelated to a legitimate law enforcement objective, in *AD v. California Highway Patrol*, 712 F. 3d 446 (9th Cir. 2013). The Fifth Circuit drew from my expert report regarding search and seizure, investigations and no-knock requirements in *Bishop et al. v. Arcuri et al.*, 674 F.3d 456 (5th Cir. 2012). The Ninth Circuit also drew from my expert report regarding the use of impact weapons (PepperBall) on civilians in *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012). I was the expert in the Ninth Circuit opinion regarding the allegations proffered by police officers and their use/display of firearms against civilians in *Green v. City and County of San Francisco*, 751 F. 3d 1039 (9th Cir. 2014). Most recently, I was the expert in an important Ninth Circuit opinion regarding the allegations proffered by police officers and their use of lethal force against unarmed persons in *Jennifer Cruz, et al., v. City of Anaheim, et al.*

, 765 F.3d 1076 (9th Cir. 2014). I was the expert at trial in the Ninth Circuit opinion regarding the order of evidence at trial in *Estate of Manuel Diaz, v. City of Anaheim*, et al., No. 14-55644. My opinion is quoted in the Ninth Circuit opinion regarding the use of lethal force in *A.K.H. a minor, et al, v. City of Tustin, et al.*, No. 14-55184. My opinions supported argument in the Ninth Circuit case: *Estate of Angel Lopez, et al., v. Kristopher Michael Walb*, No. 14-57007 (not for publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District Court. My opinions supported argument in the Ninth Circuit case: *Estate of Shakina Ortega, et al., v. City of San Diego, et al.* No. 14-56824 (not for publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District Court. My opinions supported argument in the Ninth Circuit case: *Jerry Newmaker, et al., v. City of Fortuna, et al.* No. 14-15098 (for publication). My opinions supported argument in the Ninth Circuit Case: *Tonya E. Shirar, v. Miguel Guerrero, et al.* regarding use of lethal force and "suicide by cop," No. 15-55029 (not for publication). My opinions supported argument in the Ninth Circuit Case *Angel Mendez; Jennifer Lynn Garcia, v County of Los Angeles, et al.*, Nos. 13-56686, and 13-57072 (for publication) and which was settled before the U.S. Supreme Court, No. 16-369, regarding the use of officer(s) pre-shooting conduct resulting in lethal force and searches. This case was cited by the U.S. Supreme Court in *The Estate of Barns, Deceased v. Felix et al*, No. 23-1239 regarding officer(s) pre-shooting conduct resulting in lethal force. My opinions supported argument in the Ninth Circuit case: *Chien Van Bui, et al, v City and County of San Francisco, et al*, No. 14-16585 (not for publication), regarding the use of lethal force. My opinions supported argument in the Sixth Circuit opinion, Case No. 16-5322, *Carey Woodcock v. City of Bowling Green, et*

*al,* Originating Case No. 1:13-cv-00124 regarding the use of lethal force. My opinions supported argument in the Ninth Circuit opinion, Case No. No. 14-17388 (for publication), *Johnathan Jones, et al v. Las Vegas Metropolitan Police Department, et al,* Originating Case No. 2:12-cv-01636- regarding the use of lethal force and Taser weapons. My opinions supported argument in the Ninth Circuit opinion, Case No. 16-15606 (for publication), *Christian Longoria, et al v. Pinal County, et al,* Originating Case No. 2:15-cv-00043, PHX SRB, regarding the use of lethal force after a vehicle pursuit. My opinions supported argument in the Ninth Circuit case: *S. B. v. County of San Diego,* 864 F.3rd 1010 (9th Cir. 2017), (for publication) regarding issues of qualified immunity. My opinions supported argument in the Tenth Circuit case: *Russell Tenorio v. Brian Pitzer,* Case No. 2012-CV-01295 (U.S. Supreme Court No. 15-795) regarding issues of qualified immunity and use of deadly force. I participated as a retained expert in the USDC Fifth District case, *Stephen McCollum et al., v. Texas Department of Criminal Justice, et al.,* Case No.3:12-CV-02037 regarding in-custody hyperthermia deaths. My opinions supported argument (and I was cited by name) in the Ninth Circuit opinion, Case No. 17-55116 (for publication), *Susan Mellen, et al v. Marcella Winn, et al,* D.C. Case No. 2:15-cv-03006, GW AJW, regarding Detective Investigations and Qualified Immunity. My opinions supported argument in the Ninth Circuit Case *Richard Vos; Jenelle Bernacchi, v City of Newport Beach, et al.,* Nos. 16-56791 (for publication) and which was settled by the Supreme Court, No. 16-56791, regarding the use of lethal force and mental illness. My opinions (and quoted by name) supported argument in the Ninth Circuit Case *S.R. Nehad, et al. v. Browder, et al.*, No. 18-55035 (for publication) regarding the use of lethal force and custom and practice. My opinions supported argument in the Ninth Circuit opinion, Case No. 17-55930 (not for publication), *Estate of Kevin Brown, et al. v. Michael Lambert, et al.*, D.C. No. 3:15-cv-01583-DMS-WVG, regarding Detective Investigations and Qualified Immunity. My opinions supported argument in the Ninth Circuit opinion, Case No. 15-56339 (for publication), *Shane Horton, by his Guardian Ad, Litem Yvonne Horton, v. City of Santa Maria; Santa Maria Police Department; Andrew Brice,* D.C. Case No. 2:14-cv-06135- SJO-PJW, and *Jonathan Michael Castro v. County of Los Angeles, et al,* D.C. Case No. CV 10-5425 DSF (JEMx), 833 F.3d 1060 (9th Cir. 2016) (en banc), regarding jail standards, in-custody suicidal prisoners and qualified immunity. My opinions supported argument in the Ninth Circuit opinion, Case No. 17-56270 (not for publication), *James Soler v. County of San Diego, et al.,* D.C. No. 3:14-cv-02470-MMA-RBB, regarding required verification of persons taken into custody pursuant to a warrant of arrest. My opinions supported argument in the Ninth Circuit opinion, Case No. 18-17404 (for publication) *Tan Lam, v. City of Los Banos, et al.* D.C. No. 2:15-cv-00531-MCE-KJN, regarding the use of lethal force. My opinions supported argument (and I was cited by name) in the Ninth Circuit opinion, Case No. 19-56035 (for publication), *Tiffany Tabares, et al v. City of Huntington Beach, et al*, D.C. Case No. 8:18-cv-00821, JLS-JDE, regarding use of force and subjects suffering mental illness. I was retained as consultant regarding the October 15, 2019 Law Enforcement Activity Related Death (including positional asphyxia) of Mr. Angel Zapata-Hernandez by San Diego

Metropolitan Transit System (MTS) Code Compliance Officers. My consultations included recommendations and resulted in significant changes in policy and training by the MTS. I was a retained expert in the Temporary Restraining Order restricting the use of kinetic weapons during demonstrations issued April 19, 2021 in *Black Lives Matter v. City of Los Angeles, et al*, Case No.: CV 20-5027 CBM (Asx).. My opinions supported argument in the Ninth Circuit opinion, Case No. 20-16351 (not for publication), *Terrance Amons, et al., v. Dillon Tindall et al.* D.C. No. 4:19-cv-00301 KAW regarding use of lethal force. My opinions supported argument in the Ninth Circuit opinion, Case No. 20-56254, D.C. No.2:19-cv-05370-CAS-JC (for publication), *Paulette Smith, individually and as Successor in Interest to Albert Dorsey, deceased, v. Edward Agdeppa, and City of Los Angeles, et al.*, regarding the use of lethal force. My opinions supported argument in the Ninth Circuit opinion, Case No. 21-16709 (for publication), *Jose Murguia for himself and for the Estates of Mason and Maddox Murguia, v. Heather Langdon, et al.* D.C. No. 4:19-cv-00942 DAD-RAM regarding "State-created danger." My opinions supported argument in the Ninth Circuit opinion, Case No. 20-15651, D.C. No.2: 17-cv-02776 - JCM-NJK (for publication), *Rudy Rivera, v. Corrections Corporation of America*, regarding false imprisonment and callous disregard. My opinions supported argument in the Ninth Circuit opinion, Case No. 19-56462, D.C. No.5: 18-cv-00762 - DMG-SP (for publication - Declined Review by the Supreme Court), *Estate of Clemente Najera Aguirre; J.S.;Y.S., v. County of Riverside; Dan Ponder* regarding the inflection of lethal force. My opinions supported argument in the Ninth Circuit opinion, *SB v. County of San Diego*, 864 F. 3d 1010 - Court of Appeals, 9th Circuit, 2017. My opinions supported argument in the Ninth Circuit opinion, Case No. 23-15356, D.C. No.2: 21-cv-00099 - JJT (for publication), *Krish Singh, v. City of Phoenix, Brittany Smith-Peterson, et al.,* regarding Qualified Immunity/Excessive Force. My opinions supported argument in the Ninth Circuit opinion, Case No. 22-16495, D.C. 5:20-cv-07429-NC (for publication), *Rosalina Calonge, v. City of San Jose, Edward Carboni, et al.,* regarding Deadly Force/Qualified Immunity.

The California Court of Appeal (Second Appellate District) drew in part from my expert report regarding search warrant service, *Macias v. County of Los Angeles*, 144 Cal. App.4th 313, 50 Cal. Rptr.3d 364 (2006). The California Supreme Court drew in part from my expert opinion regarding police tactics and the use of deadly force, *Hayes et al. v. County of San Diego et al.*, 57 Cal.4th 622 (2013). I was quoted by the California Appellate Court (Second Appellate District, Division Three) and the California Supreme Court in *B.B., a Minor, etc., et al., v. County of Los Angeles, et al., Case No. B264946 Super. Ct. Nos. TC027341, TC027438, BC505918* regarding . I was cited by name by the State of California Court of Appeal, Fourth aAppellate District, Division One (For Publication), A.B. a minor, etc., v. County of San Diego, et al., DO84376 regarding positional asphyxia and forceful restraint.

On February 10, 1989, I was personally commended at the Los Angeles County Hall of Administration by United States Attorney General, the Honorable Edwin Meese III, for

my work to establish California Penal Code Section 311.11 (forbidding the Possession of Child Pornography). On February 22, 1993 (at the time of my retirement), Mr. Meese presented a second personal commendation for the success of this critical five-year effort to bring this law into effect. California Penal Code Section 311.11 is required training for all Law Enforcement Officers in California and taught extensively in the POST Basic Learning Domain #9: "Crimes Against Children", pages 1-18 to pages 1-21.

On December 7, 2015 I was requested by the Cleveland District Attorney to present my opinions to the Cleveland Grand Jury regarding the November 22, 2014 shooting death of Tamir Rice by City of Cleveland police officers. In March, 2016 I was requested by the Delaware Attorney General to review and provide my opinions regarding the shooting death of Jeremy McDole. The AG report was published May 12, 2016. I provided a written Opinion for New Mexico AG regarding the shooting Death of Teresa Anaya that included requested training opinions. I have also consulted with, and provided written opinions at the request of the U.S. Attorney (New York), the Santa Clara County District Attorney, and the San Francisco District Attorney. On June 16, 2021, I was selected by the Los Angeles County District Attorney as a member of FACCT - an independent team assigned to re-examine fatal use of force incidents by law enforcement officers and recommend further action when appropriate. On November 7, 2021, I was an Honoree of the 2021 National Lawyers Guild of Los Angeles at their annual Awards Gala as a recognized defender of Constitutional Rights. I was the retained Use of Force consultant regarding the May 28, 2010 homicide of Mr. Anastacio Rojas (USDC Case No. 11-CV-0522-L NLS) and which was taken under formal consideration by the Inter-American Commission on Human Rights (an international human rights tribunal) on November 2022.

During my service on the LASD, I became aware of the existence of Deputy Gangs and in particular the "Vikings" Deputy Gang at Lynwood Station (LV-25)." Since 1980 I wrote significant in-house memorandums regarding the existence of Deputy Gangs and the harm they caused within the LASD. My first trial testimony as a consultant (1994) regarding Deputy gangs after my retirement was: *Thomas v. County of Los Angeles, 2:90-cv-05217* wherein I testified in Federal Court as an expert on Deputy Gangs. My consistent 30 year participation (with others) on this issue has now evolved in LASD Policy 3-01/050.82 - *Prohibition - Law Enforcement Gangs and Hate Groups* as defined and supported in Penal Code sections 13670(a)(2), 13670(b), 422.55, 13680(d) and 13680(e), 13670(b), 13682(a), 13682(b). 13670(b), 13510.9(a)(2), 13510.8, 13670(c), etc.

My most direct trial testimony regarding the Americans With Disabilities (ADA) rights and requirements (as trained by POST) was *Marina Borawick, v. City of Los Angeles, et al. Case No. 2:17-cv-02036 BRO-JC*, on March 30, 2023. There have been others, including in written Rule 26 Reports.

Additionally, a number of my cases have involved law enforcement officers as civil plaintiffs and as criminal defendants, and a number of my cases have involved law enforcement officers as civil plaintiffs and as criminal defendants.

Since my retirement, I have become an expert in the features and the use of TASER International's products, including the Model M26, Model X26 and Model X2 ECDs. I own each, along with the download software. I have reviewed all the TASER training materials and am familiar with the risks and tactics associated with these potentially lethal devices. I have qualified as an expert on TASER products and testified both in deposition and before juries on their usage. Two published examples are *Lee v. Nashville*, 596 F. Supp. 2d 1101, 1121-22 (M.D. Tenn. 2009), and *Heston v. City of Salinas*, 2007 U.S. Dist. LEXIS 98433, *25-*26 (E.D. Cal. 2007). My most recent Federal acceptance/certifications as an expert in the general use and deployment of the TASER weapon (including Taser International product warnings/bulletins sent to every agency using the Taser weapon) occurred in Los Angles, California on November 7, 2017 in *William Mears, et al., v. City of Los Angeles, et al,* USDC Case No.: CV 15-08441 JAK (AJWx) and on February 22, 2018 in *Maria Hernandez; A.J., Jr., et al, v. City of Los Angeles, et al,* USDC Case No. 2:16-c-02689 AB (JEMx), and on May 3, 2018 in Heleine Tchayou, et al. v. City of Los Angeles, et al., Case No. 16-cv-06073-TJH-MRW, and on November 1, 2018 in *Alma Rosa Godinez, v. San Diego County, et al. Case No. 3:16-cv-00236 BAS-NLS*, and on March 1, 2024 in *The State of Texas v, Deputy James Johnson and and Deputy Zachary Camden Judicial District Court Travis County (Texas) Case No.: DPS 09990017.* There are many others.

I have been found competent by both Federal and State Courts to render opinions as to responsibilities as occurred in this case.

Attached as Exhibit A is a statement listing my law enforcement qualifications and experience; Exhibit B is my fee schedule; Exhibit C is a listing of matters in which I have testified in the last four years as an expert.

I reserve the right to modify my opinions to the extent additional information is provided.

I reserve the right to modify my opinions to the extent additional information is provided.

I declare under penalty of perjury that the foregoing is true and correct. Executed September 23, 2025, at Santee, CA.

Roger A. Clark

14